# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.,* | ) | |
| *ex rel.* RONALD J. STRECK, | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | Case 2:08-cv-05135 ER |
| | ) | |
| ALLERGAN, INC., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

### SERVICE FEE DEFENDANTS' JOINT RESPONSE
### TO RELATOR'S MOTION TO ALTER OR AMEND THE JUDGMENT

Relator Ronald Streck's Motion to Alter or Amend the Judgment, which seeks

reconsideration of the Court's July 3, 2012 decision dismissing the claims against the Service

Fee Defendants,[1] should be denied on both procedural and substantive grounds.

Preliminarily, because the Court has yet to enter a final judgment as to the Service Fee

Defendants, the relator's motion is properly treated as one for reconsideration.[2] *See In re*

*Asbestos Products Liability Litigation (No. V1)*, 801 F. Supp. 2d 333, 334 n.1 (E.D. Pa. 2011)

(treating plaintiff's motion to alter or amend the judgment as a motion for reconsideration

because the court had not entered final judgment); *see also Bausch & Lomb, Inc. v. Moria S.A.,*

222 F. Supp. 2d 616, 669 (E.D. Pa. 2002) ("neither Rule 59(e) nor 60(b) applies because the

Order [movant] seeks to have reconsidered is not a final judgment or order but rather an

---

[1] The Service Fee Defendants are Allergan, Inc., Amgen Inc., Bradley Pharmaceuticals, Inc., Eisai, Inc., Mallinckrodt Inc., Novo Nordisk, Inc., Reliant Pharmaceuticals, Inc., Sepracor, and Upsher-Smith Laboratories, Inc.

[2] Any doubt in this regard is resolved by the nature of the relief requested: "Relator respectfully requests that the Court *reconsider that portion* of *the Opinion dismissing the Complaint as to the Service Fee Defendants* and deny the motion to dismiss with respect to the Service Fee Defendants." Relator's Motion at 6 (emphasis added).

EXIBIT 2

interlocutory decision"); *Dyoub v. Penn-Del Directory Co.,* 90 F. Supp. 2d 636, 637 (E.D. Pa. 2000) (same). The motion is thus governed by Local Rule 7.1(g) of the Local Rules of Civil Procedure, which provides that a motion for reconsideration "shall be served and filed within fourteen (14) days after entry of the judgment, order, or decree concerned." Here, relator's motion was not filed until July 30, 2012, well after the 14-day period allowed under the Local Rules. For this reason alone, Streck's motion should be denied.

Streck's motion also fails on its merits. As this Court has recognized, a motion for reconsideration "is treated as the 'functional equivalent' of a motion pursuant to Rule 59(e) which seeks to alter or amend a judgment. The purpose of a motion for reconsideration is to 'correct manifest errors of law or fact or to present newly discovered evidence.'" *3039 B Street Associates, Inc. v. Lexington Ins. Co.,* 2010 WL 3431609 at \*1 (E.D. Pa. 2010) (quoting *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986) and *Harsco Co. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985)). A motion for reconsideration is not to be used "'as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.'" *Id.* at \*2 (citations omitted). Accordingly, reconsideration is appropriate only where the moving party establishes "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court … [issued its previous decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted); *see also 3039 B. Street Associates,* 2010 WL 3431609 at \*1.

Here, relator does not argue (nor could he) that the Court should reconsider its decision to dismiss based on any intervening change in the controlling law. Nor does he present the Court with any new evidence that was not available when the Court originally considered the Service

2

Case 2:08-cv-05135-ER Document 182 Filed 08/23/12 Page 3 of 8

Fee Defendants' underlying motion to dismiss.  Thus, the only issue that the Court needs to consider, should it decide to reach the merits, is whether relator's motion demonstrates a "need to correct a clear error of law or fact or prevent manifest injustice."  *Max's Seafood Café*, 176 F.3d at 677.  Clearly, it does not.

Streck asserts that the Court's decision is flawed in two interrelated ways.  First, he says that the Court has blurred the distinction between a price paid for a product by a wholesaler and the wholesaler's profit.  Second, he maintains the Court improperly defined AMP as a price *initially* paid for a product, rather than a finally adjusted price that takes into account all payments, however characterized, to the manufacturer.  Relator is wrong on both counts.

The Court's July 3 decision draws a clear distinction between the price paid to the manufacturer for product and service fees paid to the wholesaler for services.  As the Court held, a price appreciation credit—a credit applied against service fees otherwise due and owing the wholesaler—does not "alter the price [the] wholesaler paid for the drug."  Memorandum Opinion at 34.  Instead, as the Court determined, the price appreciation credit is simply a "payment method for the service fees," *id.,* and relator concedes that a bona fide service fee (which he alleges is the case here) is not part of the price and should not be included in the calculation or reporting of AMP.  Simply stated, the price appreciation credit may "claw back" profits from the wholesaler but does not change the *price paid* for the product. *Id.* at 34.  Indeed, relator concedes as much, agreeing that the statutory definition of AMP focuses "exclusively on the *price paid* to the manufacturers.  Wholesalers' profits are irrelevant."  Relator's Motion at 3 (emphasis added).

By homing in on the Court's reference to the "price *initially* paid," *id.* (emphasis added)*,* Streck mischaracterizes the import of the Court's holding and its underlying rationale.  By

referring to the "price initially paid," the Court simply distinguished between the price of the product and the separate service fees paid, and did not anchor that price, as Streck suggests, to some fixed point in time. Until they were revised in 2007, [3] the regulations clearly made a reported AMP subject to change if the pricing data for a prior quarter changed—typically, the result of rebates or other pricing concessions that were not even calculable or available until after the close of the reporting period. *See* 68 Fed. Reg. 51,912, 51,913 (Aug. 29, 2003) (quoted in Relator's Motion at 3) ("The prior period adjustments generally consist of a manufacturer's changes to pricing data resulting from sales data not being available before pricing submissions to [CMS] or changes in the methodology used to establish AMP or BP."). But that was not the question before the Court. The narrow question raised here is whether credits applied to service fees otherwise due from the manufacturer are part of the price paid for the product. As the Court determined, in the absence of contrary regulatory or statutory guidance, relator failed adequately to allege that the Service Fee Defendants were reckless or worse in concluding that these service fee credits were not part of the price. [4] Indeed, Streck's focus on the Court's discussion about the "price initially paid" distracts from the crux of the Court's holding. Immediately following the Court's discussion of "the price initially paid" the Court correctly observed: "Even assuming that these price credits or retroactive price adjustments were not permissible as a payment method for service fees, there was simply no statutory or regulatory guidance to that effect for Service Fee Defendants to consider." Memorandum Opinion at 34. This conclusion, which

---

[3] To this extent, the CMS comments on which Streck relies are no longer a correct statement regarding the manufacturers' obligations. Effective in 2007, manufacturers are generally discouraged from making such "prior period adjustments." Instead, manufacturers are required to account for lagged data through application of a 12-month rolling average. *See* 42 CFR 447.510(b)(2); 42 CFR 447.510(d)(2).

[4] This is true even though, as the Court pointed out, a price appreciation credit could sometimes exceed the quarterly service fee. Memorandum Opinion at 33. Even in this situation, the price appreciation credit ensures that the wholesaler earns no more than the agreed-upon service fee for the services performed, whether by direct payment or through price appreciation.

4

Streck does not and cannot challenge in the present motion, squarely rebuts his argument that the Court's analysis was flawed, or that any relief is warranted.

The statutory and regulatory provisions upon which Streck relies do not alter the analysis. First, those provisions—which simply support the conclusion that manufacturers must report revisions to AMP under certain circumstances—beg the question as to what constitutes a "price" under the regulations. It is the "dearth" of *that* guidance that the Court rightly observed is fatal to the relator's claims against the Service Fee Defendants. *See* Memorandum Opinion at 35.

Second, Streck makes no attempt to explain why these materials, to the extent they might be relevant, were not previously provided to the Court, given their obvious availability. As this Court has observed, a motion for reconsideration "may not be used as a means to argue new facts or issues that inexcusably were not presented to the Court" in the first go-round, or to "give a litigant a second bite at the apple." *3039 B Street Associates,* 2010 WL 3431609 at *2, *5 (internal quotations and citations omitted). Yet that is precisely what Streck seeks here.

Third, as noted above, Streck's motion does nothing to undermine the Court's ultimate conclusion that, despite numerous attempts to state a cause of action, the relator's Fourth Amended Complaint fails to allege an adequate factual basis "for the Court to plausibly infer that the Service Fee defendants' price credit methods were not a reasonable interpretation of AMP, let alone to plausibly infer that the Service Fee Defendants engaged in the 'unjustifiably high risk' of violating the statute necessary for reckless liability." Memorandum Opinion at 35 (quoting *Safeco Ins. Co. of Am. V. Burr,* 551 U.S. 47, 70 (2007)). Far from distinguishing *Safeco,* the relator's review of the statutory and regulatory guidance relating to AMP only serves to

underscore the absence of any guidance regarding how manufacturers should, or should not, handle credits against service fees in connection with their periodic price reports.[5]

In one respect, the relator has it right: it is unquestionably the obligation of a manufacturer participating in the Medicaid program "to know and follow the law." Relator's Motion at 5. But it is not the manufacturers' obligation to make new rules where, as here, the very statutes, regulations and guidances on which the relator relies fail to provide fair notice as to what is expected. Instead, the Supreme Court's decision in *Safeco, supra,* and the Third Circuit's more recent decision in *U.S. ex rel. Piliecki-Simko v. Chubb Inst.,* 2011 WL 3890975 (3d Cir. Sept. 6, 2011), are controlling. Following the standard set by those cases, the Court properly determined that Streck's claims against the Service Fee Defendants should be dismissed given his failure to plead any factual basis for establishing that the Service Fee Defendants' regulatory interpretations "ran afoul of clearly established law" or that the Service Fee Defendants otherwise failed to act with necessary care in the face of an unjustifiably high risk of legal error. Streck's motion for reconsideration provides no reason to upset that determination.

## CONCLUSION

For these reasons, Streck has failed to demonstrate any basis for the Court to reconsider, let alone set aside, its July 3, 2012 decision. Relator's Motion to Alter or Amend the Judgment should be denied.

Respectfully submitted,


/s/ Richard D. Raskin (with permission)     /s/ Margaret Hall (with permission)
Richard D. Raskin                      Margaret Hall
Jamie L. M. Jones                     C. Michael Moore

---

[5] Relator's argument that price appreciation credits are "novel contractual devices" (Relator's Motion at 4) also fails because relator has alleged that these credits have been around since at least 2005. *See* Fourth Amended Complaint, ¶¶ 105-110, 150-156 and 163-168.

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
312.853.7000
rraskin@sidley.com

- and -

Paul E. Kalb, M.D.
Theodore M. Lis
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
202.736.8000
spayne@sidley.com

*Counsel for Allergan, Inc., Novo Nordisk, Inc., and Sunovion Pharmaceuticals Inc. (f/k/a Sepracor Inc.)*

/s/ Stephen A. Loney, Jr.
Stephen A. Loney, Jr.
HOGAN LOVELLS US LLP
1835 Market Street, 29th Floor
Philadelphia, PA 19103
267.675.4677
stephen.loney@hoganlovells.com

- and -

Joseph H. Young
Steven F. Barley
HOGAN LOVELLS US LLP
100 International Drive, Suite 2000
Baltimore, MD 21202
410.659.2700
hank.young@hoganlovells.com

*Counsel for Amgen Inc.*

/s/ J. Sedwick Sollers (with permission)
J. Sedwick Sollers
Mark A. Jensen
Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.

SNR DENTON
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201
214.259.0945
peg.hall@snrdenton.com

*Counsel for Bradley Pharmaceuticals, Inc.*

/s/ James P. Ellison (with permission)
James P. Ellison
Jennifer Thomas
HYMAN, PHELPS & MCNAMARA PC
700 Thirteenth Street, N.W., Suite 1200
Washington, DC 20005
202.737.4294
jellison@hpm.com

*Counsel for Mallinckrodt Inc. and Upsher-Smith Laboratories, Inc.*

/s/ Thomas H. Lee II (with permission)
Thomas H. Lee II
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
215.994.2994
thomas.lee@dechert.com

- and -

Frederick G. Herold
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040
650.813.4930
frederick.herold@dechert.com

*Counsel for Reliant Pharmaceuticals, Inc.*

7

Suite 200
Washington, DC 20006
202.737.0500
wsollers@kslaw.com

*Counsel for Eisai, Inc.*