December 21, 1994



**MEDICAID DRUG REBATE PROGRAM Release No. 14**

 **\* \* \* IMMEDIATE ATTENTION REQUIRED \* \* \***

**NOTE TO:  All Participating Drug Manufacturers**

**STAGES OF THE DISPUTE RESOLUTION PROCESS**

Stages of the Dispute Resolution Process (Attachment A), has been designed to provide general guidelines and time-limits associated with the dispute resolution process.  We still stress the importance of open communication between both parties and keeping the Regional Office Drug Payment Coordinators involved.

**EFFECT OF ADMINISTRATIVE FEES ON AVERAGE MANUFACTURER PRICE (AMP) AND BEST PRICE**

Recently, we have received numerous inquiries from various manufacturers or their representatives requesting guidance on whether administrative fees paid to buyers of covered outpatient drugs have any effect on AMP and/or best price calculations.  We consider administrative fees, incentives, promotional fees, chargebacks and all discounts or rebates, other than rebates under the Medicaid drug program, to be included in the calculation of AMP, if those sales are to an entity included in the calculation of AMP, and best price.

Except for the explicitly listed exclusions in the rebate agreement and in section 1927 of the Social Security Act, and, in accordance with sections I(a) and I(d) of the rebate agreement, AMP and best price data "... must be adjusted by the Manufacturer if ... other arrangements subsequently adjust the prices actually realized." Thus, we consider any price adjustment which ultimately affects the price actually realized by the manufacturer as "other arrangements" and, as required by the rebate agreement, included in the calculations of AMP and best price.

EXHIBIT 4

Page 2 - Medicaid Drug Rebate Program          Release Number 14

Please remember that any prices which are nominal in amount, that is, less than 10% of the AMP in the same quarter for which the AMP is computed, are excluded from the best price calculation. Therefore, if any arrangement results in prices which are nominal, those sales and prices do not affect best price and must be excluded by the manufacturer.

**NOTICE TO HCFA OF REVISED AVERAGE MANUFACTURER PRICE (AMP) CALCULATION METHODOLOGY**

Several drug labelers have notified HCFA of their intent to recalculate the AMPs for selected drug products.  In those situations where you plan to submit revised AMPs and are changing the method by which you calculate the AMPs, contact HCFA prior to submitting revised AMPs to explain why you are recalculating the AMPs, the magnitude of the changes, the rationale being used, documentation to support the changes and whether these changes will affect your AMPs both retroactively and prospectively.  HCFA will review this documentation and decide whether the proposed change conforms to the statute and the manufacturer's agreement.  Do not submit any recalculated AMPs until notified to do so by HCFA.  All documentation should be submitted to:

    Medicaid Drug Rebate Program
    P.O. Box 26686
    Baltimore, MD 21207-0486

**UNIQUE MEDICAID FACTORS TO BE CONSIDERED BY DRUG LABELERS IN REBATE DISPUTES**

From the beginning of this program, HCFA has called upon the expertise of State Medicaid officials in trying to solve problems that occur periodically.  This group of State officials referred to as the Pharmacy Technical Advisory Group (P-TAG) have provided information and help on numerous occasions.  Recently, the members of the P-TAG developed a list of factors unique to State Medicaid drug programs that may help to reduce the number of rebate disputes by promoting a better understanding by the drug companies.

These factors include:

oMedicaid data includes nursing home dispensing data.  Possibly, that information may not be included in manufacturer marketing data;

oRegional marketing data of manufacturers may fail to take into account any border pharmacies, chain drug store distribution systems or regional and national buying groups;

Page 3 - Medicaid Drug Rebate Program          Release Number 14

oPrescription limits (e.g., 3 per month) can result in large quantities dispensed per prescription, legitimately;

oIngredients of compounded prescriptions billed by NDC may be claimed for rebates;

oThe total amount reimbursed for prescriptions is not a reliable indicator of units dispensed since copayments, third party liability and sale pricing (loss leaders) can all reduce the total amount reimbursed;

oTopical prescriptions do not always represent one tube per prescription;

oState front end claim edits for maximum quantities must be known by manufacturers since without them, unusual quantities may appear on claims;

oDrugs the manufacturer may not consider outpatient drugs may be claimed for rebate when separate drug claims were generated and paid by the States (e.g. injectables);

oOutside data sources may not be infallible as to accuracy;

oSales data may fail to reflect all sales to wholesalers or individual manufacturer's return/substitution policies may not be reflected in sales data but do affect actual inventory at the pharmacy;

oConflicts regarding billing units still exist between the States, HCFA, First DataBank and MediSpan. This has caused a certain amount of under/over reporting by States;

oManufacturers need to explain why an NDC is not valid (e.g. expired product);

oManufacturers should know the States' unit dose policies and how they might impact rebate claims;

oMedicaid population as a percent of total State population is not a reliable indicator of Medicaid drug utilization;

oAll States have a period of time, sometimes up to a year, from the date of service of a claim in which it can be submitted for payment; (e.g. Manufacturer sales in a quarter may not be indicative of Medicaid claims paid in a quarter); **and**

oThe rebate invoices you receive from States are reflective of the claims **paid** during that calendar quarter **not** the number of claims dispensed to Medicaid patients.

Page 4 - Medicaid Drug Rebate Program          Release Number 14

**WEEKLY U.S. TREASURY BILL DISCOUNT RATES**

Attached is the latest listing of the 90-day treasury bill auction rates from January 3, 1994 through December 19, 1994.   These rates are to be used to calculate interest owed States on overdue rebates.

**TOPIC INDEX**

For your convenience, also attached is a topic index of all items covered in prior releases.

Please continue to contact us with your drug rebate questions by using the Drug Rebate hotline at (410) 966-3249.


                              Sally K. Richardson
                              Director
                              Medicaid Bureau


3 Attachments

cc:

All Regional Administrators

All Associate Regional Administrators Division of Medicaid

Attachment A

THE MEDICAID DRUG REBATE PROGRAM
AND THE
STAGES OF THE DISPUTE RESOLUTION PROCESS

**DISPUTE RESOLUTION PROCESS:**

**BEGINS:** When the Manufacturer notifies State of disputed data, no later than 38 days after State utilization data is sent.

**ENDS:** When dispute is resolved and Manufacturer or State settles all disputed money amounts, including interest.

**PHASE I: Exchange of Data Time Period:**

Phase I of the process falls after the State receives the manufacturer's dispute and involves a period for both parties to seek resolution of dispute through exchange of information and informal negotiations. (The resolution of inconsistencies and the exchange of data should occur by the 38th day after State sends the utilization data.)

WHEN: THEN:

**By 60 days after the end of the quarter, State sends utilization data (invoice) to manufacturer. Manufacturer has 38 Days After Receipt of State Utilization Data (Invoice) to:**

A. Mfr. edits State data & resolves data inconsistencies with State -unit types, -units dispensed matches amount paid, numbers, -incorrect decimal position.

Mfr. distinguishes between data inconsistencies & disputes by examining such items as:

-NDC numbers match Mfr. numbers,

NOTE: This process can be initiated through telephone contact with State. If State gives written or telephone confirmation, resolution is recorded by the manufacturer. However, if this resolution has not been completed by the 38th day after State sends utilization data, the dispute resolution process applies.

B. Mfr. Agrees with invoice Mfr. pays full rebate--process ends.

C. Mfr. considers cost effectiveness

Items that would have been disputed may be resolved if Mfr. considers it not cost effective to dispute.

WHEN: THEN:

D.Mfr. pays partial rebate-Mfr. submits documentation
& disputes some data necessary to identify,
 by NDC, the reason why data      are disputed (written notice
                                   of dispute & check must be
                                     postmarked by the 37th day
                                      after the State data are
                                     sent.
                                     Interest starts on disputed
                                     portion of invoice effective
                                     38 calendar days from the
                                     date the State mails the
                                     State utilization data.

**Within 90 days after receipt of manufacturer's dispute:**
E.State contacts Mfr. State contacts Mfr. by
to discuss, by NDC number, telephone to discuss dispute.
items disputed & reason State presents report of
                                     preliminary response to
                                     dispute resolution.

**Within 150 days after receipt of manufacturer's dispute:**
F.State takes steps to State provides:
resolve questionable data-Zip-code level data,
     (Manufacturer requests-Pharmacy level data, <u>OR</u>
additional supportive-Opt to conduct sampling
documentation from State) of pharmacy claims,
-Data of historical trends.

 Note: Type of data provided      by State must match type of
                                   data requested by Mfr.

F.1.Both parties unable to -Mfr. requests State to
resolve differences  perform random sample of
                                     pharmacies,
-State requests Mfr. to
                                     validate data used by third
                                     party for the purpose for
                                     which the manufacturer
                                     supplied it.

NOTE: States will ensure any exchange of data protects the
confidentiality requirements of section 1927(b)(3)(D) of the Social
Security Act.  In the case of pharmacy level data, the State may
request the Mfr. supply its data if confidentiality laws prevent
State release of information.

**Within 240 days after receipt of manufacturer's dispute:**

════════════════════════════════════════════════════

WHEN:                          THEN:

════════════════════════════════════════════════════

G.State considers costIf the exchange of information
effectivessness fails to remove dispute, and
                                      the disputed amount is BOTH

                              -under $10,000 per Mfr.'s
 labeler code,
AND
                              -under $1,000 per product
 code of Mfr.'s labeler code
 (at 9-digit NDC level) the      State may choose to cease the
                                   dispute process.

 NOTE: State maintains
                              discretion to enter into the
                              dispute process in cases that
                                fall below these thresholds.
────────────────────────────────────────────────────
H.State/Mfr. complete      Settlement can be made on:
good faith negotiations-State utilization data,
                              (State should document
 incorrect data)
                              OR
-Valid documentation that
 other data was acceptable.
────────────────────────────────────────────────────
I.State/Mfr. unable toThe formal review processes
reach agreement.are considered in Phase II of
                              the Dispute Resolution
                              Process.The State and Mfr.
                              must proceed to Phase II -
                               Formal Review Process

**<u>PHASE II: Formal Review</u>**

Phase II of the process is initiated when the dispute is not resolved and when all steps in Phase I have been completed. A State or a manufacturer may proceed to phase II if either party has not fulfilled its obligations under a step in the first phase of the process.

**Within 30 days from the end of Phase I process the State must schedule a hearing that must be conducted no later than one year from the 240th day after the State receives manufacturer's dispute. The State and Manufacturer may continue to attempt to settle disputes before the hearing is conducted by considering the settlement options described below.**

---

WHEN:                          THEN:

---

A.<u>Mediation Review</u>-Both parties sign agreement
Process in which mediator to mediate,
assists parties in reaching-Request for mediation
their own settlement but  prepared with brief statement
does not have authority to of dispute,
make a binding decision  +Both parties agree on         how to
                                    share mediation
                                    expense,
     +Qualified mediator          selected,
     +Both parties agree on       mediator,
     +Mediator will have no       financial or personal
                                    interest in result  of
                                    mediation,

     +Agreement reached,
     +Both parties sign           settlement agreement,
     +Agreement states            settlement & payment of
                                    mediation expense,

     +Amount in dispute paid      plus interest due,
     +Mfr./State records          documented,
     +Agreement not reached,
     +Both parties declare in     writing that mediation
                                    ended,

     +Parties pursue Binding      Arbitration or State
                                    Hearing.

```
WHEN:                     THEN:
```

B.Non-Binding Arbitration-Both parties agree to
Process in which each party participate in arbitration
presents its case at an by submitting an informal
informal hearing to a   request to the other party,
neutral party-Parties agree on share of
 arbitration fee,
-Both parties agree on
 arbitrator-Decision reached &  settlement agreed by both
                                     parties,
-Agreement states settlement    and payment of fees,
-Final decision subject to      confirmation at a higher
                                     State Agency level,
-Amount in dispute paid         including interest,
-Mfr./State records
                                  documented,
-Agreement not reached,
-Parties agree on share of      arbitration fee,
-Parties pursue Binding         Arbitration or State Hearing.

```
WHEN:                     THEN:
```

C.Binding Arbitration-Both parties agree to
Process in which a dispute participate in arbitration,
is submitted to one or more-Both parties agree on
impartial persons for a  arbitrator or panel,
final and binding decision    +Arbitrator could be
                                  panel of individuals
                                  agreed to by the State
                                  agency & Manufacturer,
      +Arbitrator could be      independent arbitration
                                 association.e.g.,
                                  American Arbitration
                                  Association,
-Settlement agreed by both
 parties,
-Award submitted by arbitrator
 stating relief and
                                arbitration fees,
-If arbitration panel consists
 of more than one arbitrator
 the majority decision is
  binding.

| WHEN: | THEN: |
|---|---|

D.  Administrative Review-State requests date for
Upon request by either  State hearing,
party for a hearing, an-Administrative Review
administrative review scheduled prior to hearing,
would be conducted by an-Hearing officer appointed
impartial individual or for Administrative Review,panel appointed
                                  or hired-Settlement reached at
as a hearing officer to  administrative review level,
facilitate settlement.     +Amount of rebate paid
                                       plus interest.
    This review would occur         +Settlement documented,
                                        while State Hearing
                                    date+Request for State
is being scheduled.  If      hearing cancelled
agreement reached, State-Agreement not reached at
    hearing would be cancelled.    Administrative Review level,
+Parties proceed to a
                                    State hearing which was
                                    scheduled prior to
                                    Admin. Review.

**State Hearing must be conducted no later than one year from the 240th
day after State receives Manufacturer's dispute.**

E.State Hearing -Hearing Held
State will make available-Decision rendered
its State hearing mechanism-Dispute resolved
as defined in the statute -Rebates+interest pd.
and State law-Records documented

<u>OPTIONAL ALTERNATIVES</u>

The following option falls outside of the dispute resolution process,
however, the National Rebate Agreement provides the following as
an alternative States may pursue after receipt of manufacturers
written dispute.

| WHEN: | THEN: |
|---|---|

Mfr. & State unable toState may schedule an
resolve disputeadministrative hearing or tentatively schedule a
hearing.

Mfr. & State agree onState tracks interest due
resolution.  Mfr. paysand follows up with Mfr.
rebate due but <u>not</u>      Interest starts accruing
<u>interest due.</u>                on unpaid interest.

Phase I of the Dispute Resolution Process describes the type of data Manufacturers may request and States may provide in an attempt to resolve a dispute.  Excluded from this level of the dispute process would be audits, i.e, fraudulent claims and claims level data requests.  An audit may be pursued at any time throughout the dispute resolution process.

```
========================================================================

WHEN:                         THEN:

========================================================================
CLAIMS DATA AUDITS

-Manufacturer requests-State, with appropriate
 audit of State utilization Manufacturer input, develops
 data mutually agreeable audit
 procedures
------------------------------------------------------------------------
-Manufacturer requests pharmacy-State agrees to audit
 claims level data pharmacy
-State has independent third
 party audit pharmacy
-Payment for audit determined
 between parties.
-----------------------------------------------------------------------
-Audit indicates either State-Adjustments to rebates
 utilization was greater       made
 or less than previously-Dispute ends
 specified or information
 inaccurate
------------------------------------------------------------------------
-After audit performed,-Dispute still exists
 State and Manufacturer still-Proceed to Phase II
in dispute
```