# Exhibit 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNITED STATES OF AMERICA *et al. ex rel.* RONALD J. STRECK, <br><br> Plaintiffs-Relator, <br><br> v. <br><br> TAKEDA PHARMACEUTICALS AMERICA, INC., *et al.*, <br><br> Defendants. | Case No.: 1:14−cv−09412 <br><br> **Judge Harry D. Leinenweber** |

**<u>PROPOSED JURY INSTRUCTIONS</u>**

## OPENING INSTRUCTION
### [Agreed]

Ladies and gentlemen: You are now the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.

At the end of the trial, I will give you more detailed instructions. Those instructions will control your deliberations.

One of my duties is to decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

Source(s): Seventh Circuit Federal Jury Instructions at 411 (2017 Ed.).

## TERMS AND DEFINITIONS
### [Relator Proposal]

During the trial, you will hear a few terms that you may not have heard before. Let me briefly describe some of the most common to you.

The party who brings the lawsuit is called the "plaintiff" or the "relator." In this case, the relator is Ronald J. Streck. You will hear me and the lawyers refer to Mr. Streck as the "relator."

The party being sued is called the "defendant." In this action, the defendant is Eli Lilly and Company. You will hear me and the lawyers refer to Eli Lilly and Company as "Lilly" or "Defendant."

Relator is pursuing claims against Lilly on behalf of the United States under a law known as the federal "False Claims Act." The federal False Claims Act is a law designed to discourage false and fraudulent conduct against the United States federal government, and if false or fraudulent conduct is committed, to allow the United States federal government to be made whole.

In addition, Relator is pursuing claims against Lilly on behalf of the state governments of Alaska, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New York, New Mexico, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, Washington, and Wisconsin. In addition, Relator is pursuing claims on behalf of the government of Washington D.C. I will refer to these states and Washington D.C. as the "States."

Like the federal False Claims Act, the States have adopted their own False Claims Acts. The State False Claims Acts are similar to the Federal False Claims Act in that they are designed to discourage false and fraudulent conduct against the States and to allow the States to be made whole if false or fraudulent conduct is committed against them.

Unless otherwise stated, I will use the term False Claims Act or FCA to describe both the federal statute and, as applicable, the relevant statutes of the individual states and the District of Columbia.

The False Claims Act allows a private citizen, called a "relator," to file a lawsuit on behalf of the United States government and the State governments seeking to recover money belonging to the United States and the States.

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney."

I will sometimes refer to myself as "the Court."

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.); O'Malley, Grenig and Lee, *Federal Jury Practice & Instructions* § 101.01 (6th ed. 2019); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, 955 (2016); *U.S. ex rel. Fahner v. Alaska*, 591 F. Supp. 794, 798 (N.D. Ill. 1984).

**<u>Lilly's Objections</u>**:   Lilly objects to Relator's proposed instruction in its entirety.   Relator's proposed instruction is argumentative and misleading, particularly its (erroneous) description of the legislative intent behind the False Claims Act.   It is also unsupported by the cited authorities. The Seventh Circuit Pattern Instructions do not include a pattern like this one.

**OBJECTIONS**
**[Agreed]**

From time to time during the trial I may be called upon to make rulings of law on objections or motions made by the lawyers. You should not infer or conclude from any ruling or other comment I may make that I have any opinions about how you should decide this case. And if I should sustain an objection to a question that goes unanswered by a witness, you should not guess or speculate what the answer might have been, and you should not draw any inferences or conclusions from the question itself.

Source(s): Seventh Circuit Federal Jury Instructions at 415 (2017 Ed.) (verbatim).

## BENCH CONFERENCES
## [Agreed]

At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We meet because often during a trial something comes up that doesn't involve the jury.  We will, of course, do what we can to keep the number and length of these conferences to a minimum, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

<u>Source(s)</u>: Seventh Circuit Federal Jury Instructions, at 415-16 (2017 Ed.) (verbatim).

## NOTE TAKING
### [Alternative Proposals by the Parties]

RELATOR'S PROPOSAL

Any notes you take during this trial are only aids to your memory. The notes are not evidence. If you do not take notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

You must not allow your notetaking to distract you from the proceedings.

Frequently, there is a tendency to attach too much importance to what a person writes down. Some testimony that is considered unimportant at the time presented and not written down may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.); O'Malley, Grenig and Lee, *Federal Jury Practice & Instructions* § 101.15 (6th ed. 2019).

**Lilly's Objection**:  Lilly objects to the third paragraph of Relator's request as confusingly worded. Lilly further objects to the instruction for deviating from the Seventh Circuit pattern and instead requests the Court use the pattern as written.

LILLY'S PROPOSAL

Any notes you take during this trial are only aids to your memory. The notes are not evidence. If you do not take notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

When you leave the courthouse during the trial, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  When you leave at night, your notes will be secured and not read by anyone.  At the end of the trial, your notes will be destroyed, and no one will be allowed to read the notes before they are destroyed.

Source(s): Seventh Circuit Federal Jury Instructions, at 416 (2017 Ed.) (verbatim).

## EVIDENCE IN THIS CASE
### [Alternative Proposals by the Parties]

**RELATOR'S PROPOSAL**

You may consider only the evidence admitted in the case. The evidence consists of the sworn testimony of witnesses, exhibits admitted into evidence, facts stipulated to by the parties, and facts that I have asked you to assume have been established as undisputed as a matter of law. You may consider any facts to which the parties have stipulated or agreed to be undisputed as well.

Statements and arguments of the lawyers, including opening statements and closing arguments, are not evidence. They are intended only to help you understand and interpret the evidence from each party's perspective. Similarly, the questions of the lawyers are not evidence.

In addition, if I tell you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and you should not consider them.

Some evidence may be admitted for a limited purpose only. If I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose, and for no other purpose.

As I mentioned, you must decide this case based only on the evidence and the instructions on the law that I give the jury. Do not do any research — on the Internet, through social media, in libraries, in the newspapers, or in any other way — or make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. Also, do not research any information about this case, the law, the people involved, including the parties, the witnesses, the lawyers, or the judge until you have been excused as jurors.

**Lilly's Objection**: Lilly objects to Relator's request to deviate from the Seventh Circuit pattern and instead requests the Court use the pattern as written.

**LILLY'S PROPOSAL**

The evidence consists of the testimony of the witnesses and the exhibits admitted in evidence.

Source(s): Seventh Circuit Federal Jury Instructions, 1.04 (2017 Ed.) (verbatim) (optional instruction on stipulations omitted).

## WHAT IS NOT EVIDENCE
### [Lilly Proposal]

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Source(s): Seventh Circuit Federal Jury Instructions, 1.06 (2017 Ed.) (verbatim); *First Midwest v. City of Chicago*, No. 1:14-cv-09665, Dkt. No. 444 (Oct. 26, 2017) (verbatim).

**Relator's Objection**:  Relator's does not object to this instruction if the Court is not included to give Relator's proposal on the final four paragraphs in the preceding instruction on "Evidence in this Case.")

## JURY CONDUCT
### [Agreed]

All jurors must follow certain rules of conduct, and you must follow them, too.

First, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. You must not let others to discuss the case with you. In this age of technology, I want to emphasize that you must not communicate with anyone about the case by any means, including through social media, e-mails, text messages, phone calls, and the Internet. If anyone tries to talk to you about the case please let me know immediately;

Second, you must not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, you must not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me, you must give a signed note to the [bailiff] [clerk] [law clerk] [matron] to give to me; and

Fifth, you must not make up your mind about what the verdict should be until after you have gone to the jury room to decide that case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Source(s): Seventh Circuit Federal Jury Instructions, at 418 (2017 Ed.).

**ORDER OF TRIAL**
**[Agreed]**

First, Relator's attorney will make an opening statement. Next, Lilly's attorney may make an opening statement. An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

After the opening statements, Relator will call witnesses and present evidence. Then, Lilly will have an opportunity to call witnesses and present evidence. After the parties' main cases are completed, Relator may be permitted to present rebuttal evidence.

After the evidence is presented, the parties' lawyers will make closing arguments explaining what they believe the evidence has shown. What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

After that, you will go to the jury room to deliberate on your verdict.

Source(s): Seventh Circuit Federal Jury Instructions, at 411-12 (2017 Ed.); O'Malley, Grenig and Lee, *Federal Jury Practice & Instructions* § 101.02 (6th ed. 2019).

## SUMMARY OF CLAIMS AND DEFENSES
### [Alternative Proposals by the Parties]

**RELATOR'S PROPOSAL**

As I mentioned, in this case, Relator is pursuing claims against Lilly on behalf of the United States and the States under the False Claims Act.

This case relates to the Medicaid program. The Medicaid program is a national health care program that provides health insurance coverage to the nation's poor and disabled. Medicaid covers services, such as hospital and doctor expenses, as well as prescription drug costs.

The Centers for Medicare & Medicaid Services ("CMS") is a federal agency which monitors the Medicaid programs. Each state operates its own Medicaid program in partnership with CMS.

Medicaid is a jointly funded by the federal government and state governments. In other words, the federal government and the state government both contribute portions of the funding for Medicaid. The federal portion of Medicaid funding is sometimes known as "federal matching funds."

As I mentioned, Medicaid generally covers the cost of prescription drugs for people on Medicaid. In 1990, Congress created the Medicaid Drug Rebate Program in order to ensure that Medicaid enjoyed the benefit of the same drug prices and discounts as other large drug purchasers. Under the Medicaid Drug Rebate Program, drug manufacturers must enter into a Rebate Agreement with the federal government in order for its drugs to be eligible for Medicaid coverage. Lilly is one of the drug manufacturers that participates in the Medicaid Drug Rebate Program. Lilly signed the Rebate Agreement in 1991.

Under the Rebate Agreement, Lilly and other drug manufacturers that participate in the Medicaid Drug Rebate Program have two primary obligations. First, Lilly is required to report certain drug pricing information to CMS each month and each quarter for its drugs. Second, Lilly must pay rebates to the State Medicaid Programs each quarter based on the States' purchases of Lilly's drugs. These two steps work together, because the amount of the rebate Lilly owes is based on the pricing information that Lilly submits.

More specifically, the amount of the rebate is primarily determined through the Average Manufacturer Price or "AMP" of a drug, which is one of the pieces of pricing information that Lilly is required to report to CMS every month and quarter.

AMP is the average price at which Lilly sold its drug to wholesalers for distribution to retail pharmacies like CVS or Walgreens. Lilly is required to calculate AMP pursuant to several legal requirements. These legal requirements are established through federal statutes (or laws), federal regulations, and the Rebate Agreement. When Lilly reports AMP to CMS, it is required to certify that, to the best of its knowledge, the AMPs are accurate and were calculated in compliance with all legal requirements.

Based on Lilly's reported AMPs, CMS computes a "unit rebate amount." CMS provides the Unit Rebate Amount for each drug to the State Medicaid Programs. The States then use this information to invoice Lilly for the rebate based upon the total utilization of each drug provided to Medicaid beneficiaries in that State for the quarter, multiplied by the Unit Rebate Amount. Lilly then makes rebate payments to each State Medicaid Program.

The rebates are shared between the State Medicaid Programs and the federal government. Any rebate amount paid by a manufacturer to a state reduces the amount spent by that state and accordingly reduces the federal matching funds that the federal government provides to that state. In the same way, if a manufacturer underpays rebates to a state, the federal government will pay more in in federal matching funds to that state than it would have paid if the manufacturer paid the proper rebate.

Relator alleges that Lilly violated the False Claims Act in connection with its participation in the Medicaid Drug Rebate Program.

Lilly denies Relator's allegations.

Your role is to determine whether the evidence shows that Lilly violated the False Claims Act. Relator is required to prove that Lilly violated the False Claims Act by a "preponderance of the evidence" standard. I will explain to you in more detail at the end of the case what Relator has to prove by a preponderance of the evidence.

I have already determined that Lilly submitted AMPs to CMS that did not comply with the legal requirements governing AMP calculations and were therefore false within the meaning of the False Claims Act. More specifically, the law required Lilly to include the value of certain price increases in its AMPs calculations, but Lilly failed to follow that law.

You must accept my determination. In other words, the fact that Lilly's AMPs violated these legal requirements is not in dispute in this case.

[*To be included if Court grants Relator's pending motion to take judicial notice of certain of Lilly's admissions.*] In addition, I have determined that certain facts have been conclusively established. That means you must accept these facts and no further proof is required to establish these facts. These facts are: [*Add facts over which the Court takes judicial notice*].

If you determine that Lilly did violate the False Claims Act, you will be asked to determine the number of times that Lilly did so. In addition, you will be asked to determine the amount of damages, if any, that the United States federal government and the States suffered because of Lilly's violations. If through your verdict you find that Lilly violated the False Claims Act and you decide to award any damages, most of those damages will go to the United States and the States.

<u>Source(s)</u>: O'Malley, Grenig and Lee, *Federal Jury Practice & Instructions* § 101.03 (6th ed. 2019); 31 U.S.C. §§ 3729, 3731; James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, 955 (2016); 42 U.S.C. § 1396r-8; Rebate Agreement; Fed. Rule Evidence 201(f) ("In a civil case, the court must instruct the jury to accept the noticed fact as conclusive.").

**Lilly's Objections:** Lilly objects to the instruction as containing numerous misleading and incorrect statements of the law, argumentative, duplicative, and prejudicial. Many of the statements in this instruction improperly treat as decided issues that are disputed, and that Relator has the burden of proving. Jury instructions are not opening arguments. The jury should be instructed on the elements of Relator's claim and the law. *United States v. Risch,* 87 F.3d 240, 242 (8th Cir. 1996) (holding district court is not obligated to give an argumentative jury instruction); *United States v. Davis,* 487 F.2d 112, 126-27 (5th Cir. 1973) (upholding district court's rejection of a defendant's proposed instruction that was "argumentative in content"); *United States v. Mosquera,* 886 F.3d 1032, 1051 (11th Cir. 2018) (affirming denial of proposed instruction that "was unnecessarily repetitive… All the proposed instruction would have done is connect the court's statements of the law about knowledge and specific intent to the facts at issue in this case.").

In addition, Lilly objects to Relator's request that the Court take judicial notice of certain of Lilly's responses to Relator's Requests for Admission ("RFAs") and instruct the jury that those answers have been "conclusively established." RFAs are not judicially noticeable and forcing the judge to read a discovery response to the jury would improperly elevate its apparent importance to the jury. *E.g.*, *Valiente v. Swift Transp. Co. of Ariz. LLC*, No. 219CV04217VAPKKX, 2021 WL 879106, at *2 (C.D. Cal. Jan. 22, 2021) ("[D]iscovery responses . . . cannot be judicially noticed."); *Tatum v. Clarke,* 11-C-1131, 2015 WL 6392609, at *5 (E.D. Wis. Oct. 22, 2015) (holding response to RFA was not subject to judicial notice and had "the effect of a stipulation of the parties or an admission in a pleading, rather than an evidentiary admission of a party"); *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 2007 WL 845046, at *9 (N.D. Ill. March 16, 2007) ("[J]udicial notice is generally not for the truth of the matters asserted in a court document."). If Relator wants to use the RFAs at trial, he can, but he must follow the same approach every party that wants to use RFAs at trial must use. The request and response can be read as written to the jury by Relator— not the Court—during his case in chief. *E.g.*, *Voss v. State Farm Fire and Cas. Co.*, CIV 07-4143, 2008 WL 4372775, at *1 (D.S.D. Sept. 23, 2008) (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1209–1210 (8th Cir. 1995)).

## LILLY'S PROPOSAL

The positions of the parties can be summarized as follows: Relator alleges that Lilly violated the False Claims Act between February 2, 2012[1] and March 31, 2016 in connection with its participation in the Medicaid Drug Rebate Program. Specifically, he alleges that Lilly knowingly defrauded the Government by excluding the value of a term in its wholesaler agreements called "price increase value" (or "PIV") from the Average Manufacture's Price (or "AMP") it submitted to the Centers for Medicaid and Medicaid ("CMS"), is part of the Department of Health and Human Services ("HHS"), and that doing so thereby lowered the amount of rebates Lilly paid under the Medicaid program.

Lilly denies that it knowingly violated the False Claims Act or that its conduct was material to HHS. It contends that it reached a good-faith, honest conclusion that the value of "price increase value" did not need to be included in its Average Manufacturer Price before March 31, 2016. It

---

[1]     If the Court denies Lilly's motion in limine and anticipated motion for directed verdict, the time period should be January 1, 2005 to March 31, 2016.

further contends that the exclusion of a medication's "price increase value" from AMP was not material to HHS before March 31, 2016.

Source(s): Seventh Circuit Federal Jury Instructions, at 412 (2017 Ed.) ("The positions of the parties can be summarized as follows: Plaintiff _____ claims that *[describe]*. Defendant _____ denies those claims *[and also contends that [describe]]*.").

**<u>Relator's Objections</u>**: Relator objects to Lilly's proposed instruction as misleading, argumentative, incomplete, and unhelpful to the jury. In this case, the jury will need to understand the basic (and undisputed) mechanics of the Medicaid Drug Rebate Program. In addition, the jury will need to understand that the Court has already found Lilly's AMP submissions and certifications were false, but Lilly's proposed instruction ignores this issue.

## BONA FIDE SERVICE FEES
### [Alternative Proposals by the Parties]

**RELATOR'S PROPOSAL**

During the trial, you may here reference to the term "bona fide service fee." This is a term of art with a specialized meaning under the Medicaid Drug Rebate Program.

At various times beginning in 2007, the relevant legal requirements provided that bona fide service fees were excluded from AMP and specifically defined bona fide service fees. For example, in 2007, CMS adopted the following definition of "bona fide service fees" and stated that these fees were excluded from AMP calculations:

> [F]ees paid by manufacturer to an entity; that represent fair market value for a bona fide, itemized service actually performed on behalf of the manufacturer that the manufacturer would otherwise perform (or contract for) in the absence of the service arrangement; and that are not passed on in whole or in part to a client or customer of an entity, whether or not the entity takes title to the drug.

As I mentioned previously, Lilly entered agreements with wholesalers which included a term called "price increase value."

In Lilly's agreements with wholesalers, the price increase value calculation is often in the same paragraph as the bona fide service fees calculation, and for certain years during the relevant time period, the transactions between the two parties (the calculation of price increase value paid by the wholesalers to Lilly and the calculation of the service fee paid by Lilly to the wholesalers) happened simultaneously.

By definition, bona fide service fees are "fees paid by manufacturer to an entity ...for a . . . service." In contrast, a "price increase value" is never paid by the manufacturer and is never for a service. Accordingly, price increase value is not part of or related to a bona fide service fee. Although Lilly's payment of service fees to wholesalers and its receipt of price increase value from wholesalers are provided for in the same wholesaler agreements, the two transactions are distinct. Therefore, the proximity of the words "price increase value" to the words "bona fide service fee" in the agreements is irrelevant.

Source(s): 42 C.F.R. § 447.502 (defining bona fide service fees); U.S. ex rel. Streck v. Takeda Pharm. Am., Inc., 2022 WL 595308, at *13 (N.D. Ill. Feb. 28, 2022) (Leinenweber, J.) ("By definition, bona fide service fees are 'fees paid by manufacturer to an entity ... for a ... service.' In contrast, a 'price increase value' is never paid by the manufacturer and is never for a service. Therefore, the Court finds the proximity of the words 'price increase value' to the words 'bona fide service fee' in the FFS Agreements irrelevant to the Court's analysis . ... [T]here is nothing conservative about an approach where two distinct transactions that were explicitly not permitted to be coupled, the price of the product and the service fees, are nonetheless combined to lower AMP calculations."); U.S. ex rel. Streck v. Bristol-Myers Squibb Co., 370 F.Supp.3d 491, 496 (E.D. Pa. 2019) ("Price appreciation credits "are not issued for the purposes of payment for any

service or offset for a bona fide service performed on behalf of the manufacturer ....; Simply, they are not payments for services.") (citations omitted)).

**Lilly's Objections:** Lilly objects to the instruction in its entirety as argumentative and a transparent attempt to put on Relator's case through the Court's instructions to the jury rather than counsel's arguments and evidence. It is also misleading, likely to confuse the issues, and unduly prejudicial. Lilly does not believe the jury needs any instruction on the meaning of bona fide service fees, but if any instruction is given, Lilly proposes the Court use the definition of bona fide service fee as defined by CMS regulations. 42 C.F.R. § 447.502.

### LILLY'S PROPOSAL

Bona Fide Service Fee means a fee paid by a manufacturer to an entity; that represents fair market value for a bona fide, itemized service actually performed on behalf of the manufacturer that the manufacturer would otherwise perform (or contract for) in the absence of the service arrangement; and that is not passed on in whole or in part to a client or customer of an entity, whether or not the entity takes title to the drug.

Source(s): 42 C.F.R. § 447.502 (verbatim).

**Relator's Objections**: Relator objects to Lilly as incomplete and unhelpful to the jury. Simply informing the jury about a term of art such as "bona fide service fees" without contextualizing its role in the calculation of AMP will only serve to confuse the jury. In addition, given that the Court has already determined as a matter of law that price increase value is *not* a component of bona fide service fees, it is appropriate to instruct the jury on this issue to avoid confusion should the concept of bona fide service fees come up at trial.

## INSTRUCTIONS FOR USE AT CLOSE OF TRIAL

**FUNCTIONS OF THE JURY**
**[Agreed]**

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone. Your second duty is to apply the law that I give you to the facts.

You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) (2017 Ed.) No. 1.01 (verbatim).

## ALL LITIGANTS EQUAL BEFORE THE LAW
### [Agreed]

In this case, Lilly is a corporation. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person.

*Sources*: Federal Civil Jury Instructions of the Seventh Circuit (2017)—§ 1.03 (2017 revised) (verbatim); s*ee also U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 1:02-cv-06074, Dkt. No. 772 at 2 (N.D. Ill. Oct. 30, 2006) (Leinenweber, J.) ("In this case, the Defendants are corporations. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person or governmental body.").

## EVIDENCE
## [Alternative Proposals by the Parties]

**RELATOR'S PROPOSAL**

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true or that a person would have given certain testimony.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.04

**Lilly's Objection**:  Lilly objects that the language on stipulations is irrelevant in this case and therefore risks confusing the jury.

**LILLY'S PROPOSAL**

The evidence consists of the testimony of the witnesses and the exhibits admitted in evidence.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.04 (verbatim) (optional inclusion omitted).

**Relator's Objections**: Relator includes the portion of the instruction on stipulations as a placeholder should the parties be able to reach any stipulations before trial. If the parties do not agree to any stipulations, Relator does not object to Lilly's proposed instruction.

## WHAT IS NOT EVIDENCE
## [Agreed]

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

<u>Source(s)</u>: Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.06.

## DEPOSITION TESTIMONY
### [Alternative Proposals by the Parties]

**RELATOR'S PROPOSAL**

During the trial, certain testimony was presented to you by [the reading of a deposition/depositions and video]. A deposition is the sworn testimony of a witness, taken before trial. You should give this testimony the same consideration you would give it had the witness[es] appeared and testified here in court.

One witness whose deposition testimony you heard here was from Josh O'Harra. At his deposition, Mr. O'Harra testified as Lilly's designated corporate representative. You should consider his testimony to be testimony by Lilly as a corporation regarding information known by or reasonably available to the corporation.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.05; Fed. R. Civ. P. 30(b)(6); Fed. R. Civ. P. 32(a)(3).

**Lilly's Objection:** Lilly objects to Relator's request to deviate from the Seventh Circuit Pattern instruction and requests the Pattern instruction be given.

**LILLY'S PROPOSAL**

During the trial, certain testimony was presented to you by [the reading of a deposition/depositions and video]. You should give this testimony the same consideration you would give it had the witness[es] appeared and testified here in court.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.05 (verbatim).

**NOTE-TAKING**
**[Agreed]**

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.07 (verbatim).

## CONSIDERATION OF ALL EVIDENCE REGARDLESS OF WHO PRODUCED IT
### [Agreed]

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.08 (verbatim).

**LIMITED PURPOSE OF EVIDENCE**
**[Agreed]**

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

<u>Source(s)</u>: Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.09 (verbatim).

## WEIGHING THE EVIDENCE
### [Agreed]

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

<u>Source(s)</u>: Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.11 (verbatim).

## DIRECT AND CIRCUMSTANTIAL EVIDENCE
### [Agreed]

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.12 (verbatim).

## TESTIMONY OF WITNESSES (DECIDING WHAT TO BELIEVE)
### [Agreed]

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.13 (verbatim).

## PRIOR INCONSISTENT STATEMENTS OR ACTS
### [Agreed]

You may consider statements given by a party or witness under oath before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his or her testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with that witness's testimony here in court, you may consider the earlier statement or conduct only in deciding whether his or her testimony here in court was true and what weight to give to his or her testimony here in court.

In considering a prior inconsistent statement or conduct, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.14 (verbatim).

**REDACTED MATERIALS**
**[Agreed]**

*[The parties request this instruction be given the first time a redacted document is presented to the jury during trial, if any.]*

In some of the documents that you will see in this case, you will notice that parts have been blacked out. In the law, those blacked out parts of documents are called "redactions," and they represent deletions from the documents. Redactions may be necessary for a variety of reasons.

For instance, they may delete private, personal, or otherwise sensitive information or information that raises issues that you are not being asked to decide in this case. I have worked with the parties to make sure that all of the redactions are correct and do not delete anything that you need to reach a full and fair decision in this case. You should not speculate regarding the content or nature of the redacted information, and you are not to draw any inferences from the fact that information was redacted.

## NO INFERENCE FROM FILING SUIT
### [Lilly Proposal]

The fact that Relator brought a lawsuit and is in court seeking damages creates no inference that he is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

Source(s): *U.S. ex rel. Colquitt v. Abbott Labs, et al.*, 2016 WL 10827342 (N.D. Tex.) (verbatim), *jury instructions and judgments affirmed by* 858 F.3d 365 (5th Cir. 2017).

Additional Authority: *Nanology Alpha Llc v. Witec Wissenschaftliche Instrumente Und Technologie Gmbh*, 2018 WL 5077316 (E.D. Tex. 2018) (instructing jury: "The fact that a plaintiff brought a lawsuit in this Court seeking damages creates no inference that the plaintiff is entitled to a judgment. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence."); *Shamberia Necole Smith, v. Kansa Technology, LLC.,* 2018 WL 7048796 (E.D. La. 2018) (instructing jury: "The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence."); *Ross v. M/V Stuttgart Express,* 2012 WL 3247738, (N.D. Cal. 2012) (instructing jury: "The fact that a person brought a lawsuit and is in court seeking damages creates no inference that this person is entitled to a judgment. Anyone may make a claim, and the fact of making that claim does not in any way tend to establish that claim, and is not evidence.").

**Relator's Objections**: Relator objects to Lilly's instruction as unnecessary and confusing. The jury will be instructed on drawing inference and on the burden of proof. The inference underlying this proposed instruction is subsumed within those instructions. Moreover, the Seventh Circuit Pattern Instructions do not include a pattern like this one.

## ABSENCE OF EVIDENCE
### [Relator Proposal]

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial. You are not to speculate regarding why certain evidence or information was not presented during the trial.

<u>Source(s)</u>: Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.18.

**<u>Lilly's Objection</u>**: Lilly objects to Relator's proposed instruction in its entirety. This instruction is not relevant to the parties' claims and defenses or the presentation of evidence at trial, and it risks confusing the jury.

## PARTY ADMISSIONS AND STIPULATIONS
### [Relator Proposal]

**Established Facts** – Prior to the trial, I instructed you that I have determined that certain facts have been conclusively established. As a reminder, that means you must accept these facts and no further proof is required to establish established facts.

**Requests For Admissions** – Requests for admissions are statements submitted by one party to the other party, where the submitting party requests that the receiving party admit certain facts. Before the trial began, the Relator sent requests for admissions to Lilly. Lilly provided written answers to these requests to admit, some of which have been received as evidence, including exhibits [list]. These answers are formal concessions and are binding on Lilly. Any facts that Lilly has admitted are conclusive. That means you must accept facts that have been admitted, and no further proof is required to establish admitted facts.

**Interrogatories** – Interrogatories are written questions. Before the trial began, both parties sent interrogatories to the other party, and both parties filed written responses. Some of those interrogatories have been received as evidence, including exhibits [list]. A response made to an interrogatory is deemed a sworn admission by that party, in the same way as if the party provided that testimony during the trial. You must give the answers the same consideration as if the answers were made from the witness stand.

**Statements of Undisputed Facts** – Before the trial began, both parties sent what are called "statements of undisputed facts" to the other party. Each party responded in writing. Some of those responses have been received in evidence, including exhibits [list]. You should treat those responses in the same manner as I previously instructed for interrogatories.

**Stipulations.**

*[If the parties are able to agree to certain stipulated facts, Relator proposes the following instruction be provided to the jurors.]*

The parties have stipulated, or agreed, to a number of facts in connection with this case. You must now treat these facts as having been proved for the purpose of this case. I will give you a document that lists those additional facts, and you can refer to them as needed in deliberations. I will now read you the facts that are not in dispute.

[Court to read from Statement of Stipulated Facts.]

Source(s): Fed. R. Civ. P. 36(b); *Admission conclusively established for pending action*, 10A Fed. Proc., L. Ed. § 26:703; *Use of answers to interrogatories*, 10A Fed. Proc., L. Ed. § 26:546; ND LR 56.1(d)(2)-(3); *Portis v. City of Chicago*, 2013 WL 12443086, at *1 (N.D. Ill. Sept. 24, 2013); Seventh Circuit Federal Jury Instructions (2017 Ed.) Nos. 2.05, 2.09; Fed. Rule Evidence 201(f) ("In a civil case, the court must instruct the jury to accept the noticed fact as conclusive.").

**Lilly's Objection**: Lilly objects to Relator's proposed instruction in its entirety. This instruction is not relevant to the parties' claims and defenses or the presentation of evidence at trial, and it risks confusing the jury. The parties already agreed to the Seventh Circuit pattern instruction describing evidence.

**EXPERT WITNESSES**
**[Agreed]**

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.21 (verbatim).

## SUMMARIES AND DEMONSTRATIVE EXHIBITS
### [Alternative Proposals by the Parties]

**RELATOR'S PROPOSAL**

The parties have presented certain exhibits in the form of charts and summaries.

[For stipulated charts/summaries]:  The parties agree that [describe summary in evidence] accurately summarizes the contents of documents, records, or books. You should consider these summaries just like all of the other evidence in the case.

[If not stipulated]:  Certain [describe summary in evidence] are in evidence.  [The original materials used to prepare those summaries also are in evidence.]  The charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence.  It is up to you to decide if the summaries are accurate.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.23.

**Lilly's Objection**:  Lilly objects to Relator's request to deviate from the Seventh Circuit Pattern instruction and requests the Pattern instruction be given as written.

**LILLY'S PROPOSAL**

*Stipulated Summaries*: The parties agree that [describe summary in evidence] accurately summarizes the contents of documents, records, or books. You should consider these summaries just like all of the other evidence in the case.

*Not Stipulated Summaries*:  Certain [describe summary in evidence] are in evidence.  [The original materials used to prepare those summaries also are in evidence.]  It is up to you to decide if the summaries are accurate.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.23 (verbatim).

## THE FALSE CLAIMS ACT (STATE AND FEDERAL)
### [Relator Proposal]

As I mentioned before the trial, Relator is pursuing claims against Lilly under the federal False Claims Act. The federal False Claims Act is a law designed to discourage false and fraudulent conduct against the United States federal government, and if false or fraudulent conduct is committed, to allow the United States federal government to be made whole.

Relator is also pursuing claims under the state-level False Claims Acts of Alaska, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New York, New Mexico, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, Washington, and Wisconsin. In addition, Relator is pursuing claims on behalf of the government of Washington D.C. In these instructions, I will refer to these states and Washington D.C. as the "States."

The State False Claims Acts are designed to discourage false and fraudulent conduct against the States, in addition to allowing the States to be made whole when false and fraudulent is committed against them.

Sources: 31 U.S.C. § 3729(a)(1), 31 U.S.C. § 3730(b), (c)(3), and (d); *U.S. ex rel. Fahner v. Alaska*, 591 F. Supp. 794, 798 (N.D. Ill. 1984).


**Lilly's Objection**: Lilly objects to this instruction in its entirety because it is not relevant to the jury's task, and it is prejudicial. The jury should not be instructed on Relator's misleading and incorrect characterization of the legislative intent. Moreover, there is already a proposed instruction summarizing the parties' claims. Finally, the jury does not need to be separately instructed on the state FCA claims because they share the same elements as the federal FCA.

## PREFATORY TO WORDS WITH SPECIALIZED LEGAL MEANING
### [Relator Proposal]

Relator alleges that Lilly committed five types of False Claims Act violations related to the AMPs reported by Lilly and the amount of rebates Lilly paid under the Medicaid Drug Rebate Program. For simplification, I will refer to these legal claims as counts 1, 2, 3, 4, and 5.

Before I explain what Relator must prove to establish Lilly's liability under each count, I will explain the meaning of some of the terms used in these counts. These are terms that have a specialized legal meaning that may differ from how they are used in non-legal contexts.

**Lilly's Objections:** Lilly objects to Relator's proposed instruction in its entirety as duplicative and unduly prejudicial. It is not necessary to include a "prefatory" to defining certain terms, especially when the preface merely repeats that Relator has alleged that Lilly violated the FCA.

In addition, Lilly objects to instructing the jury that Relator has five FCA counts. That is not correct: Relator's complaint has only three (other than duplicative state FCA claims). Moreover, the elements of the three claims overlap to a significant extent in this case. They can be stated much more clearly for the jury in a single instruction. Enumerating five separate "counts," each with supposedly unique but also overlapping elements is overly confusing to the jury and unnecessarily repetitive. *E.g.*, *JJCO, Inc. v. Isuzu Motors Am., Inc.*, 492 F. App'x 715, 717 (9th Cir. 2012) (affirming District Court's rejection of proposed instructions as "cumulative"); *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 382 (4th Cir. 2015) (jury instructions must "adequately inform[] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party").

**APPLICABLE TIME PERIOD**
**[Alternative Proposals]**

RELATOR'S PROPOSAL

The applicable time period for Relator's claims is January 1, 2005 through December 31, 2017.[2] Accordingly, you are to determine whether Lilly has violated the False Claims Acts with respect to the conduct that occurred during this time period.

**Lilly's Objections**:  Lilly objects that Relator's proposed time period is incorrect.  Relator is collaterally estopped from bringing claims before February 2, 2012, and there are no alleged false statements or false claims after March 31, 2016.  *See* Lilly's MSJ SOF ¶¶ 74-76 (citing Relator's Kimelblatt report as defining the time period of false claims as January 1, 2005 to March 31, 2016). CMS regulations expressly permit manufacturers to restate their AMP values back 12 quarters (or three years).  42 C.F.R. § 447.510(b)(2).  Relator concedes that "in December 2017, Lilly restated its previously-reported AMPs dating back to April 1, 2016 … to account for the ***inclusion*** of price increase value in those AMPs, and Lilly began including price increase value in AMP moving forward."  Relator's MSJ SOF, Dkt. 313 ¶ 121 (emphasis added).  Thus, there are no false claims after that date: Lilly did not simply send in a check to pay back a false claim, it specifically changed what the "claim" was in accordance with CMS rules.

LILLY'S PROPOSAL

Relator's claims in this case are limited to the time period February 2, 2012[3] to March 31, 2016.  You are to determine, considering the various instructions I give you, whether Relator has established that Lilly knowingly violated the False Claims Acts with respect to the conduct that occurred during that time period.

Source(s):  *U.S. ex rel. Colquitt v. Abbott Labs, et al.*, 2016 WL 10827342 (N.D. Tex.), *jury instructions and judgments affirmed by* 858 F.3d 365 (5th Cir. 2017) ("Relator may not recover for any violations of the False Claims Act occurring before February 23, 2004 or after June 21, 2006.").

Additional Authority: *U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc. et. al*, No. 2:04-cv-02289, Dkt. No. 402,  2013 WL 10541915 (C.D. Ill. Feb. 3, 2013) (instructing jury: "the plaintiffs claim that they were retaliated against after they advised management at Momence Meadows and government public health officials, on numerous occasions, beginning in early 2000 and continuing through February 2003, when their employment ended, of the inadequate care being provided to residents at Momence Meadows."); *U.S. ex rel. Frank Skinner, v. Armet Armored Vehicles, Inc., et al.,* 2015 WL 6746679 (W.D. Va.) (instructing jury: "The Relator, Frank Skinner, alleges that from 2006 through 2008, Defendants Armet Armored Vehicles, Inc. and

---

[2]     Relator agrees that if Lilly's motion in limine is fully granted with respect to collateral estoppel, the beginning date of the applicable time period would be February 2, 2012. However, even if that motion is granted, Relator disagrees that the final date of the applicable time period is March 31, 2016, as contemplated in Lilly's instruction.

[3]     *See* FN 1.

William R. Whyte presented or caused to be presented claims against the U.S. Government's Joint Contracting Command, Iraq, when the Defendants knew that their claims were false or fraudulent.").

**Relator's Objections**: Relator objects to Lilly's instruction as inconsistent with Relator's allegations, which are not limited to the time period of February 2, 2012 to March 31, 2016. As Relator will more fulsomely explain in his opposition to Lilly's motion in limine, there is no basis to invoke collateral estoppel for times before February 2, 2012. Likewise, and again as Relator will explain in his opposition to Lilly's motion in limine, there is no basis to absolve Lilly of liability for after March 31, 2016 based on its subsequent restatement.

**FINANCIAL INTEREST**
**[Alternative Proposals by the Parties]**

RELATOR'S PROPOSAL

Under the False Claims Act, Relator is entitled to a portion of any recovery made by the Government. This is known as a "relator's share" and is designed to encourage whistleblowers to come forward with information about misconduct committed against the Government and to mitigate the harms that whistleblowers suffer for doing so. The specific amount that Relator would be entitled to would be determined by me after you have reached your verdict, if you find that Lilly has committed a violation of the False Claims Acts. This amount is not, therefore, a matter for your consideration. However, you may consider Relator's personal financial interest in this lawsuit as one factor in determining whether he testified truthfully.[4]

Source(s): Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994) ("The purpose of the False Claims Act, of course, is to discourage fraud against the government, and the whistleblower provision is intended to encourage those with knowledge of fraud to come forward. In the cases cited above, the employees did not file *qui tam* actions, but they did express concerns about." (citation omitted)). U.S. ex rel. Alderson v. Quorum Health Grp., Inc., 171 F.Supp.2d 1323, 1331 (M.D. Fla. 2001) ("[R]ewards for relators allow and encourage assistance from the private citizenry that can make a significant impact on bolstering the Government's fraud enforcement efforts." (quotations omitted).

**Lilly's Objections**: Lilly objects to the instruction to the extent that it proposes to instruct the jury that the "relator's share" "is designed to encourage whistleblowers to come forward with information about misconduct committed against the Government." The jury should not be instructed on Relator's view of the policy reasons for awarding relators a share of FCA recoveries as it is irrelevant, incomplete, misleading, and likely to confuse the jury. The jury should also not be instructed that Relator is entitled to a portion of a recovery "to mitigate the harms that whistleblowers suffer," because it is a misleading and incomplete policy statement, and creates the false impression that Lilly somehow retaliated against him for bringing his claims.

LILLY'S PROPOSAL

If Relator succeeds in this lawsuit, he will receive 25 to 30 percent of any money judgment that you award. That amount would be determined by me after you have reached your verdict, if you find that Lilly has committed a violation of the False Claims Act. In reaching your verdict, you may consider Relator's personal financial interest in this lawsuit as one factor in determining whether he has testified truthfully.

Source(s): *U.S. ex rel. Colquitt v. Abbott Labs, et al.*, 2016 WL 10827342 (N.D. Tex.) (verbatim), *jury instructions and judgments affirmed by* 858 F.3d 365 (5th Cir. 2017); 31 U.S.C. § 3729(b)(1).

Additional Authority: *Solaia Tech. LLC v. Arvinmeritor, Inc.*, 2004 WL 549449, at *2 (N.D. Ill. Jan. 28, 2004) (holding that a potential witness's "financial interest in the outcome of the litigation

---

[4] As described in Relator's motion in limine, Relator objects to Lilly calling Relator as a witness. However, if the Court permits Lilly to do so, this is Relator's proposed instruction.

is clearly relevant to his potential bias"); *U.S. ex rel. Heath v. Dallas/Fort Worth Int'l Airport Bd.*, Case No. 99-cv-00100, Dkt. 312 at 6 (N.D. Tex. 2006) ("If Plaintiff succeeds in her qui tam lawsuit, she will receive a portion of any money judgment awarded to the Government. That amount would be determined by me after you have reached your verdict, if you find that Defendant has committed a violation of the False Claims Act. This amount is not, therefore, a matter for your consideration. In reaching your verdict, you may consider Plaintiffs personal financial interest in this lawsuit as one factor in determining whether she has testified truthfully about any false statement or claims she alleges Defendant made to the Government."); *U.S. ex rel. Karol v. L-3 Communications Vertex Aerospace, LLC*, Case No. 10-cv-00339, Dkt. 304 at 13 (N.D. Tex. Jan. 12, 2016) (similar); *United States v. Gambler,* 662 F.2d 834, 840 (D.C. Cir. 1981) (upholding jury instruction as to bias: "Accordingly, he does have a financial interest in the outcome and you may consider that fact in your consideration and weighing of his testimony just as you consider any interest anybody else may have in the outcome of the case in weighing their testimony."); *see also U.S. ex rel. Koch* v. *Koch Indus. Inc.*, 1999 WL 34591292 (N.D. Okla. 1999) ("[I]n this litigation, the United States is what is called the 'real party in interest,' and will receive 70% to 75% of whatever amount, if any, is awarded. The Plaintiffs are entitled to receive 25% to 30% of any award.").

**Relator's Objections**:  As described in Relator's motion in limine, Relator objects to Lilly calling Relator as a witness. However, if the Court permits Relator to do so, Relator objects to Lilly's instruction as incomplete and misleading. Lilly's instruction would inform the jury about Relator's potential financial recovery without appropriately contextualizing it in the structure of the False Claims Act.

**BURDEN OF PROOF**
**[Alternative Proposals by the Parties]**

<u>**RELATOR'S PROPOSAL**</u>

As I mentioned before the trial, Relator must prove that the factual basis of the claims is more likely true than not true. This burden of proof is sometimes called the "preponderance of the evidence" standard.

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

**Lilly Objection**: Lilly objects to Relator's request to deviate from the Pattern instruction, and requests the Pattern instruction be given as written.

<u>**LILLY'S PROPOSAL**</u>

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.27 (verbatim); 31 U.S.C. § 3731; *First Midwest v. City of Chicago*, No. 14-cv-09665, Dkt. 444 (Oct. 26, 2017) (Leinenweber, J.) (verbatim).

## OVERVIEW OF ALLEGED FALSE CLAIMS ACT VIOLATIONS
### [Relator Proposal]

As I mentioned, Relator alleges that Lilly committed five types of False Claims Act violations that I will refer to as counts 1, 2, 3, 4, and 5.

Unless otherwise noted, these counts are asserted on behalf of both the United States and the States, and the term "government" refers both to the United States federal government and the governments of the States.

Count I alleges that Lilly knowingly caused state Medicaid programs to present false claims to the United States Government for federal matching funds.

Count II alleges that Lilly knowingly made or used false statements, or caused false statements to be made or used, and those false statements were material to false claims presented to the United States Government for federal matching funds.

Count III alleges that Lilly knowingly made or used false statements, or caused false statements to be made or used, and those false statements were material to Lilly's obligation to pay rebates it owed to the government.

Count IV alleges that Lilly knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay rebates it owed to the government.

Count V alleges that Lilly was in possession of rebate funds belonging to the United States Government under the Medicaid rebate program and delivered, or caused to be delivered, less than all of that money. This claim is asserted solely on behalf of the United States under the federal False Claims Act.

Lilly denies these allegations.

I will now explain what Relator must show to establish Lilly's liability under each Count.

Source: Amended Complaint; 31 U.S.C. § 3729(a)(1)(A), (B), (D), (G).

**<u>Lilly's Objections</u>:** Lilly objects to Relator's proposed instruction in its entirety because it is overly confusing to the jury, misleading, and incorrect. First, this instruction is duplicative of a proposed instruction on the elements of Relator's claims.

Second, Relator's complaint has only three counts (other than duplicative state FCA claims), not five.

Third, the elements of the three counts overlap in this case and can be stated with a single test. Enumerating five separate "counts," each with supposedly unique but overlapping elements is overly confusing to the jury and unnecessarily repetitive. *E.g.*, *JJCO, Inc. v. Isuzu Motors Am., Inc.*, 492 F. App'x 715, 717 (9th Cir. 2012) (affirming District Court's rejection of proposed instructions as "cumulative"); *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 382 (4th Cir. 2015)

43

(jury instructions must "adequately inform[] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party"); *Venezia v. Bentley Motors, Inc.*, 2009 WL 10673383, at *2 (D. Ariz. Apr. 2, 2009), *aff'd,* 374 F. App'x 765 (9th Cir. 2010) (internal citation omitted) ("A district court may refuse the requested instructions because they are … unnecessary because they were adequately subsumed by the instructions given to the jury.").

Fourth, Relator's effort to enumerate five independent FCA counts is wrong because each one challenges the same alleged conduct by Lilly.  The FCA does not permit redundant bases of liability under the statute for the same conduct. *E.g.*, *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021); *U.S. ex rel. Petratos v. Genentech, Inc.*, 141 F. Supp. 3d 311, 322 (D.N.J. 2015), *aff'd,* 855 F.3d 481 (3d Cir. 2017) ("Claims raised under the FCA's reverse false claims provision 'may not be redundant of FCA claims asserted under other provisions of [the FCA]'"); *U.S. ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, 2016 WL 5661644, at *11 (N.D. Tex. Sept. 30, 2016) (FCA does not permit "duplicate bas[e]s" of liability for same conduct); *U.S. ex rel. Ruscher v. Omnicare, Inc.*, 2014 WL 2618158, at *27 (S.D. Tex. June 12, 2014) (holding the FCA does not permit liability under multiple sections based on "the same set of operative facts"); *U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010) (holding the FCA does not permit "redundant bas[e]s" of liability for the same conduct); *U.S. ex rel. Taylor v. Gabelli*, 345 F.Supp.2d 313, 338–39 & n.142 (S.D.N.Y. 2004) (same).  For that reason, any overview of the alleged claims should be stated as a single test in order to avoid inviting the jury to impermissibly find redundant bases for liability under the False Claims Act based on the same conduct.

## ELEMENTS OF FALSE CLAIMS ACT VIOLATION
### [Alternative Proposals by the Parties]

**RELATOR'S PROPOSAL**

### COUNT 1 – CAUSING THE PRESENTATION OF FALSE CLAIMS [Relator]

For you to find Lilly liable under Count 1, the Relator must show by the preponderance of the evidence the following:

*First*, Lilly caused the States to present false claims for payment or approval to the United States Government for federal matching funds;

*Second,* the falsity was material to a decision to pay or approve the claim; and

*Third*, Lilly acted knowingly.

Source(s): 31 U.S.C. § 3729(a)(1); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, 962-63 (2016); Jury Instructions in *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 1:02-cv-06074, ECF No. 722 (Oct. 30, 2006) (Leinenweber, J.).

### COUNT 2 – FALSE STATEMENTS MATERIAL TO FALSE CLAIMS [Relator]

For you to find Lilly liable under Count 2, the Relator must show by the preponderance of the evidence the following:

*First*, that the false AMPs or false certifications that Lilly submitted were material to false claims; and

*Second*, that Lilly acted knowingly.

Sources: 31 U.S.C. §3729(a)(1)(B); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 965 (2016).

### COUNT 3 – FALSE STATEMENTS MATERIAL TO OBLIGATIONS TO PAY

For you to find Lilly liable under Count 3, the Relator must show by the preponderance of the evidence the following:

*First*, that the false AMPs or false certifications that Lilly submitted were material to Lilly's obligation to pay or transmit a rebate to the government.

*Second*, Lilly acted knowingly.

Sources: 31 U.S.C. §3729(a)(1)(G); James B. Helmer, Jr. & Erin M. Campbell, Jury Instructions for False Claims Act Cases, 84 U. Cin. L. Rev. 943, 972 (2016).

## COUNT 4 – CONCEALING, AVOIDING, OR REDUCING OBLIGATIONS TO PAY

For you to find Lilly liable under Count 4, the Relator must show by the preponderance of the evidence the following:

*First*, that Lilly either (1) concealed an obligation to pay all or part of a rebate to the government OR (2) improperly avoided or decreased an obligation to pay a rebate to the government; and

*Second*, Lilly acted knowingly.

Sources: 31 U.S.C. §3729(a)(1)(G); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, 972 (2016).

## COUNT 5 – CONVERSION VIOLATION

For you to find Lilly liable under Count 5, the Relator must show by the preponderance of the evidence the following:

*First*, Lilly has possession, custody, or control of rebate money to be used by the United States government;

*Second*, Lilly delivered, or caused to be delivered, less than all of that money; and

*Third*, Lilly acted knowingly.

Sources: 31 U.S.C. §3729(a)(1)(D); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, 969 (2016).

**<u>Lilly's Objections</u>:** Lilly objects to Relator's proposed instruction in its entirety as overly confusing to the jury, and a misleading and incorrect characterization of the claims. First, Relator's complaint has only three counts (other than duplicative state FCA claims), not five.

Second, on proposed Count Two, Relator has not alleged that Lilly's AMPs were material to any demands for payment that Lilly submitted to the Government, and therefore that instruction is erroneous.

Third, the instructions erroneously omit proximate causation as an element of Relator's FCA claims. *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 745 (7th Cir. 2021) (Proximate causation "is an element of an FCA claim: the plaintiff must establish that the defendant's fraud 'was a material element and a substantial factor in bringing about the injury.'" (quoting *United States v. Luce*, 873 F.3d 999, 1012 (7th Cir. 2017)).

Fourth, the elements of Relator's three counts overlap in this case and can be stated with a single test. Enumerating five separate "counts," each with supposedly unique but overlapping elements is overly confusing to the jury and unnecessarily repetitive. *E.g.*, *JJCO, Inc. v. Isuzu Motors Am., Inc.*, 492 F. App'x 715, 717 (9th Cir. 2012) (affirming District Court's rejection of

proposed instructions as "cumulative"); *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 382 (4th Cir. 2015) (jury instructions must "adequately inform[] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party"); *Venezia v. Bentley Motors, Inc.*, 2009 WL 10673383, at *2 (D. Ariz. Apr. 2, 2009), *aff'd*, 374 F. App'x 765 (9th Cir. 2010) (internal citation omitted) ("A district court may refuse the requested instructions because they are either unduly argumentative or unnecessary because they were adequately subsumed by the instructions given to the jury.").

It is also wrong, as the proposed instruction would impermissibly permit the jury to find redundant bases for liability under the FCA based on the same conduct. *E.g.*, *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021); *U.S. ex rel. Petratos v. Genentech, Inc.*, 141 F. Supp. 3d 311, 322 (D.N.J. 2015), *aff'd*, 855 F.3d 481 (3d Cir. 2017) ("Claims raised under the FCA's reverse false claims provision 'may not be redundant of FCA claims asserted under other provisions of [the FCA]'"); *U.S. ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, 2016 WL 5661644, at *11 (N.D. Tex. Sept. 30, 2016) (FCA does not permit "duplicate bas[es] of liability for same conduct); *U.S. ex rel. Ruscher v. Omnicare, Inc.*, 2014 WL 2618158, at *27 (S.D. Tex. June 12, 2014) (holding the FCA does not permit liability under multiple sections based on "the same set of operative facts"); *U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010) (holding the FCA does not permit "redundant bas[es]" of liability for the same conduct); *U.S. ex rel. Taylor v. Gabelli*, 345 F.Supp.2d 313, 338–39 & n.142 (S.D.N.Y. 2004) (same).

## LILLY'S PROPOSAL

Relator alleges that Lilly violated the False Claims Act between February 2, 2012[5] and March 31, 2016 by excluding from the Average Manufacture Price it submits to the Centers for Medicare and Medicaid (CMS), which is part of the Department of Health and Human Services (HHS), the value of a term in its wholesaler agreements called "price increase value."

In order to sustain Relator's burden of proof for its claims against Lilly, Relator must prove each of the following elements by a preponderance of the evidence:

First, that Lilly made or caused to be made a false claim for payment, a false statement material to a claim for payment, or a false statement material to an obligation to pay money to HHS.

Second, that Lilly "knowingly" made or caused to be made the false claim or statement.

Third, that the false claim or statement was "material" to HHS; and

Fourth, that the false claim or statement proximately caused the alleged Government losses.

If you find that Relator has failed to establish any one of these elements by a preponderance of evidence, then you must return a verdict for Lilly. You may return a verdict for Relator only if

---

[5] *See* FN1.

he establishes all of these elements by a preponderance of the evidence for each claim or statement submitted.

Source(s): 31 U.S.C. § 3729; *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 1:02-cv-06074, Dkt. No. 772 at 24 (N.D. Ill. Oct. 30, 2006) (Leinenweber, J.) ("Plaintiffs must prove each of the following elements by a preponderance of the evidence: First: that Amerigroup Illinois, Inc. presented, or caused to be presented, a claim for payment to the State of Illinois and the United States. Second: that the claim presented by Amerigroup Illinois to the State of Illinois, or caused to be presented to the United States, was false, or that Amerigroup Illinois made a false statement to get a false or fraudulent claim paid by the government. Third: that the false statements or claims were made by Amerigroup Illinois 'knowingly'; and Fourth: that the false claim or statement involved facts that were material to the government's payment.").

Additional Authority: Androphy, Federal False Claims Act and Qui Tam Litigation, § 9B.05 (2019) (sample instruction: "In order to sustain Plaintiffs' burden of proof for their claims against Defendant on the theory of submitting false claims and causing false claims to be submitted to the United States [and the State of ___], Plaintiffs must prove each of the following element by a preponderance of the evidence: First, that Defendant presented, or caused to be presented, claims for payment to the United States [or the State of ___]. Second, that the claims presented, or caused to be presented, by Defendant to the United States [or the State of ___] were false, or that Defendant made a false statement to get a false and/or fraudulent claim paid by the United States [or the State of ___]. Third, that the false statements or claims were made by Defendant "knowingly"; and Fourth, that the false claim or statement involved facts that were material to the government's payment decision.") (brackets in orig.); *see also U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) (listing elements of FCA claim; "An FCA cause of action of this sort requires proof of three elements: (1) the defendant made a record or statement in order to get the government to pay money; (2) the record or statement was false or fraudulent; and (3) the defendant knew it was false or fraudulent."); *Univ. Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 181 (2016) ("A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."); *U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc. et. al*, No. 2:04-cv-02289, Dkt. No. 402 at 20 (C.D. Ill. Feb. 3, 2013) (Baker, J.) ("To recover on their claim of violation of the False Claims Act, the plaintiffs have the burden of proving each of the following propositions, considering each defendant separately: First, that the defendant under consideration made or caused to be made claims for government payments for services rendered to residents of the Momence Meadows Nursing Center in one or more of the ways claimed by the plaintiffs; and Second, that the claims were false or fraudulent as I have defined those terms for you; and Third, that the defendant acted knowingly as I have defined that term for you; and Fourth, that the government suffered damages."); *id.* ("[I]f you find from your consideration of all the evidence that any one of the propositions has not been proved, then you should find in favor of the defendant under consideration and against the plaintiffs."); *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc.*, 17 F. 4th 732, 745 (7th Cir. 2021) (proximate cause "is an element of an FCA claim" relators must prove for liability and damages); *United States v. Luce*, 873 F.3d 999, 1014 (7th Cir. 2017) (adopting proximate cause standard for FCA cases).

**Relator's Objections**: Relator objects to Lilly's proposed instruction as confusing, prejudicial, and overly-simplistic. Relator is pursuing different theories of false claims liability, while Lilly's proposal confusingly collapses distinct theories of liability into one set of elements.

In addition, Relator objects to the portion of Lilly's instruction providing that Relator must establish that " the false claim or statement was 'material' to HHS." The FCA does not require that a defendant's conduct be material to a specific government agency, as such. Although that is one way of establishing materiality, materiality is also established where "a reasonable person would attach importance to it in determining a choice of action in the transaction." *U.S ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh, Pennsylvania*, 728 F. App'x 101, 106 (3d Cir. 2018) (*citing Universal Health Servs., Inc. v. U.S.ex rel. Escobar,* 579 U.S. 176, 193 (2016)). By cabining materiality "to HHS," Lilly proposal improperly omits the "reasonable person" standard.

Finally, Relator objects to the last portion of Lilly's proposed instruction – "If you find that Relator has failed to establish any one of these elements by a preponderance of evidence, then you must return a verdict for Lilly.  You may return a verdict for Relator only if he establishes all of these elements by a preponderance of the evidence for each claim or statement submitted." – as unnecessary, confusing, and prejudicial. The jury will have already been instructed on the burden of proof and the preponderance of the evidence standard.

## CLAIM
### [Alternative Proposals by the Parties]

RELATOR'S PROPOSAL

A "claim" means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States or States have title to the money or property, that is presented to an officer, employee, or agent of the United States or States. It does not matter if the request was submitted in paper or electronic form; either form constitutes a claim.

You are instructed that each individual CMS Form 37 and CMS Form 64 is a "claim." As you heard during the trial, these are the forms that State Medicaid Programs submit to receive federal matching funds from the United States federal government.

**Lilly's Objections**: Lilly objects to Relator's request to deviate from the statutory definition of "claim." Lilly further objects to the instruction as improperly seeking to instruct the jury that Relator has satisfied elements of his claims when he has not and they are in dispute. Relator has the burden to prove at trial that each individual CMS Form 37 and CMS Form 64 is a "claim." It is improper to seek an instruction that treats those issues as decided. *E.g.*, *United States v. Jensen*, 573 F. App'x 863, 874 (11th Cir. 2014) ("Argumentative statements regarding the application of evidence to the law are appropriate in closings, not jury instructions."); *George v. Pro. Disposables Int'l, Inc.*, 2016 WL 3029936, at *1 (S.D.N.Y. May 16, 2016) (denying Plaintiff's letter-application because Defendant "has no obligation to stipulate to facts"); *JJCO, Inc. v. Isuzu Motors Am., Inc.*, 492 F. App'x 715, 717 (9th Cir. 2012) (affirming District Court's decision that "proposed instructions were cumulative, argumentative").

LILLY'S PROPOSAL

A "claim" means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States or States have title to the money or property, that is presented to an officer, employee, or agent of the United States.

Source(s): 31 U.S.C. § 3729(b)(2).

## STATEMENT AND RECORD
### [Relator Proposal]

A "statement" or "record" can take any form. It does not matter if the statement or record was in paper or electronic form.

You are instructed that Lilly's AMP submissions and its certifications are "statements" and "records." Further, you are instructed that each individual CMS Form 37 and CMS Form 64 is a "statement" and "record."

Sources: *U.S. ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971, 986 (E.D. Wis. 1998), *aff'd*, 168 F.3d 1013 (7th Cir. 1999)


**Lilly's Objections:** Lilly objects to Relator's proposed instruction in its entirety. The proposed instruction mischaracterizes the definition of a "statement" or "record." Neither is defined by statute and they do not require a specialized definition. Lilly further objects to the instruction as improperly seeking to instruct the jury that Relator has satisfied elements of his claims when he has not and they are in dispute. Relator has the burden to prove at trial that AMP submissions and certifications are "statements" and "records" and each individual CMS Form 37 and CMS Form 64 is a "statement" and "record." It is improper to seek an instruction that treats those issues as decided. *E.g.*, *United States v. Jensen*, 573 F. App'x 863, 874 (11th Cir. 2014) ("Argumentative statements regarding the application of evidence to the law are appropriate in closings, not jury instructions."); *George v. Pro. Disposables Int'l, Inc.*, 2016 WL 3029936, at *1 (S.D.N.Y. May 16, 2016) (denying Plaintiff's letter-application because Defendant "has no obligation to stipulate to facts"); *JJCO, Inc. v. Isuzu Motors Am., Inc.*, 492 F. App'x 715, 717 (9th Cir. 2012) (affirming District Court's decision that "proposed instructions were cumulative, argumentative").

## FALSE OR FRAUDULENT
### [Alternative Proposals by the Parties]

RELATOR'S PROPOSAL

A claim, statement, or record is "false" if it is incorrect when submitted, made, or used. It is also "false" if it is a half-truth; that is, a defendant makes a representation in submitting a claim that is truthful as far as it goes, but fails to disclose material information that makes the representation misleading.

As I previously discussed, this Court has already found that the statements and certifications made by Lilly to the government concerning its AMPs were false. They were false because Lilly did not include the price increase value as part of the price, and Lilly was required to do so under the applicable legal requirements.

Therefore, in determining whether the legal elements of any of the five counts I described are satisfied, you need not decide whether Lilly's statements and certifications about AMP were true or false. The Court has already decided, and you must accept as decided, that they were false.

Source(s): *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 188 (2016); *U.S. ex rel. Streck v. Takeda Pharms. Am., Inc.,* 2022 WL 595308 (N.D. Ill. Feb. 28, 2022) (Leinenweber, J.).

**Lilly's Objections:** Lilly objects to the instruction as a misleading and incorrect statement of the law, argumentative, duplicative, and unduly prejudicial. *United States v. Risch,* 87 F.3d 240, 242 (8th Cir. 1996) (holding district court is not obligated to give an argumentative jury instruction); *United States v. Davis,* 487 F.2d 112, 126-27 (5th Cir. 1973) (upholding district court's rejection of a defendant's proposed instruction that was "argumentative in content"); *United States v. Mosquera,* 886 F.3d 1032, 1051 (11th Cir. 2018) (affirming denial of proposed instruction that "was unnecessarily repetitive… All the proposed instruction would have done is connect the court's statements of the law about knowledge and specific intent to the facts at issue in this case.").

LILLY'S PROPOSAL

A claim or statement is false if it is incorrect when made. I have determined in a decision on February 28, 2022 that Lilly's omission of "price increase value" from Lilly's Average Manufacturer Price calculation made Lilly's Average Manufacturer Price false.

Source(s): *U.S. ex rel. Colquitt v. Abbott Labs, et al.*, 2016 WL 10827342 (N.D. Tex.), *jury instructions and judgments affirmed by* 858 F.3d 365 (5th Cir. 2017) ("A claim is 'false' if it is untrue when made."); 3C Fed. Jury Prac. & Instr. § 178:30 ("A claim is 'false' if it is an assertion that is untrue when made or when used.").

Additional Authority: *Harman v. Trinity Ind. Inc.*, Case No. 12-cv-89, Dkt. 584 at 43 (E.D. Tex. Oct. 21, 2014) ("A record or statement is false if it is an assertion that is untrue when made or when used."); *U.S. ex rel. Loughren v. UnumProvident Corp.*, Case No. 03-cv-11699, Dkt. 459 at

196 (D. Mass. Oct. 16, 2008) ("What do I mean by 'false' or 'fraudulent'? A statement is false if it is an assertion of eligibility that is untrue when made or when used. A claim is false if it is untrue when made or when submitted. A claim is fraudulent if it is an assertion that is known to be untrue when made or submitted. The falsity or fraudulence of a claim or the falsity of a statement is determined at the time of the submission of the claim with the making of the statement.").

**Relator's Objections**: Relator objects to Lilly's instruction as incomplete and confusing, particularly in light of Lilly's preceding proposal on the "Elements of False Claims Act Violations." In that instruction, Lilly proposed that the jury be instructed that "that Lilly made or caused to be made a false claim for payment, a false statement material to a claim for payment, or a false statement material to an obligation to pay money to HHS." Accordingly, if the Court is inclined to give that instruction, the jury should be made aware that the jury need not and cannot consider this issue since it has already been resolved by the Court as a matter of law.

Moreover, Relator objects to Lilly's proposal because it omits that the Court found that *both* Lilly's AMPs *and* its related certifications were false as a matter of law. *U.S. ex rel. Streck v. Takeda Pharms. Am., Inc.,* 2022 WL 595308, at *14 (N.D. Ill. Feb. 28, 2022) (Leinenweber, J.) ("[T]he Court grants Relator's motion for summary judgment on falsity and holds that Lilly's AMP calculations and related certifications were factually and legally false.").

## FALSITY ALONE INSUFFICIENT TO ESTABLISH LIABILITY
### [Lilly Proposal]

That a claim or statement is false is insufficient to establish liability under the False Claims Act.

Source(s): *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 740 (7th Cir. 2021) ("Not all false statements are actionable under the Act. … the relator must establish (1) falsity, (2) causation, (3) knowledge, and (4) materiality."); *United States v. J-M Manufacturing Co., Inc.*, 2013 WL 6253452 (C.D. Cal. Nov. 14, 2013) (instructing jury: "a violation of a regulatory provision or contractual requirement, in the absence of a knowingly false or misleading representation, does not amount to fraud" under the FCA); *U.S. ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan for Emps. of Hawaii Pac. Health*, 343 F. App'x 279, 281 (9th Cir. 2009) ("[T]he FCA requires more than just a false statement—it requires that the defendant knew the claim was false.") (*citing U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 460 (9th Cir. 1999)).

Additional Authority: *U.S. ex rel. Schutte v. Supervalu Inc.*, 9 F.4th 455, 459 (7th Cir. 2021) (affirming summary judgment for FCA defendants on scienter and noting district court had found for relator on falsity); *U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 832 (7th Cir. 2011) (holding the FCA "does not penalize all factually inaccurate statements, but only those statements made with knowledge of their falsity"); *U.S. ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 842 (7th Cir. 2018) ("At most, Berkowitz' allegations amount to claims that the defendants made mistakes or were negligent. This alone is insufficient to infer fraud under the FCA."); *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016) ("The False Claims Act is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations."); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996) ("It is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA").

**Relator's Objections**: Relator objects to Lilly's instruction as unnecessary and confusing. The jury will be instructed on the elements of Relator's causes of action, and Lilly's proposed instruction simply repeats one component. Moreover, Lilly does not cite any FCA cases where a judge such a jury instruction.

**KNOWINGLY**
**[Alternative Proposals by the Parties]**

**RELATOR'S PROPOSAL**

Lilly acted "knowingly" if one of the following is true:

(1)    Lilly had actual knowledge that its AMPs were false or its certifications to the government were false; or

(2)    Lilly acted in deliberate ignorance of whether its AMPs were false, or Lilly acted in deliberate ignorance of whether its certifications to the government were false, or

(3)    Lilly acted in reckless disregard of whether its AMPs were false, or Lilly acted in deliberate ignorance of whether its certifications to the government were false.

It is not necessary for Relator to prove that Lilly acted with intent to defraud anyone.

In evaluating whether Lilly had sufficient knowledge, you should consider that as a participant in the Medicaid Drug Rebate Program, Lilly had a duty to familiarize itself with the applicable legal requirements, including by making a reasonable and prudent inquiry regarding how to calculate AMP in accord with the law as stated in these instructions.

Lilly acted with deliberate ignorance if it does not know something because Lilly deliberately closed its eyes to clear warning signs or to what otherwise would have been obvious to it.

Lilly acted with reckless disregard if it failed to make such inquiry as would be reasonable and prudent to conduct under the circumstances. This includes failing to conduct a proper investigation regarding how to correctly calculate AMP.

As previously discussed, the Court also already has found that Lilly's interpretation of contractual, regulatory, and contractual requirements concerning the calculation of AMP as not requiring it to include price increase value was objectively unreasonable. That is, you must take it as decided that no reasonable person could interpret these requirements as permitting Lilly to exclude price increase value from the calculation of AMP, and that any assumption Lilly made in that regard was objectively unreasonable. The only question is whether Lilly had actual knowledge of the falsity of its AMPs or certifications, or acted in deliberate ignorance or in reckless disregard of the falsity of its AMP calculations and certifications.

Source(s): 31 U.S.C. §3729(b)(1)(A)-(B); *U.S. ex rel. Streck v. Takeda Pharms. Am., Inc.,* 2022 WL 595308, at **5, 14 (N.D. Ill. Feb. 28, 2022) (Leinenweber, J.); *Heckler v. Community of Health Servs. Of Crawford Cty., Inc.*, 467 U.S. 51, 64 (1984); *U.S v. King-Vassal*, 728 F.3d 707, 713 (7th Cir. 2013); *U.S ex rel Yarberry v. Sears Holdings Corp.*, 2013 WL 12111729, at *11 (S.D. Ill. Nov. 20, 2013); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943 No. 11.B (2016).

**Lilly's Objections:** Lilly objects to Relator's proposed instruction as a misleading and incorrect statement of the law, argumentative, duplicative, and unduly prejudicial. The jury should be

instructed on the elements of Relator's claim and the law. *United States v. Risch,* 87 F.3d 240, 242 (8th Cir. 1996) (holding district court is not obligated to give an argumentative jury instruction); *United States v. Davis,* 487 F.2d 112, 126-27 (5th Cir. 1973) (upholding district court's rejection of a defendant's proposed instruction that was "argumentative in content").

In addition, the instruction improperly purports to apply law to facts, which is the jury's task. *E.g.*, *United States v. Mosquera*, 886 F.3d 1032, 1051 (11th Cir. 2018) (affirming denial of proposed instruction that "was unnecessarily repetitive… All the proposed instruction would have done is connect the court's statements of the law about knowledge and specific intent to the facts at issue in this case.").

Lilly further objects that the final paragraph of the proposed instruction violates Federal Rule of Evidence 403. *Safeco*'s objective standard is irrelevant to the scienter question at issue for the trial, which is whether Relator can prove Lilly acted with the requisite subjective intent to violate the FCA. *E.g.*, *U.S. ex rel. Schutte v. Supervalu Inc.*, 9 F.4th 455, 470 (7th Cir. 2021) (holding "subjective intent does not matter" under *Safeco*'s threshold objective standard). Instructing the jury on the court's *Safeco* ruling would be clear reversible error: it serves no purpose but to confuse the issues, mislead the jury, and cause unfair prejudice.

## LILLY'S PROPOSAL

"Knowingly" means that a person or entity must have actual knowledge that the claim was false; or deliberately ignores facts which would demonstrate to a reasonable person that the claim was false; or recklessly disregards facts that would demonstrate to a reasonable person that the claim was false. The term "knowingly" does not require any proof of specific intent to defraud.

A person with "actual knowledge" positively knows something. Relator may establish that Defendant had actual knowledge through direct or circumstantial evidence, as defined above.

A person does not act "knowingly" if his or its misstatement was the result of an innocent mistake or negligence.

A person "deliberately ignores" facts if he or it deliberately closes his or its eyes to what would otherwise have been obvious to him or it or acts with willful blindness. Knowledge cannot be established merely by demonstrating that a person was negligent, careless, or foolish.

A person "recklessly disregards" facts if he or it has a high degree of awareness of the probable falsity of his or its statement.

Source(s): *U.S. ex rel. Colquitt v. Abbott Labs, et al.*, 2016 WL 10827342 (N.D. Tex.) (verbatim), *jury instructions and judgments affirmed by* 858 F.3d 365 (5th Cir. 2017); 31 U.S.C. § 3729(b)(1).

Additional Authority: *U.S. v. King-Vassel*, 728 F.3d 707, 712–13 (7th Cir. 2013) ("[W]e have not found the need to define [reckless disregard] with any more specificity than to say that it does not encompass [i]nnocent mistakes or negligence") (citations omitted); *U.S. ex rel. Lamers v. City of Green Bay,* 168 F.3d 1013, 1018 (7th Cir. 1999) ("[W]e have held that innocent mistakes or

negligence are not actionable.") (citation omitted); *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 1000–01 (7th Cir. 2014) (reckless disregard means "grossly negligent"); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts," and "require[s] active efforts … to avoid knowing about the infringing nature of the activities."); *U.S. ex rel. Purcell v. MWI*, No. 98-2088, Dkt. No. 506 at 37 (D.D.C. Feb. 23, 2015) ("[S]ometimes the courts describe deliberate ignorance as willful blindness."); *id*. ("[R]eckless disregard is an extreme version of ordinary negligence, and it's often referred to as gross negligence plus.  A defendant that makes a mistake or is negligent without more does not act with reckless disregard.").

**Relator's Objections**: Relator objects to Lilly's proposed instruction as incomplete, unhelpful, and confusing. Lilly's proposal does not account for the Court's determination that, as a matter of law, Lilly's position was objectively unreasonable. *U.S. ex rel. Streck v. Takeda Pharms. Am., Inc.,* 2022 WL 595308, at **5, 14 (N.D. Ill. Feb. 28, 2022) (Leinenweber, J.). Moreover, Lilly's proposal ignores omits the critical context that as a participant the Medicaid Drug Rebate Program, Lilly had an obligation to provide accurate information and to familiarize itself with relevant legal requirements. *Id*. at 5 ("Under the False Claims Act, the burden is on the individual submitting claims to provide accurate information, not on the government entity to act in response to other communications."); *Heckler v. Cmty. Health Servs. of Crawford Cty*., Inc., 467 U.S. 51, 63 (1984) ("As a participant in the Medicare program, respondent had a duty to familiarize itself with the legal requirements for cost reimbursement. "); ); *U.S v. King-Vassal*, 728 F.3d 707, 713 (7th Cir. 2013) (defendant required to make "reasonable and prudent inquiry").

## NEGLIGENCE DOES NOT SUFFICE
### [Alternative Proposals by the Parties]

RELATOR'S POPOSAL

A defendant does not act "knowingly" if its conduct was the result of an innocent mistake. However, if Lilly failed to adhere to its duty to familiarize itself with the applicable legal requirements, that is not an "innocent mistake." Similarly, if Lilly was willfully blind as to the correctness of its AMPs or certifications, that is not an "innocent mistake."

**Lilly's Objections**:  Lilly objects to the proposed instruction's second and third sentences as argumentative and an attempt to apply law to facts for the jury.  In addition, the proposal is wrong on the law.  Negligence is a mens rea that is different from, and involves more culpability than, an "innocent mistake."

LILLY'S PROPOSAL

A defendant does not act "knowingly" if its conduct was the result of an innocent mistake or negligence.

Source(s):  *U.S. ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 561–62 (7th Cir. 2015) ("[K]nowingly false statements do not include those that are the product of '[i]nnocent mistakes or negligence.' . . . Even if [defendant] was generally aware of its quality requirements, it lacked 'knowledge' if the particular false statements were the result of a difference in interpretation or even negligence."); *U.S. ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 842 (7th Cir. 2018) ("At most, Berkowitz' allegations amount to claims that the defendants made mistakes or were negligent. This alone is insufficient to infer fraud under the FCA."); *see also U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 122 (2d Cir. 2021) ("[W]idespread negligence and mismanagement" are not sufficient to show FCA scienter).

**Relator's Objections**:  Relator objects to Lilly's proposed instruction as unhelpful, unnecessary, and confusing. The jury will be separately instructed on the FCA's scienter standard, and this instruction simply discusses one application of the scienter standard. To the extent the Court is inclined to give this instruction at all, it should include the important context that "innocent mistakes" do not include circumstances where a defendant failed to adhere to its obligations to provide accurate information to the Government and to familiarize itself with the relevant legal requirements.  *U.S. ex rel. Streck v. Takeda Pharms. Am., Inc.,* 2022 WL 595308, at *5 (N.D. Ill. Feb. 28, 2022) (Leinenweber, J.)  ("Under the False Claims Act, the burden is on the individual submitting claims to provide accurate information, not on the government entity to act in response to other communications."); *Heckler v. Cmty. Health Servs. of Crawford Cty*., Inc., 467 U.S. 51, 63 (1984) ("As a participant in the Medicare program, respondent had a duty to familiarize itself with the legal requirements for cost reimbursement. "); ); *U.S v. King-Vassal*, 728 F.3d 707, 713 (7th Cir. 2013) (defendant required to make "reasonable and prudent inquiry").

## KNOWLEDGE AND REGULATORY COMPLEXITY
### [Lilly Proposal]

Failing to comply with regulatory complexity alone does not entail a knowingly false representation.

Source(s): *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) ("Tripping up on a regulatory complexity does not entail a knowingly false representation."); *see also U.S. ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 842 (7th Cir. 2018) (quoting same language).

**Relator's Objections**:  Relator objects to Lilly's proposed instruction as unhelpful, unnecessary, and confusing. The jury will be separately instructed on the FCA's scienter standard, and this instruction simply discusses one application of the scienter standard. In addition, this instruction is redundant of Lilly's preceding proposed instruction on whether falsity alone supports FCA liability.  Moreover, this instruction is confusing in that it improperly suggests to the jury that "regulatory complexity" is at issue in this case, whereas the Court determined as a matter of law that Lilly's position is inconsistent with the straight word meaning of the applicable legal requirements. Finally, Lilly's proposal omits the critical context that as a participant the Medicaid Drug Rebate Program, Lilly had an obligation to provide accurate information and to familiarize itself with relevant legal requirements.  *U.S. ex rel. Streck v. Takeda Pharms. Am., Inc.,* 2022 WL 595308, at *5 (N.D. Ill. Feb. 28, 2022) (Leinenweber, J.)  ("Under the False Claims Act, the burden is on the individual submitting claims to provide accurate information, not on the government entity to act in response to other communications.");  *Heckler v. Cmty. Health Servs. of Crawford Cty.*, Inc., 467 U.S. 51, 63 (1984) ("As a participant in the Medicare program, respondent had a duty to familiarize itself with the legal requirements for cost reimbursement. "); ); *U.S v. King-Vassal*, 728 F.3d 707, 713 (7th Cir. 2013) (defendant required to make "reasonable and prudent inquiry").

## GOOD FAITH INTERPRETATION
### [Lilly Proposal]

A claim based on the Defendant's good faith interpretation of the law or good faith belief that the government approved the conduct at issue is not a claim that violates the False Claims Acts.

Source(s):  Modified from *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 1:02-cv-06074, Dkt. No. 772 at 27 (N.D. Ill. Oct. 30, 2006) (Leinenweber, J.) ("A claim based on the Defendants' good faith interpretation of the contract or good faith belief that the government approved the conduct at issue is not a claim that violates the False Claims Acts.").

**Relator's Objections**:  Relator objects to Lilly's proposed instruction as unhelpful, unnecessary, and confusing. The jury will be separately instructed on the FCA's scienter standard, and this instruction simply discusses one application of the scienter standard.

**GOVERNMENT KNOWLEDGE**
**[Alternative Proposals by the Parties]**

R<small>ELATOR'S</small> P<small>ROPOSAL</small>

The government's knowledge of the facts underlying a false record or statement may, under certain circumstances, create an inference that the defendant did not act knowingly. This inference is only potentially applicable where: (1) the government knew about the defendant's misconduct and (2) the defendant knew that the government knew about its misconduct.

If you conclude that these conditions are satisfied, this only provides the basis from which you may, but are not required to, draw an inference. In other words, even if you believe that these conditions are satisfied, you are not required to draw the inference.

Even if you do draw this inference, you still must consider it alongside all of the evidence to determine whether Lilly acted knowingly. An inference is only one consideration in you overall consideration.

Source(s): *United States ex rel. Spay v. CVS Caremark Corp.,* 875 F.3d 746, 758 (3d Cir. 2017); *United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.,* 5 F.4th 315 (3d Cir. 2021); *Shaw v. AAA Eng'g & Drafting, Inc.,* 213 F.3d 519, 534 (10th Cir. 2000); *U.S. ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp., Inc.,* 400 F.3d 428, 454 n. 21 (6th Cir. 2005).

**Lilly's Objections:** Lilly objects to the second and third paragraphs of Relator's proposed instruction as unsupported by the authorities, vague and confusingly worded, and a misleading and incorrect statement of the law.

L<small>ILLY'S</small> P<small>ROPOSAL</small>

The government's knowledge of the facts underlying a false claim or statement negates an inference that the defendant acted knowingly where: (1) the government knew about the defendant's conduct and (2) the defendant knew that the government knew about its conduct.

Source(s): Modified from *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 811 n.10 (10th Cir. 2002) (upholding jury instruction on scienter: "In considering whether Rockwell knowingly made any false statements, you must consider all direct and circumstantial evidence, if any, concerning whether one or more government employees with authority to act under the Rockwell contracts with DOE knew the relevant facts. … Government knowledge may negate the intent by defendant required to establish a violation of the False Claims Act. If you find that government employees with authority to act under the contracts knew the relevant facts, then you may consider it in determining whether Rockwell knowingly presented a false statement as to those facts.").

Additional Authority: *U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 (7th Cir. 1999) ("The government's prior knowledge of an allegedly false claim can vitiate a FCA action."); *U.S. ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971, 988 (E.D. Wisc. 1998), *aff'd* 168 F.3d 1013 (7th Cir. 1999) ("[T]he presence of an open dialogue with government officials about relevant factual

circumstances does mitigate a defendant's specific intent to defraud, or the degree to which false statements and claims were 'knowingly' submitted."); *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir. 2002) ("[T]he government's knowledge of the facts underlying an allegedly false record or statement can negate the scienter required for an FCA violation," and government's "full knowledge of the material facts underlying any representations implicit in [the defendant's] conduct negate[d] any knowledge that [the defendant] had regarding the truth or falsity of those representations"); *U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 491 F.3d 254, 263 (5th Cir. 2007) ("[I]f the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim"); *U.S. ex rel. Dreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1156-57 (2d Cir. 1993) (similar); *U.S. ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) ("[T]he knowledge possessed by officials of the United States may be highly relevant. Such knowledge may show that the defendant did not submit its claim in deliberate ignorance or reckless disregard of the truth."); *U.S. ex rel. Lewis v. California Inst. of Tech.*, 2021 WL 1600488, at *12 (C.D. Cal. Apr. 19, 2021) (making "disclosures to the [government] regarding the conduct at issue" negates scienter); *U.S. ex rel. Vatan v. QTC Med. Servs., Inc.*, 2019 WL 1452907, at *13 (C.D. Cal. Feb. 12, 2019), *aff'd sub nom.*, 812 F. App'x 485 (9th Cir. 2020) (no FCA scienter where "undisputed evidence shows that the [government agency] was aware of and approved of the various aspects of [defendant's] performance").

**<u>Relator's Objections</u>**:  Relator objects to Lilly's proposed instruction as unhelpful, unnecessary, and confusing. Lilly instructions is phrased to suggest that the jury is *required* to draw an inference that Lilly did not act knowingly and such an inference is *necessarily* established if Lilly is able to demonstrate these facts. However, the jury is not required to draw the inference if it finds that these facts exist. <u>U.S. ex rel. Spay v. CVS Caremark Corp.</u>, 875 F.3d 746, 756 (3d Cir. 2017) ("The government knowledge inference *may arise* when the government knows and approves of the facts underlying an allegedly false claim prior to presentment.") (quotations omitted) (emphasis added). Moreover, even if the jury finds this inference generally applicable, it is not required to find that it negated Lilly's scienter, but rather is free to consider it alongside any other relevant evidence of scienter. *U.S. v. CVS Caremark Corp.,* 2015 WL 5582553, at *25 (E.D. Pa. Sept. 22, 2015) (recognizing that "this doctrine is only an inference and does not automatically preclude a finding of scienter").

## COLLECTIVE KNOWLEDGE OF CORPORATIONS
### [Relator Proposal]

Lilly is a corporation.  The law regards corporate entities as having the capacity of any other person to sue and be sued.

As a corporation, Lilly, acts through people such as employees or other agents.  The law therefore charges Lilly with knowledge of the conduct of its employees or agents while acting within the scope of their employment.  Thus, you may hold Lilly liable for the wrongful acts of its employees or agents while acting in the performance of their duties.

It is not necessary that the person who submitted Lilly's AMPs to CMS, or who caused the AMPs to be submitted on Lilly's behalf, knew that the AMPs were false.  Relatedly, it is not necessary that the person who submitted Lilly's certifications to CMS, or who caused the certifications to be submitted on its behalf, knew that the certifications were false.

Source(s): *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719, 729 (N.D. Ill. 2007) (Leinenweber, J.); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943 No. 11.C (2016); *U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 n. 9 (10th Cir. 2018).

**Lilly's Objections:**  Lilly objects to the proposed instruction in its entirety as it is unnecessary, it is confusing and prejudicial, it is not supported by the sources, and it is not legally correct.  *See e.g.*, *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1273 (D.C. Cir. 2010) (vacating jury verdict based on erroneous instruction that corporations are "liable for the collective knowledge of all employees and agents within the corporation so long as those individuals obtained their knowledge acting on behalf of the corporation" and that you can find the corporate defendant acted knowingly if you determine that "at least one individual employee" acted knowingly; the instruction failed to distinguish between "the knowledge of corporate officers and that of potentially thousands of ordinary employees"); *U.S. ex rel. Lee v. N. Metro. Found. for Healthcare, Inc.*, 2021 WL 3774185, at *8 (E.D.N.Y. Aug. 25, 2021) (noting Relators "offered virtually no evidence" of scienter given that there was no testimony "about the knowledge of any employee who was … responsible for submitting claims to Medicaid").

**MATERIAL**
**[Alternative Proposals by the Parties]**

RELATOR'S PROPOSAL

The term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.  Information is also material if (1) a reasonable person would view that information as important to a choice of action in the transaction, or (2) Lilly knew or had reason to know that the government would consider that information important to a choice of action in the transaction.

Source(s): 31 U.S.C. § 3729(b)(4); *Universal Health Servs., Inc. v. U.S. ex rel. Escobar,* 579 U.S. 176 (2016); *U.S. v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 743 (7th Cir. 2021).

**Lilly's Objections:**  Lilly objects to the proposed instruction as an incomplete and misleading statement of the law.  The Supreme Court has expressly defined materiality in *Escobar*, as Relator's sources recognize.  Relator's selective quotations misleadingly lessen their "rigorous" and "demanding" burden under *Escobar* by omitting the key passages from the opinion.  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 181, 194 (2016).  It is particularly important that "material" include the Supreme Court's complete explanation of that term because while statutorily defined, it is a common law standard.  *Id.* at 193.

LILLY'S PROPOSAL

The term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.  The facts must indicate that the Department of Health and Human Services ("HHS") actually attached weight to the requirement and relied on compliance with it such that the omission in context significantly affected HHS's actions.

Statutory and regulatory requirements are not automatically material, even if they are labeled conditions of payment.  Nor is it sufficient for a finding of materiality that HHS would have the option to decline to pay if it knew of Lilly's alleged noncompliance. What matters is not the label HHS attaches to a requirement, but whether Lilly knowingly violated a requirement that it knows significantly affected HHS's payment decision.

If HHS pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.

Source(s): 31 U.S.C. § 3729(b)(4) ("The term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."); *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 740, 743 (7th Cir. 2021) ("The facts must indicate that the government actually attaches weight to that requirement and relies on compliance with it. . . . In short, facts matter. The complaint must include specific allegations that show that the omission in context significantly affected the government's actions."); *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 181 (2016) ("Even when a requirement is expressly designated a condition of payment, not every violation of such a requirement gives rise to liability. What matters is not the label the Government attaches to a requirement, but

whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision."); *id.* ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material."); *id.* at 191 ("[S]tatutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment."); *id.* at 194 ("A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.").

Additional Authority: *U.S. ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 336 (9th Cir. 2017) (failing to satisfy *Escobar* materiality standard under § 3729(a)(1)(A) also fatal to claims under § 3729(a)(1)(G)); *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) ("*Escobar* imposes a materiality requirement" on both express and implied false claim allegations); *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016) (no materiality where relator "offered no evidence that the government's decision to pay [defendant] would likely or actually have been different had it known of [defendant's] alleged noncompliance with Title IV regulations"); *United States v. Rogan*, 2006 WL 2860972, at *21 (N.D. Ill. Sept. 29, 2006) ("To prove materiality, the government must prove that it would not have paid that claim for reimbursement had it known about the underlying violation of the law."); *see also U.S. ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 561–62 (7th Cir. 2015) (rejecting FCA claim where "[t]he government learned of [the] plaintiffs' concerns, thoroughly investigated them, and determined that they were meritless," and "continues to buy and use the [product]" after becoming "aware of [defendant's] actual practices"); *U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 831 (7th Cir. 2011) (no materiality where "the agency failed to take action when it actually learned of the supposed misrepresentation"); *U.S. ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 855 (7th Cir. 2009) ("If the military services knew what they were getting and decided to accept blades that [plaintiff] deems 'inferior' rather than pay a higher price, then [defendant] will prevail on the merits."); *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1019 (7th Cir. 1999) ("Such minor technical violations ... do not give rise to an FCA claim.").

**Relator's Objections:** Relator objects to Lilly's proposed instruction as incomplete, misleading, and inconsistent with controlling law.

First, materiality is specifically defined by the FCA. Any instruction that drifts from the actual language of the definition ordered by Congress strays from Congressional intent.

Second, Lilly's proposal incorrectly suggests that materiality turns on whether a government agency "actually attached weight to the requirement." However, as courts around the county have concluded, materiality is established where a defendant's conduct affects the amount of payment, and accordingly, Relator is not required to prove materiality *vis a vis* "the requirement." *See U.S. ex rel. Asch v. Teller, Levit & Silvertrust, P.C.*, 2004 WL 1093784 (N.D. Ill. May 7, 2004) (Leinenweber, J.) (concluding that "materiality … is necessarily present because, Teller, in effect paid itself"); *U.S. ex rel. Streck v. Bristol-Myers Squibb Co.*, 2018 WL 6300578, at *18 (E.D. Pa. 2018) ("Because the size of the rebate owed by the manufacturer increases as AMP increases, underreporting of AMP has the direct result of lowering the manufacturer's rebate

obligations. Where the amount owed or received depends upon data supplied by the defendant, misstatement of that data is material because it directly influences the final amount.") (footnote omitted); *U.S. ex rel. Ruckh v. Salus Rehab.,* 963 F.3d 1089, 1105 (11th Cir. 2020) (describing "plain and obvious materiality" where, after nursing facilities submitted claims with a particular code to determine the amount of payment, "Medicare paid [facilities] higher amounts than they were truly owed"); *U.S. ex rel. Heath v. Wisconsin Bell.*, 2020 WL 13048895, at *3 (E.D. Wis. Oct. 29, 2020) (explaining that under the circumstances of the government program at issue, "failing to comply with the … rule necessarily and mechanically has an effect on the behavior of the Government"); *U.S. ex rel. Drummond v. BestCare Lab. Svcs.*, LLC, 2018 WL 1609578, at *2 (S.D. Texas, April 3, 2018) ("The false number of miles traveled was material, because it was used to calculate how much the government would pay BestCare.")

Third, Lilly's proposal improperly ties materiality exclusively "to HHS." However, the FCA does not require that a defendant's conduct be material to a specific government agency, as such. Although that is one way of establishing materiality, materiality can also be established where "a reasonable person would attach importance to it in determining a choice of action in the transaction." *U.S ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh, Pennsylvania*, 728 F. App'x 101, 106 (3d Cir. 2018) (*citing Universal Health Servs., Inc. v. U.S.ex rel. Escobar*, 579 U.S. 176, 193 (2016)). By cabining materiality "to HHS," Lilly proposal improperly omits the "reasonable person" standard.

Fourth, Lilly fashions out of whole cloth a non-existent requirement that "[t]he facts must indicate that [HHS] actually attached weight to the requirement and relied on compliance with it such that the omission in context significantly affected HHS's actions." Materiality is defined as "having a *natural tendency to influence, or be capable of influencing*, the payment or receipt of money or property." 31 U.S.C § 3730(b)(4) (emphasis added). Thus, even when viewed through the government lens (as opposed to the above-described "reasonable person" standard, materiality does not require any actual reliance by the government. *U.S. v. Lupton*, 620 F.3d 790, 806 (7th Cir. 2010) ("[W]e do not require the statement to actually influence the agency to which it was directed."); U.S. v. Natale, 719 F.3d 719, 738 (7th Cir. 2013) ("[M]ateriality requires only a potentiality of influencing the decisionmaker; it does not require actual reliance."); *U.S. ex rel. Garbe v. Kmart Corp.,* 824 F.3d 632, 639 (7th Cir. 2016) ("[N]o government decision is required.").

## LOSS TO GOVERNMENT INSUFFICIENT TO FIND MATERIALITY
### [Lilly Proposal]

A misrepresentation cannot be deemed material merely because it inflates the amount charged to the Government or causes the Government to be paid less than it is owed.

Source(s): *U.S. ex rel. Lisitza v. Par Pharm. Companies, Inc.*, 276 F. Supp. 3d 779, 797–98 (N.D. Ill. 2017) (rejecting as "untenable" and "expressly" rejected by the Supreme Court the argument "that any misrepresentation that inflates the amount charged to the government is material"); *U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 491 (3d Cir. 2017) (rejecting argument that materiality is per se satisfied if "the Government would have paid less claims" in the absence of defendant's fraud).

Additional Authority: *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 116 (2d Cir. 2021) ("Set against the backdrop of complex and voluminous regulatory and contractual requirements, 'broad appeals' to the importance of a given regulatory requirement 'cannot clear the rigorous materiality hurdle.'"); *U.S. ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 543-45 (10th Cir.), *cert. denied*, 141 S. Ct. 376 (2020) ("[I]n the complex matrix of Medicare reporting and reimbursement, such broad appeals to the importance of accurate reporting cannot clear the rigorous materiality hurdle. . . .[That] the Government has expressly required accurate reporting as a condition of payment … [is] not dispositive" to establish materiality.).

**Relator's Objections**: Relator objects to Lilly's proposed instruction because it directly contravenes the FCA's statutory definition of materiality. The statute specifies that materiality is established where a defendant's conduct affects the amount of payment, and accordingly, courts around the country have held that Relator is not required to prove materiality *vis a vis* "the requirement." *See U.S. ex rel. Asch v. Teller, Levit & Silvertrust, P.C.,* 2004 WL 1093784 (N.D. Ill. May 7, 2004) (Leinenweber, J.) (concluding that "materiality … is necessarily present because, Teller, in effect paid itself"); *U.S. ex rel. Streck v. Bristol-Myers Squibb Co.*, 2018 WL 6300578, at *18 (E.D. Pa. 2018) (""Because the size of the rebate owed by the manufacturer increases as AMP increases, underreporting of AMP has the direct result of lowering the manufacturer's rebate obligations. Where the amount owed or received depends upon data supplied by the defendant, misstatement of that data is material because it directly influences the final amount.") (footnote omitted); *U.S. ex rel. Ruckh v. Salus Rehab.,* 963 F.3d 1089, 1105 (11th Cir. 2020) (describing "plain and obvious materiality" where, after nursing facilities submitted claims with a particular code to determine the amount of payment, "Medicare paid [facilities] higher amounts than they were truly owed"); *U.S. ex rel. Heath v. Wisconsin Bell.*, 2020 WL 13048895, at *3 (E.D. Wis. Oct. 29, 2020) (explaining that under the circumstances of the government program at issue, "failing to comply with the … rule necessarily and mechanically has an effect on the behavior of the Government"); *U.S. ex rel. Drummond v. BestCare Lab. Svcs.,* LLC, 2018 WL 1609578, at *2 (S.D. Texas, April 3, 2018) ("The false number of miles traveled was material, because it was used to calculate how much the government would pay BestCare.")

67

## MATERIAL TO THE RECIPIENT
### [Lilly Proposal]

In assessing materiality, you should only consider whether the claim or statement was material to the decisionmaking body to which it was addressed. Here, for the alleged false statements and claims to be material, they must have been material to the United States Department of Health and Human Services ("HHS").

The relevant inquiry is not what the Defendant has disclosed to HHS, but what HHS knew at the time, no matter the source.

Source(s): *Univ. Health Servs. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193 (2016) ("[M]ateriality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation."); *U.S. ex rel. Rockey v. Ear Inst. of Chicago*, LLC, 92 F. Supp. 3d 804, 816 (N.D. Ill. 2015) ("[A] statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." (quoting *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008), in turn quoting *Neder v. United States*, 527 U.S. 1, 16 (1999))); *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 667 (5th Cir. 2017) ("[T]he relevant [materiality] inquiry is not what [defendant] disclosed, but what [the government] knew at the time it issued the June 17, 2014 memorandum, no matter the source.").

**Relator's Objections**: Relator objects to Lilly's proposed instruction because it deviates from Congress's intent by misstating the applicable legal standard. Lilly's proposal attempts to improperly tie materiality exclusively "to HHS." However, the FCA does not require that a defendant's conduct be material to a specific government agency, as such. Although that is one way of establishing materiality, materiality can also established where "a reasonable person would attach importance to it in determining a choice of action in the transaction." *U.S ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh, Pennsylvania*, 728 F. App'x 101, 106 (3d Cir. 2018) (*citing Universal Health Servs., Inc. v. U.S.ex rel. Escobar*, 579 U.S. 176, 193 (2016)). By cabining materiality "to HHS," Lilly proposal improperly omits the "reasonable person" standard.

## ADDITIONAL RELATOR MATERIALITY PROPOSAL
### [Relator Proposal]

In assessing materiality, it is important to bear in mind that the government does need to have actually relied on a false claim or statement in order for a false claim or statement to be material. Thus, Relator does not to prove that any of Lilly's false claims or false statements actually influenced any government decision.

Rather, materiality only requires that a false claim or false statement have a natural tendency to influence, or be capable of influencing, the payment or receipt of money.

Source(s): 31 U.S.C. 3729(b)(4); *Univ. Health Servs. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193 (2016); *U.S. v. Lupton*, 620 F.3d 790, 806 (7th Cir. 2010), *U.S. v. Natale*, 719 F.3d 719, 738 (7th Cir. 2013); *U.S. ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 639 (7th Cir. 2016).

**Lilly's Objections:** Lilly objects to the proposed instruction in its entirety as an incorrect statement of the law. *E.g.*, *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 740, 743 (7th Cir. 2021) ("The facts must indicate that the government actually attaches weight to that requirement and relies on compliance with it. . . . In short, facts matter. The complaint must include specific allegations that show that the omission in context ***significantly affected the government's actions***.") (emphasis added).

## POST HOC ENFORCEMENT ACTIONS
### [Lilly Proposal]

The materiality inquiry looks to the effect of the misrepresentation on the Department of Health and Human Services ("HHS") at the time of alleged FCA violation. To prove materiality, it is not enough to show that the Government investigated the conduct.

Source(s):  *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193  (2016) (materiality "looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation"); *United States v. Strock*, 982 F.3d 51, 63-64 (2d Cir. 2020) ("Allowing the government to rely on post hoc enforcement efforts to satisfy the materiality requirement would allow the government to engage in just such materiality manufacturing [that *Escobar* rejected], and at relatively low cost," and therefore allegations that the government "prosecutes those who fraudulently obtain SDVOSB set-aside contracts thus are at best only neutral with regard to a finding of materiality"); *U.S. ex rel. Lee v. N. Metro. Found. for Healthcare, Inc.*, 2021 WL 3774185, at *11 (E.D.N.Y. Aug. 25, 2021) ("[A]fter-the-fact enforcement [is] at best only neutral with regard to a finding of materiality.").

**PROXIMATE CAUSE**
**[Alternative Proposals by the Parties]**

RELATOR'S PROPOSAL

Proximate cause means the conduct must have been a material element and a substantial factor in bringing about the injury.

Source(s): *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc*., 10 F.4th 765 (7th Cir. 2021) (to establish causation in an FCA case, a relator "must establish that the defendant's fraud 'was a material element and a substantial factor in bringing about the injury'").

**Lilly's Objection**: Lilly objects to Relator's proposed instruction as an incomplete, and incorrect, statement of the law for omitting foreseeability from the definition of proximate cause. *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc.*, 10 F.4th 765, 773 (7th Cir. 2021) ("[T]he pecuniary losses must be 'within the foreseeable risk of harm' that the false statement created."); *United States v. Luce*, 873 F.3d 999, 1012 (7th Cir. 2017) ("Proximate cause encompasses both cause in fact and legal cause. To establish cause in fact, the plaintiff must show the defendant's conduct was a material element and a substantial factor in bringing about the injury. Legal cause on the other hand, is essentially a question of foreseeability, and we must determine whether the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct.") (quotations omitted).

LILLY'S PROPOSAL

Proximate cause means (1) the conduct must have been a material element and a substantial factor in bringing about the injury, and (2) the injury must have been foreseeable, meaning of a type that a reasonable person would see as a likely result of his or her conduct.

Source(s): *United States v. Luce*, 873 F.3d 999, 1012 (7th Cir. 2017) ("Proximate cause encompasses both cause in fact and legal cause. To establish cause in fact, the plaintiff must show the defendant's conduct was a material element and a substantial factor in bringing about the injury. Legal cause on the other hand, is essentially a question of foreseeability, and we must determine whether the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct.") (quotations omitted); *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc.*, 10 F.4th 765, 773 (7th Cir. 2021) ("[T]he pecuniary losses must be 'within the foreseeable risk of harm' that the false statement created.").

**Relator's Objection:** Relator objects to Lilly's proposed instruction because it misstates controlling law. The Seventh Circuit's most recent decision on causation in the FCA context squarely holds that to establish causation, a relator "must establish that the defendant's fraud 'was a material element and a substantial factor in bringing about the injury." *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc*., 10 F.4th 765 (7th Cir. 2021). Lilly's reliance on the Seventh Circuit's earlier decision in *United States v. Luce*, 873 F.3d 999 (7th Cir. 2017) as an ostensible basis to impose a foreseeability requirement is unavailing because the quoted language was explaining how proximate cause operates in a different legal context, rather than under the FCA.

In any event, the Seventh Circuit later confirmed in *Prose* what was necessary to "establish" causation in an FCA case without mentioning foreseeability.

**NUMBER OF VIOLATIONS**
**[Alternative Proposals by the Parties]**

RELATOR'S PROPOSAL

If you find that Lilly violated the False Claims Act in one or more of the ways described, then you must then identify the number of violations that Lilly committed.

**Count 1**: If you find that in any given financial quarter, Lilly knowingly caused a state to submit a false Form 37 or a false Form 64 to CMS for payment or approval of federal matching funds, that constitutes a single violation. The total number of violations is the total number of times Lilly knowingly caused any state to submit a false Form 37 or a false Form 64 to CMS for payment or approval. For avoidance of doubt, a violation of Count 1 is complete when the claim is submitted. Whether the claim was later paid or approved (or partially paid or approved) is irrelevant to determining whether a violation occurred.

**Count 2**: If you find that in any given month or quarter, Lilly knowingly made, used, or caused to be made or used, a false AMP which was material to a claim for federal matching funds, that constitutes a single violation. The total number of violations is the total number of times Lilly knowingly made, used, or caused to be made or used, a false AMP which was material to a claim for federal matching funds. For avoidance of doubt, a violation of Count 2 is complete when the claim is submitted. Whether the claim was later paid or approved (or partially paid or approved), is irrelevant to determining whether a violation occurred.

Similarly, if you find that in any given month or quarter, Lilly knowingly made, used, or caused to be made or used, a false certification which was material to a claim for federal matching funds, that constitutes a single violation. The total number of violations is the total number of times Lilly knowingly made, used, or caused to be made or used, a false certification which was material to a claim for federal matching funds. For avoidance of doubt, a violation of Count 2 is complete when the claim is submitted. Whether the claim was later paid or approved (or partially paid or approved) is irrelevant to determining whether a violation occurred.

**Count 3**: If you find that that Lilly knowingly made, used, or caused to be made or used a false AMP for a drug that was material to the amount of rebate that Lilly owed the government for that drug, that constitutes a single violation. The total number of violations is the total number of times Lilly knowingly made, used, or caused to be made or used, a false AMP for a drug which was material to the amount of rebate Lilly owed the government for that drug. For avoidance of doubt, a violation of Count 3 is complete when the false AMP was submitted to CMS. Whether the false AMP later led to financial harm to the government is irrelevant to determining whether a violation occurred.

**Count 4**: If you find that that Lilly knowingly concealed an obligation to pay any portion of a rebate to the government by submitting a false AMP for a drug, OR Lilly knowingly and improperly avoided or decreased an obligation to pay any portion of a rebate to the government by submitting a false AMP for a drug, that constitutes a single violation. The total number of violations is the total number of times Lilly concealed an obligation to pay any portion of a rebate to the government by submitting a false AMP for a drug, OR Lilly knowingly and improperly avoided or decreased an obligation to pay any portion of a rebate to the government by submitting

a false AMP for a drug. For avoidance of doubt, a violation of Count 4 is complete when the false AMP was submitted to CMS. Whether the false AMP later led to financial harm to the government is irrelevant to determining whether a violation occurred.

**Count 5** – If you find that Lilly knowingly delivered, or caused to be delivered, a rebate for a drug that was less than the full amount of rebate due to the United States Government, that constitutes a single violation. The total number of violations is the total number of times Lilly knowingly delivered, or caused to be delivered, a rebate for a drug that was less than the full amount of rebate due to the United States Government.

Source(s): 31 U.S.C. § 3729(a)(1); *U.S. ex rel. Ailabouni v. Advoc. Health & Hosps. Corp.*, 2017 WL 4310640, at *4 (N.D. Ill. Sept. 28, 2017); *U.S. ex rel. Kane v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 380 n.12 (S.D.N.Y. 2015); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, 955 (2016); Jury Instructions in *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 1:02-cv-06074, ECF No. 722 (Oct. 30, 2006) (Leinenweber, J.); *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719, 741 (N.D. Ill. 2007) (Leinenweber, J.).

**Lilly's Objections**: Lilly objects to Relator's proposed instruction as mischaracterizing the claims at issue, misapplying the law, and likely to cause confusion and undue prejudice. First, Relator's complaint has only three counts (other than duplicative state FCA claims), not five.

Second, this instruction is likely to lead to confusion and double (and triple) counting of violations. *E.g.*, *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021) ("[A] reverse false claim cannot turn on the same conduct underlying a traditional false claim."); *see also United States v. Bornstein*, 423 U.S. 303, 307 (1976) (holding that one civil penalty is counted for each "act[] which cause[s] false claims to be presented," regardless of the number of false claims that result, and therefore holding subcontractor liable only for number of false shipments it made, not for number of fraudulent invoices ultimately submitted by prime contractor); *United States v. Krizek*, 192 F.3d 1024, 1027 (D.C. Cir. 1999) (counting false statements by form rather than by number of statements within each form, explaining: "[D]etermining the number of false claims requires nothing more than calculating how many forms actually contained fraudulent entries," and holding that each HCFA 1500 form was a claim, not each individual CPT code on the forms); *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F. Supp. 2d 20, 24 (D.D.C. 2007) ("[T]he government in an FCA case generally may plead theories in the alternative, even if different claims seek relief for the same injury, so long as there is ultimately only one recovery.").

Third, the elements of the three counts overlap in this case and can be stated with a single test. Enumerating five separate "counts," each with supposedly unique but overlapping elements is overly confusing to the jury and unnecessarily repetitive. *E.g.*, *JJCO, Inc. v. Isuzu Motors Am., Inc.*, 492 F. App'x 715, 717 (9th Cir. 2012) (affirming District Court's rejection of proposed instructions as "cumulative"); *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 382 (4th Cir. 2015) (jury instructions must "adequately inform[] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party"); *Venezia v. Bentley Motors, Inc.*, 2009 WL 10673383, at *2 (D. Ariz. Apr. 2, 2009), *aff'd*, 374 F. App'x 765 (9th Cir. 2010) (internal citation omitted) ("A district court may refuse the requested instructions because

they are either unduly argumentative or unnecessary because they were adequately subsumed by the instructions given to the jury.").

Fourth, the proposed instruction would impermissibly permit the jury to find redundant bases for liability under the FCA based on the same conduct. *E.g.*, *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021); *U.S. ex rel. Petratos v. Genentech, Inc.*, 141 F. Supp. 3d 311, 322 (D.N.J. 2015), *aff'd*, 855 F.3d 481 (3d Cir. 2017) ("Claims raised under the FCA's reverse false claims provision 'may not be redundant of FCA claims asserted under other provisions of [the FCA]'"); *U.S. ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, 2016 WL 5661644, at *11 (N.D. Tex. Sept. 30, 2016) (FCA does not permit "duplicate bas[e]s" of liability for same conduct); *U.S. ex rel. Ruscher v. Omnicare, Inc.*, 2014 WL 2618158, at *27 (S.D. Tex. June 12, 2014) (holding the FCA does not permit liability under multiple sections based on "the same set of operative facts"); *U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010) (holding the FCA does not permit "redundant bas[e]s" of liability for the same conduct); *U.S. ex rel. Taylor v. Gabelli,* 345 F.Supp.2d 313, 338–39 & n.142 (S.D.N.Y. 2004) (same).

## LILLY'S PROPOSAL

If you find that Relator has proved that Lilly has knowingly violated the False Claims Acts, then you must identify the number of violations Lilly knowingly committed. The total number of violations is the total number of times Lilly knowingly made, used, or caused to be made or used, a false quarterly or monthly AMP submission file which was material to HHS under the MDRP.

Source(s): Adapted from *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 1:02-cv-06074, Dkt. No. 772 at 2 (N.D. Ill. Oct. 30, 2006) (Leinenweber, J.) ("If you find that Plaintiffs have proved that Defendant or Defendants have violated the False Claims Acts, then you must identify the number of false claims submitted."); *U.S. ex rel. Purcell v. MWI*, Case No. 98-2088, Dkt. 506 at 40 (D.D.C. Feb. 23, 2015) ("Now, if you find that MWI violated the False Claims Act, then you must first identify the number of false claims and/or false records or false statements that MWI knowingly submitted to the government."); *U.S. ex rel. Koch v. Koch Indus. Inc.*, 1999 WL 34591292 (N.D. Okla. 1999) ("If you find that a report about a lease is both a false claim and a reverse false claim, it will only count once for penalty purposes."); 31 U.S.C. § 3729(a)(1).

Additional Authority: *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021) ("[A] reverse false claim cannot turn on the same conduct underlying a traditional false claim."); *United States v. Bornstein,* 423 U.S. 303, 307 (1976) (holding that one civil penalty is counted for each "act[] which cause[s] false claims to be presented," regardless of the number of false claims that result, and therefore holding subcontractor liable only for number of false shipments it made, not for number of fraudulent invoices ultimately submitted by prime contractor); *United States v. Krizek,* 192 F.3d 1024, 1027 (D.C. Cir. 1999) (counting false claims statements by form rather than by number of statements within each form, explaining: "[D]etermining the number of false claims requires nothing more than calculating how many forms actually contained fraudulent entries," and holding that each HCFA 1500 form was a claim, not each individual CPT code on the forms); *U.S. ex rel. Karol v. L-3 Communications Vertex Aerospace, LLC,* Case No. 10-cv-00339, Dkt. 304 at 12 (N.D. Tex. Jan. 12, 2016) ("If you find by a preponderance of the evidence that L-3

Vertex is liable under the False Claims Act, you must specify the number of knowingly fraudulent and material claims it submitted to the United States for payment.").

**Relator Objections**: Relator objects to Lilly's proposed instruction as  inconsistent with controlling law, unhelpful, and overly simplistic. As more fully explained in Relator's motion in limine, a defendant is liable for separate statutory penalties for each statutory violation, including *inter alia*, each "false record or statement" that the defendant "knowingly makes, uses, or causes to be made or used." 31 U.S.C. § 3729(a)(1). This includes circumstances where multiple violations are committed at the same time. See S. REP. 99-345, 9, 1986 U.S.C.C.A.N. 5266, 5274 (July 28, 1986) ("Each separate bill, voucher or other 'false payment demand' constitutes a separate claim for which a forfeiture shall be imposed, and this is true although many such claims may be submitted to the Government at one time." (citation omitted)). Accordingly, the number of violations is not limited, as Lilly's proposal asserts, to the "total number of times Lilly knowingly made, used, or caused to be made or used, a false quarterly or monthly AMP submission file." In addition, Lilly's proposal overlooks that where a defendant's conduct violates both the federal and state FCAs, a defendant is liable for separate violations under both statutes. *See U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.,* 488 F.Supp.2d 719, 745 (N.D. Ill. 2007) (imposing separate penalties for 18,130 violations of federal and Illinois statues); *U.S. ex rel. Fahner v. Alaska,* 591 F. Supp. 794, 801 (N.D. Ill. 1984) (separate penalties under federal and Illinois statutes for 551 violations).

## AMP RESTATEMENTS
### [Alternative Proposals by the Parties]

**RELATOR'S PROPOSAL**

Under the applicable legal requirements, a drug manufacturer like Lilly is required to revise a previously-reported AMP if the manufacturer becomes aware that a previously-reported AMP was inaccurate. Because the amount of rebate a manufacture pays under the Medicaid Drug Rebate Program is directly tied to its AMPs, the purpose of requiring manufacturers to report revised AMPs is to ensure the Medicaid rebate amounts are as accurate as possible.

Source(s): Medicaid Program; Drug Rebate Agreement, 56 FR 7049, 1991 WL 311154 (Feb. 21, 1991), at § II(e) ("Adjustments to AMP or Best Price for prior quarters shall also be reported on this quarterly basis."), at § V(e) ("Adjustments to Rebate Payments shall be made if information indicates that either Medicaid Utilization Information, AMP or Best Price were greater or less than the amount previously specified."); 42 C.F.R. § 447.510(b)(1) ("A manufacturer must report to CMS any revision to AMP, best price, customary prompt pay discounts, or nominal prices for a period not to exceed 12 quarters from the quarter in which the data were due. Any revision request that exceeds 12 quarters will not be considered, except for the following reasons: … The change is to address specific rebate adjustments to States by manufacturers, as required by CMS or court order, or under an internal investigation, or an OIG or Department of Justice (DOJ) investigation."); Medicaid Program; Prescription Drugs, 72 FR 39142-01, 2007 WL 2030690, at 39210 (July 17, 2007) ("The purpose of requiring manufacturers to report revised quarterly AMPs in § 447.510(b) is to ensure the Medicaid rebate amounts are as accurate as possible."); Medicaid Program; Payment for Covered Outpatient Drugs Under Drug Rebate Agreements With Manufacturers, 60 FR 48442-01, 1995 WL 550129, at 48465 (Sept. 19, 1995) ("A prior period adjustment is a change in the unit rebate amount based on a manufacturer's revised AMP or best price data for a prior rebate period after that rebate period's pricing data has been submitted … Any changes to a manufacturer's AMP or best price result in changes to the unit rebate amount and rebates due from the manufacturer. Thus, prior period adjustments are necessary to correct rebate amounts that are owed by manufacturers or credits due to manufacturers.").

**Lilly's Objections**: Lilly objects to Relator's proposed instruction as a misleading and incomplete statement of the law for erroneously implying that the only reason a manufacturer must restate AMPs is if they become aware a "previously-reported AMP was inaccurate." Lilly further objects to instructing the jury on Relator's view of the policy purposes of the restatement regulation as irrelevant, misleading, and likely to cause confusion.

**LILLY'S PROPOSAL**

CMS regulations require pharmaceutical manufacturers to report to CMS any revision to AMP values they previously submitted within 12 quarters (three years) of the submission. The revised (or "restated") AMPs are the final, operative AMPs that determine the manufacturer's Medicaid unit rebate liability.

Source(s): 42 C.F.R. § 447.510(b)(1) & (2) ("A manufacturer must report to CMS any revision to AMP … for a period not to exceed 12 quarters from the quarter in which the data were due. …

except when the revision would be solely as a result of data pertaining to lagged price concessions."); *see also* 85 Fed. Reg. 37,286 (June 19, 2020) (manufacturers have "12 quarters from the quarter in which the data were due to revise AMP, if necessary."); 68 Fed. Reg. 51,912 (Aug. 29, 2003) ("A prior period adjustment is a change in the unit rebate amount based on a manufacturer's revised AMP or BP data for a prior rebate period after that rebate period's pricing data have been submitted to us. . . . [T]he prior period adjustments are necessary to correct rebate amounts that are owed by manufacturers or credits due to manufacturers."); *id.* (recognizing "the need to permit manufacturers to submit revised prices within a timeframe" in order to "streamline[] the administration of the Medicaid drug rebate program."); 83 Fed. Reg. 12,770 (Mar. 23, 2018) (revising proposed rule to protect "the flexibility the regulations provide to manufacturers regarding the timing of restatements").

**Relator Objections**: Relator objects to Lilly's proposed instructions as incomplete and inconsistent with governing law, including by incorrectly suggesting that restatements are limited to 3 years. Cf. 42 C.F.R. § 447.510(b)(1) ("A manufacturer must report to CMS any revision to AMP, best price, customary prompt pay discounts, or nominal prices for a period not to exceed 12 quarters from the quarter in which the data were due. Any revision request that exceeds 12 quarters will not be considered, except for the following reasons: … The change is to address specific rebate adjustments to States by manufacturers, as required by CMS or court order, or under an internal investigation, or an OIG or Department of Justice (DOJ) investigation.");

## DAMAGES: PREFATORY INSTRUCTION
### [Lilly Proposal]

If you find that Relator has proved any of his claims against Lilly, then you must determine what amount of damages, if any, plaintiffs are entitled to recover.

If you find that Relator has failed to prove any of his claims, then you will not consider the question of damages.

Source(s):  Modified from *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 1:02-cv-06074, Dkt. No. 772 at 2 (N.D. Ill. Oct. 30, 2006) (Leinenweber, J.) ("If you find that the plaintiffs have proved any of their claims against any of the defendants, then you must determine what amount of damages, if any, plaintiffs are entitled to recover.  If you find that the plaintiffs have failed to prove any of their claims, then you will not consider the question of damages.").

Additional Authority:  Seventh Circuit Federal Jury Instructions (2017 Ed.) (2017 Ed.) 1.31 ("If you decide for the defendant[s] on the question of liability, then you should not consider the question of damages."); *First Midwest v. City of Chicago*, No. 1:14-cv-09665, Dkt. No. 444 (Oct. 26, 2017) (Leinenweber, J.) ("If you decide for the defendant on the question of liability, then you should not consider the question of damages.").

## DAMAGES: PREPONDERANCE OF THE EVIDENCE
### [Lilly Proposal]

As with the other elements of a False Claims Act violation, Relator must prove his damages by a preponderance of the evidence. You may not award damages on any individual claim or statement submitted to HHS unless you find that Relator met his burden of proving a False Claims Act violation for that individual claim or statement. Your award must be based on evidence and not speculation or guesswork.

Source(s): Adapted from *First Midwest v. City of Chicago*, No. 1:14-cv-09665, Dkt. No. 444 (Oct. 26, 2017) (Leinenweber, J.) ("Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork."); *Alcazar-Anselmo v. City of Chicago*, 2011 WL 2435967 (2001) (Leinenweber, J.) ("Plaintiff must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork."); *Harman v. Trinity Ind. Inc.*, Case No. 12-cv-89, Dkt. 584 at 46 (E.D. Tex. Oct. 21, 2014) ("As with all of the issues to be addressed by you, the jury, under the False Claim Act, the Plaintiff must prove its damages by a preponderance of the evidence."); *U.S. ex rel. Purcell v. MWI*, Case No. 98-2088, Dkt. 506 at 40-41 (D.D.C. Feb. 23, 2015) ("As with all other elements of the case, the plaintiff must prove by -- prove damages by a preponderance of the evidence.").

Additional Authority: *United States v. Chen*, No. 2:04-CV-0859, Dkt. 115 at 9 (D. Nev. Feb. 18, 2009) ("If you find for the plaintiff, you must determine the Plaintiffs damages. The Plaintiff has the burden of proving damages by a preponderance of the evidence. Damages mean the amount of money that will reasonably and fairly compensate the Plaintiff for any injury you will find was caused by the Defendant. The measure of the Plaintiffs damages is the amount that it paid by reason of the violations of the False Claims Act over and above what it would have paid if the False Claims Act had not been violated. It is for you to determine what damages, if any, have been proved.").

**Relator's Objections:** Relator objects to Lilly's proposed instruction because it is confusing and unnecessarily cumulative, since the jury will have already been instructed on the preponderance of the evidence standard. Moreover, Lilly's below instruction on "Damages" references the same "speculation or guesswork" concept," and to the extent the Court is inclined to give that instruction, it is unnecessary and prejudicial to repeat the same concept in this instruction.

## DAMAGES
### [Alternative Proposals by the Parties]

**RELATOR'S PROPOSAL**

Damages are not a required element of a False Claims Act violation. Accordingly, Relator is not required to prove that the federal government or the State governments suffered any damages.

If you find that Lilly violated the False Claims Act, you must consider whether the United States Government suffered any damages because of Lilly's violation. If you determine that there was a causal link between the wrongful conduct and some loss sustained by the United States, then you must determine the amount of the loss so sustained.

Similarly, if you find that Lilly violated the False Claims Act, you must consider whether the States suffered any damages because of Lilly's violation. If you determine that there was a causal link between the wrongful conduct and some loss sustained by the States, then you must determine the amount of the loss so sustained.

If you find that Lilly is liable under Count 1 or Count 2, the measure of damages is the total amount of money that the government paid out by reason of the false claim(s).

If you find that Lilly is liable under Count 3, 4 or 5, the measure of damages is the total amount of money the government was not paid because of the violation(s).

If you conclude that there was no causal relationship between the false statement or false claim and any payment or expenditure by the United State or States, then you should not award any damages.

In computing any damages suffered by the United States or States, damages should not be based on speculation or guesswork. On the other hand, you do not have to determine damages with precision. Instead, Relator need only prove damages by a "preponderance of the evidence." The Government's damages should be liberally calculated to effectuate the purposes of the False Claims Act and to afford the Government a full and complete recovery of all its damages.

There will be a space in the verdict form for you to record the amount of damages, if any, caused by Lilly, should you find that Lilly violated the False Claims Act.

Source(s): 31 U.S.C. § 3731(d); *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, Nos. 17.A, 17.B, 18.A (2016); *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719, 731-732 (N.D. Ill. 2007) (Leinenweber, J.); Jury Instructions in *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 1:02-cv-06074, ECF No. 772 (Oct. 30, 2006) (Leinenweber, J.).

**Lilly's Objections:** Lilly objects that the proposed instruction misstates the law, is misleading, likely to cause confusion, and unduly prejudicial.

The first paragraph is unnecessary and cumulative of the elements instruction, none of which require the jury to find damages in order to find liability.

The proposed instructions repeatedly apply the wrong causation standard, using but-for causation rather than proximate cause.

Paragraphs 4 and 5 apply the wrong definitions of how to calculate damages under Relator's theories. *See* Lilly's Proposal below for the correct standards.

The jury should not be instructed to liberally construe damages "to effectuate the purposes of the False Claims Act," as that instruction is a misleading and incomplete statement of the law, likely to cause confusion, and violates Rule 403.

## LILLY'S PROPOSAL

If you find Relator has proven his claims that Lilly violated the False Claims Act, then the measure of damages is the amount of losses to the Government that were proximately caused by Lilly's knowing violations of the False Claims Act.

Speculation and conjecture cannot form the basis of a damages calculation. However, Relator need not prove an exact amount of damages. It is sufficient for you to reach an approximate amount of damages, based on a just and reasonable inference supported by the evidence.

Your calculation of damages may not include penalties. If you find in favor of Relator, I will determine the amount of penalties (if any) to be awarded based on the number of violations that you find.

Source(s): *U.S. ex rel. Colquitt v. Abbott Labs, et al.*, 2016 WL 10827342 (N.D. Tex.) (modified), *jury instructions and judgments affirmed by* 858 F.3d 365 (5th Cir. 2017) ("The appropriate measure of damages resulting from a violation of the False Claims Act is the difference, if any, between what the United States actually paid for false or fraudulent claims and what it would have paid if a claim had been truthful and accurate. Speculation and conjecture cannot form the basis of a damages calculation. However, relator need not prove an exact amount of damages. It is sufficient for you to reach an approximate amount of damages, based on a just and reasonable inference supported by the evidence."); *United States v. Borseau*, 531 F.3d 1159 (9th Cir. 2008), *cert. denied* 129. S. Ct. 1524 (2009) ("Damages for a reverse false claim consist of the difference between what the defendant should have paid the government and what the defendant actually paid the government."); *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 132 (2003) ("[U]nder the FCA, the jury is open to no such temptation; if it finds liability, its instruction is to return a verdict for actual damages … [and] the court alone sets any separate penalty.").

Additional Authority: *U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc. et. al*, No. 2:04-cv-02289, Dkt. No. 402 at 20 (C.D. Ill. Feb. 3, 2013) ("If you find in favor of the United States and the State of Illinois on the claims under the False Claims Act, the measure of the government's damages is the amounts it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful."); *U.S. ex rel. Tyson v. Amerigroup Illinois,*

*Inc.*, No. 1:02-cv-06074, Dkt. No. 772 at 2 (N.D. Ill. Oct. 30, 2006) (Leinenweber, J.) ("The measure of the governments' damages is the amount that it paid out by reason of the false statements over and above what it would have paid if the claims would have been truthful."); *United States v. Luce*, 873 F.3d 999, 1012 (7th Cir. 2017) (rejecting "but-for" causation test for FCA damages and holding Relator must prove falsity was the "proximate cause" of government's damages); *U.S. ex rel. Koch v. Koch Industries, Inc.*, 1999 WL 34591292 (N.D. Okla.) (instructing jury: "The Court will calculate the amount of any penalty, but you must first determine the number of violations that occurred."). *United States v. Honeywell Int'l Inc.*, 2021 WL 2493382, at *6 (D.D.C. June 18, 2021) ("If the jury determines that FCA violations did occur, the Court would set the FCA penalty level from within the statutorily prescribed range and multiply that dollar amount by the number of violations.").

**Relator's Objections:**  Relator objects to Lilly's proposal because it omits that actual damages are not required to establish FCA liability. *See U.S. v. Rogan*, 459 F.Supp.2d 692, 720 (N.D. Ill. 2006) ("The United States does not need to prove actual damages in order to recover these statutory penalties. The United States may recover penalties upon a showing that the claims were false, even if no damage is proved."). This omission, particularly considered in context of Lilly's proposed instructions, improperly suggests otherwise to the jury.

In addition, Relator objects to Lilly's proposal to the extent it mentions penalties. As more fully described in Relator's motion in limine, it is improper to mention civil penalties since (1) the jury plays no role in determining civil penalties and (2) doing so risks that the jury will "invade the Court's domain by reducing its damages figure or the number of violations it finds in order to offset the effect of penalties." *U.S., ex rel. Miller v. Bill Harbert Int'l Const., Inc.,* 2007 WL 851868, at *2 (D.D.C. Mar. 14, 2007); *see also Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1308 n. 7 (7th Cir. 1987) (explaining in analogous RICO context that "[s]uch information is irrelevant to a jury's deliberations and may confuse or prejudice the jury" and is thus "properly excluded").

## AUTHORIZED STATEMENTS OF LAWYERS
### [Relator Proposal]

Lawyers can be recognized as agents for their clients in litigation and other legal matters.

Statements made by a lawyer are considered to be statements of that lawyer's client in dealings with third persons when the client has granted either actual or apparent authority to the lawyer to speak on its behalf or has ratified the statements of the lawyer.

A lawyer's act is considered to be that of a client (that is, "actual authority") in dealings with third persons when:

(1) the client has expressly or impliedly authorized the act;

(2) authority concerning the act is reserved to the lawyer; or

(3) the client ratifies the act.

A lawyer's act is considered to be that of the client (that is, "apparently authority") in dealings with a third person if the third person reasonably assumes that the lawyer is authorized to do the act on the basis of the client's (and not the lawyer's) manifestations of such authorization.

If you find that Lilly granted its lawyers either actual or apparent authority to act as its agents in communicating with third parties, then you must consider statements made by Lilly's lawyers on behalf of Lilly as statements of Lilly itself.

Source(s): Jury Instructions, *U.S. ex rel. Drakeford v. Tuomey*, 05cv02858, ECF No. 810, at 13 (D.S.C. May 8, 2013).

**Lilly's Objections**:  Lilly objects to this instruction in its entirety as irrelevant, misleading, and confusing for the jury.  There is no evidentiary basis to support this instruction.  Lilly further objects that the instruction invites the jury to consider evidence that is barred by Federal Rule of Evidence 408.  Finally, Lilly objects that the instruction misstates the law for multiple reasons, including: (1) In the Seventh Circuit, apparent authority "is a principle of strict liability" that cannot be used to show Lilly acted "knowingly," *United States v. One Parcel of Land Located at 7326 Highway 45 N., Three Lakes, Oneida Cty., Wis.*, 965 F.2d 311, 319 (7th Cir. 1992) ("Apparent authority does not impute actual knowledge to a principal."); (2) the instruction misleadingly implies that any statement a lawyer makes to a third party is within its actual authority if granted authority to speak on behalf of a client; and (3) the instruction omits that "[t]he party asserting the existence of an agency relationship must prove it by a preponderance of the evidence." *Lydon v. Eagle Food Centers, Inc.*, 297 Ill. App. 3d 90, 93, 696 N.E.2d 1211, 1214 (1998).

84

## GOVERNMENT FAILURE IS NOT A DEFENSE
### [Relator Proposal]

You may not consider as a defense to the False Claims Act any negligent or unreasonable conduct on behalf of the government or any failure by government personnel to perform their duties. If you find that Lilly violated the False Claims Act, you must find for Relator notwithstanding any negligence or unreasonable conduct on the part of government personnel. Such failure is irrelevant and cannot be used as a defense to Lilly's liability.

Source(s): *U.S. v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008); *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719, 729 (N.D. Ill. 2007) (Leinenweber, J.); *U.S. ex rel. Asch v. Teller, Levit & Silvertrust, P.C.*, 2004 WL 1093784, at *3 (N.D. Ill. May 7, 2004) (Leinenweber, J.).

**Lilly's Objections**:  Lilly objects to this proposed instruction in its entirety as the proposed instruction misstates the law and is unsupported.  *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719, 729-730 (N.D. Ill. 2007) (instructing the jury that "a claim based on the Defendants' good faith belief that the government approved the conduct at issue is not a claim that violates the False Claims Act."); *U.S. ex rel. Asch v. Teller, Levit & Silvertrust, P.C.*, 2004 WL 1093784, at *3 (N.D. Ill. May 7, 2004) (rejecting an argument that government knowledge is a complete, independent defense to FCA liability); *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008) (rejecting argument that defendant's claims were not material because "a federal employee in a position to take a decision had to testify that the government was sure to enforce the statute.").  None of these sources support the proposed instruction, and we are not aware of it having ever been given.

## DELIBERATIONS
### [Agreed]

When you retire to the jury room to deliberate, you may take with you these instructions and your notes. You may at any time request a specific exhibit that the Court has admitted into evidence. You should select one member of the jury as your presiding juror. That person will preside over the deliberations and will be your representative here in open court.

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

Forms of verdict have been prepared for you. [Forms of verdict read.]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

Source(s): Seventh Circuit Federal Jury Instructions (2017 Ed.) No. 1.32, 1.33, 1.34.