**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES ex rel. RONALD J. STRECK, | ) ) ) | |
| Relator, | ) ) | Case No. 1:14-cv-09412 |
| v. | ) ) | Hon. Judge Harry D. Leinenweber |
| TAKEDA PHARMACEUTICALS AMERICA, INC., et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF ELI LILLY AND COMPANY'S**
**MOTION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 50(b) AND 59**

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................... 1

I.      LILLY IS ENTITLED TO A NEW TRIAL BECAUSE COLLATERAL
ESTOPPEL BARS RELATOR FROM PROVING THAT LILLY ACTED
WITH SCIENTER PRIOR TO FEBRUARY 1, 2012. ................................................... 2

     A.      Lilly Preserved Its Collateral Estoppel Defense. ...................................... 2

     B.      The *Mendoza* Exception to Collateral Estoppel Does Not Apply Here.................. 5

II.      THE FCA'S STATUTE OF LIMITATIONS BARS RELATOR'S CLAIMS
PRIOR TO NOVEMBER 24, 2008. ....................................................................... 6

III.      THE VERDICT MUST BE VACATED BECAUSE IT IS BASED ON
LEGALLY INVALID STATE-LAW CLAIMS.................................................... 8

IV.      THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW
TO LILLY, OR ORDER A NEW TRIAL, ON SCIENTER. ...................................... 11

     A.      Relator Failed To Introduce Evidence That Lilly Acted "Knowingly." ............... 11

     B.      Relator Has Failed To Meet The FCA's Objective Knowledge
Requirement........................................................................................ 13

     C.      HHS's Knowledge Of Lilly's Conduct Negates Any Inference Of Scienter........ 19

V.      RELATOR'S PREJUDICIAL AND LEGALLY ERRONEOUS
ARGUMENTS REQUIRE A NEW TRIAL.................................................... 19

VI.      LILLY'S STATEMENTS WERE NOT FALSE. ........................................ 21

     A.      No Law Required Lilly To Include PIV In Its AMP Calculations. ...................... 21

     B.      The AMPs Lilly Submitted After April 1, 2016 Are Not False for the
Additional Reason That They Included PIV.......................................... 22

VII.      NO REASONABLE JURY COULD FIND MATERIALITY.................................... 23

VIII.      RELATOR'S CLAIMS FAIL UNDER THE PUBLIC-DISCLOSURE BAR. ......... 25

IX.      RELATOR HAS NOT PROVEN PROXIMATE CAUSATION. ............................. 25

CONCLUSION ................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Azar v. Allina Health Servs.*,
    139 S. Ct. 1804 (2019)..............................................................................15, 17

*Baugh v. Cuprum S.A. De C.V.*,
    2015 WL 9304338 (N.D. Ill. Dec. 22, 2015) ............................................................1

*U.S. ex rel. Bellevue v. Universal Health Servs. of Hartgrove, Inc.*,
    2015 WL 1915493 (N.D. Ill. Apr. 24, 2015) ............................................................7

*Bellevue v. Universal Health Servs. of Hartgrove, Inc.*,
    867 F.3d 712 (7th Cir. 2017) ................................................................................25

*U.S. ex rel. Berkowitz v. Automation Aids, Inc.*,
    896 F.3d 834 (7th Cir. 2018) ................................................................................11

*U.S. ex rel. Bogina v. Medline Indus., Inc.*,
    2015 WL 1396190 (N.D. Ill. Mar. 24, 2015)........................................................25

*Calderon v. Witvoet*,
    999 F.2d 1101 (7th Cir. 1993) ................................................................................8

*Curtis v. Timberlake*,
    436 F.3d 709 (7th Cir. 2005) ................................................................................4

*U.S. ex rel. Durcholz v. FKW Inc.*,
    189 F.3d 542 (7th Cir. 1999) ................................................................................18

*e360 Insight, Inc. v. Spamhaus Project*,
    658 F.3d 637 (7th Cir. 2011) ................................................................................10

*U.S. ex rel. Eisenstein v. City of New York*,
    556 U.S. 928 (2009)..............................................................................................5, 6

*Est. of Burford v. Acctg. Prac. Sales, Inc.*,
    851 F.3d 641 (7th Cir. 2017) ................................................................................4, 8

*U.S. ex rel. Gage v. Rolls-Royce N.A., Inc.*,
    760 F. App'x 314 (5th Cir. 2019) ........................................................................6

*U.S. ex rel. Gilbert v. Virginia Coll.*,
    *LLC*, 305 F. Supp. 3d 1315 (N.D. Ala. 2018)........................................................5

*Matter of Greenig*,
    152 F.3d 631 (7th Cir. 1998) ...............................................................10

*Hagood v. Sonoma Cnty. Water Agency*,
    81 F.3d 1465 (9th Cir. 1996) ...............................................................22

*Harris v. McDonald*,
    737 F.2d 662 (7th Cir. 1984) .................................................................6

*Kaczmarek v. Rednour*,
    627 F.3d 586 (7th Cir. 2010) .................................................................8

*Kulzer v. Pittsburgh-Corning Corp.*,
    942 F.2d 122 (2d Cir. 1991)..............................................................4, 8

*U.S. ex rel. Lamers v. City of Green Bay*,
    168 F.3d 1013 (7th Cir. 1999) ........................................................21, 22

*U.S. ex rel. Lisitza v. Par Pharm. Companies, Inc.*,
    2017 WL 3531678 (N.D. Ill. Aug. 17, 2017) ..........................................25

*Lubke v. City Of Arlington*,
    455 F.3d 489 (5th Cir. 2006) .................................................................3

*U.S. ex rel. Marshall v. Woodward, Inc.*,
    812 F.3d 556 (7th Cir. 2015) ...............................................................24

*Massey v. Helman*,
    196 F.3d 727 (7th Cir. 1999) ..............................................................4, 8

*McCormick v. Braverman*,
    451 F.3d 382 (6th Cir. 2006) .................................................................4

*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*,
    608 F.3d 871 (D.C. Cir. 2010) .............................................................19

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)..............................................................................3

*U.S. ex rel. Petratos v. Genentech Inc.*,
    855 F.3d 481 (3d Cir. 2017)................................................................23

*Potts v. Clowdis*,
    360 Ga. App. 581, 859 S.E.2d 875 (2021)............................................10

*U.S. ex rel. Proctor v. Safeway, Inc.*,
    30 F.4th 649 (7th Cir. 2022) ...............................................11, 13, 15

*U.S. ex rel. Proctor v. Safeway Inc.*,
   466 F. Supp. 3d 912 (C.D. Ill. 2020), *aff'd*, 30 F.4th 649 (7th Cir. 2022) ..............................20

*U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc.*,
   17 F.4th 732 (7th Cir. 2021) ........................................................................................23

*U.S. ex rel. Purcell v. MWI Corp.*,
   807 F.3d 281 (D.C. Cir. 2015) ....................................................................................13

*United States ex rel Quinn v. Omnicare Inc.*,
   382 F.3d 432 (3rd Cir. 2004) ......................................................................................21

*Rockwell Int'l Corp. v. United States*,
   549 U.S. 457 (2007).....................................................................................................25

*Ronald Streck v. Allergan Inc*,
   746 F. App'x 101 (3d Cir. 2018) ..................................................................................2

*U.S. ex rel. Rueter v. Sparks*,
   939 F. Supp. 636 (C.D. Ill. 1996) ..............................................................................13

*Ruiz-Cortez v. City of Chicago*,
   931 F.3d 592 (7th Cir. 2019) ......................................................................................19

*Safeco Ins. Co. of America v. Burr*,
   551 U.S. 47 (2007)............................................................................................ *passim*

*U.S. ex. rel. Schutte v. Supervalu, Inc.*,
   9 F.4th 455 (7th Cir. 2021) ................................................................12, 13, 14, 15

*U.S. ex rel. Stone v. OmniCare, Inc.*,
   2011 WL 2669659 (N.D. Ill. July 7, 2011).................................................................12

*U.S. ex rel. Streck v. Allergan, Inc.*,
   894 F. Supp. 2d 584 (E.D. Pa. 2012) ............................................................. *passim*

*U.S. ex rel. Streck v. Takeda Pharms. Am., Inc.*,
   2022 WL 595308 (N.D. Ill. Feb. 28, 2022) ...............................................................23

*Thulin v. Shopko Stores Operating Co., LLC*,
   771 F.3d 994 (7th Cir. 2014) ......................................................................................21

*U.S. v. King-Vassel*,
   728 F.3d 707 (7th Cir. 2013) ......................................................................................25

*United States v. Harra*,
   985 F.3d 196 (3d Cir. 2021).........................................................................................21

*United States v. Luce*,
873 F.3d 999 (7th Cir. 2017) ............................................................25

*United States v. Rogan*,
2006 WL 8427270 (N.D. Ill. Oct. 2, 2006)........................................20

*United States v. Sci. Applications Int'l Corp.*,
626 F.3d 1257 (D.C. Cir. 2010).........................................................23

*United States v. UCB, Inc.*,
970 F.3d 835 (7th Cir. 2020) ...............................................................5

*United States v. Whyte*,
918 F.3d 339 (4th Cir. 2019) ...............................................................5

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176, 136 S. Ct. 1989 (2016)...............................18, 20, 23, 24

*Vaughn v. King*,
167 F.3d 347 (7th Cir. 1999) ...............................................................3

*Wash. State Dep't of Social & Health Servs. v. Guardianship Estate of Keffeler*,
537 U.S. 371 (2003)............................................................................16

*Williams v. Lampe*,
399 F.3d 867 (7th Cir. 2005) ...............................................................4

*U.S. ex rel. Yannacopoulos v. General Dynamics*,
652 F.3d 818 (7th Cir. 2011) .......................................................21, 22

**Statutes**

31 U.S.C. § 3729.................................................................................11

31 U.S.C. § 3730............................................................................7, 24

31 U.S.C. § 3731...................................................................................7

42 U.S.C. § 1396r-8............................................................................15

42 U.S.C. § 1396r-8 (1997) ...........................................................14, 21

42 U.S.C. § 1396r-8 (2007) ................................................................14

**Rules**

Fed. R. Civ. P. 50............................................................... *passim*

Fed. R. Civ. P. 59............................................................... *passim*

v

Eli Lilly and Company ("Lilly") moves for judgment as a matter of law or a new trial on each of Relator's claims under Rules 50 and 59. Relator has failed to carry his burden of showing that Lilly knowingly filed material false claims, and numerous other legal defects require judgment as a matter of law in Lilly's favor, or at minimum, a new trial.

Specifically, (1) there is no serious dispute that the elements of collateral estoppel are satisfied here, and the Seventh Circuit requires the Court to reach the merits of this defense; (2) the False Claims Act's ("FCA's") statute of limitations bars Relator's claims prior to November 24, 2008; (3) the jury awarded damages for state-law claims that Relator has expressly conceded are legally invalid; (4) Relator categorically failed to meet his burden on scienter; (5) Relator cannot show objective knowledge under *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007); (6) the government's knowledge of Lilly's conduct negates any inference of scienter; (7) Relator's legally incorrect and prejudicial arguments, and the Court's erroneous jury instructions, require a new trial; (8) Relator cannot show that Lilly's AMP submissions were false; (9) the final AMPs submitted after April 1, 2016 included PIV and therefore were not false; (10) Relator has failed to prove materiality and the jury received the wrong instruction; (11) Relator's claims prior to March 30, 2010 fail under the public-disclosure bar; and (12) Relator has not proven causation.[1]

## ARGUMENT

Rule 50(b) permits a party to "file a renewed motion for judgment as a matter of law," and "an alternative . . . request for a new trial under Rule 59." Fed. R. Civ. P. 50(b); *see also Baugh v. Cuprum S.A. De C.V.*, 2015 WL 9304338, at *2 n.2 (N.D. Ill. Dec. 22, 2015) (explaining that the "same standard governs" between a Rule 50(a) and Rule 50(b) motion). The evidence at trial and Relator's subsequent statements to the Court have only confirmed that the Court should grant

---

[1] Unless otherwise indicated, each argument below applies to all of Relator's claims.

judgment as a matter of law or order a new trial.

## I. LILLY IS ENTITLED TO A NEW TRIAL BECAUSE COLLATERAL ESTOPPEL BARS RELATOR FROM PROVING THAT LILLY ACTED WITH SCIENTER PRIOR TO FEBRUARY 1, 2012.

As Lilly explained in its previous motions, Relator is collaterally estopped from proving scienter prior to February 1, 2012, and the Court should order a new trial on only those claims that have not already been resolved against Relator. He litigated—and lost—the "exact same" scienter issue in *Streck I*, fulfilling each of the doctrine's elements, *see* Dkt. 476 at 13; Dkt. 402 at 6–12:

- **Same Issue**: Relator admits *Streck I* and this lawsuit involve "exactly" the same FCA claims accusing drug manufacturers of the same conduct. *U.S. ex rel. Streck v. Allergan, Inc.,* 894 F. Supp. 2d 584, 589 (E.D. Pa. 2012) ("*Streck I*"); Tr. 119:11–12. In other words, he has abandoned his prior argument that the issue in *Streck I* was not "the same." Dkt. 424. at 7. Both cases involve identical allegations and legal arguments by Relator—including regarding the Rebate Agreement and "cumulative requirement"—and the same objective scienter standard. *Compare* Dkt. 77 ¶ 24 (alleging Lilly's decision to use Price Increase Value ("PIV") to offset service fee payments "provid[ed] Lilly with a convenient, but illegal, method to exclude price increases from its AMP calculations."), *with Streck I* (E.D. Pa.), Dkt. 59–1 ¶ 16 (similar allegations for the *Streck I* service fee defendants); *see also* Dkt. 402 at 6–9.

- **Actually Litigated**: The district court dismissed Relator's claims in *Streck I* because omitting PIV from Average Manufacturer Price ("AMP") calculations was "not unreasonable, let alone reckless," and the Third Circuit affirmed on that basis. *Streck I*, 894 F. Supp. 2d at 600; 746 F. App'x 101, 105 (3d Cir. 2018).

- **Essential to the Final Judgment**: Both the district court and Third Circuit in *Streck I* held that Relator could not establish scienter and that issue was the basis for the final judgment.

- **Fully Represented**: This factor is "plainly" satisfied because this case and *Streck I* involve the same Relator with the same counsel.

Relator has never seriously disputed these elements, and in ruling on Lilly's motion *in limine*, this Court said nothing to suggest that it doubted the merits of Lilly's collateral estoppel argument. 7/19/22 Hr'g Tr. 6–8. Instead, Relator urged the Court to avoid the merits because Lilly had purportedly waived this defense, and the Court denied Lilly's motion on this basis. *Id.* 6:21–25. But Relator's arguments and the Court's conclusion are contrary to Seventh Circuit law.

### A. Lilly Preserved Its Collateral Estoppel Defense.

2

Lilly preserved its collateral estoppel argument for three independent reasons.

**First**, Lilly preserved its collateral estoppel defense by moving *in limine* on this issue and including the defense in the pretrial order. The Seventh Circuit has held including a defense in a pretrial order independently preserves the defense because "[p]retrial orders supersede the pleadings." *Vaughn v. King*, 167 F.3d 347, 352 (7th Cir. 1999) ("Because the issue . . . was presented in the pretrial order, the plaintiffs' claim that they were unfairly surprised by the submission of the issue to the jury is without merit, and it cannot be said that the defendants waived reliance upon it."); *see also, e.g.*, *Lubke v. City Of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006) (no waiver where party raised affirmative defense for the first time in a motion *in limine*).

Moreover, Relator is estopped from asking the Court to disregard the pretrial order because that would directly contradict his prior statute-of-limitations argument that "***the pretrial statement supersedes anything pleaded***." Tr. 1401:17–19 (emphasis added). Having "prevail[ed] in one phase of a case on [that] argument," Relator is now estopped from "relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

**Second**, Lilly has explicitly and repeatedly raised its collateral estoppel defense from the outset of this litigation. In its motion to dismiss, Lilly explained why each element of collateral estoppel applied to Relator's claims and specified that the defense applied "through February 1, 2012." Dkt. 75 at 16 n.14; see also Dkt. 87 at 18 n.15; Dkt. 105 at 9–10. The Court declined to address this issue in its motion to dismiss ruling. Eight months later, Lilly also raised this defense in its Answer by pleading its "estoppel" defense. Dkt. 128 at 45. Lilly has provided ample authority that raising "estoppel" in an answer suffices to preserve collateral estoppel, particularly because Lilly had also provided a lengthy explanation of the exact legal and factual basis of its argument in its motion to dismiss. Dkt. 454 at 1-2 (collecting authority). These filings put Relator

3

on notice that Lilly intended to raise a collateral estoppel argument based on *Streck I*, and Relator never moved to strike the defense, or even argued waiver until the Court raised the issue of waiver *sua sponte*. 7/13/22 Hr'g Tr. 28:8-9. The entire "purpose in requiring a defendant to plead an affirmative defense is to give the plaintiff notice and a chance to respond." *McCormick v. Braverman*, 451 F.3d 382, 396 n.10 (6th Cir. 2006). Lilly's motion to dismiss and answer communicated the collateral estoppel defense that it wished to raise, and this sufficed to preserve these arguments. *Massey v. Helman*, 196 F.3d 727, 735 n.5 (7th Cir. 1999) (holding that even when a defendant did not raise an affirmative defense in its answer, "they adequately preserved the affirmative defense by making the argument in their motion to dismiss").

**Third**, the Court must consider the defense because Relator had ample chance to argue the issue. The Seventh Circuit has held that "a delay in asserting an affirmative defense waives the defense **only if** the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005) (emphasis added); *see also Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005) (there is no waiver so long as a plaintiff (1) "has an opportunity to respond to a late affirmative defense," and (2) "does not suggest any prejudice to her from the defendants' delay"). Here, the issue was fully aired with *seven* briefs and two arguments on it. Dkts. 402, 424, 439, 451, 452, 453, 454.

**Finally**, the fact that Lilly chose not to raise collateral estoppel at summary judgment is irrelevant. A defendant "**simply does not waive [affirmative] defenses**" by declining to raise them at summary judgment. *Est. of Burford v. Acctg. Prac. Sales, Inc.*, 851 F.3d 641, 645 (7th Cir. 2017) (emphasis added) (holding that "[i]t is not unusual or unfair for a defendant" to choose to assert one legal defense but not others at "summary judgment," and that this does not result in waiver); Dkt. 452 at 5 n.1 (collecting cases). Depriving Lilly of the opportunity to raise this defense on the basis that it did not raise the defense at summary judgment is reversible error.

4

*Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 125 (2d Cir. 1991) (reversing district court for finding waiver because "assertion of the defense in the defendant's answer, rather than in its prior motions for dismissal and summary judgment, was sufficient and timely").

### B. The *Mendoza* Exception to Collateral Estoppel Does Not Apply Here.

Relator separately tried to avoid the consequences of the Court's opinion in *Streck I* by invoking the rule that nonmutual collateral estoppel cannot be applied against "the government." But Relator cannot rely on that doctrine because the government "is not a 'party' to the litigation" when, as here, it "has declined to intervene in a privately initiated FCA action." *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 937 (2009). The Seventh Circuit has made clear that *Eisenstein* is the Supreme Court's "most recent word on the relationship between the relator and the government in a qui tam case in which the government has declined to intervene" and should not be limited to its facts. *United States v. UCB, Inc.*, 970 F.3d 835, 843 (7th Cir. 2020).

This Court has previously commented that the rule at issue in *Eisenstein* was limited to jurisdictional issues, 7/19/22 Hr'g Tr. 7:10-13, but Relator has not cited and cannot cite a single case suggesting that *Eisenstein* is so narrow. *See* 556 U.S. at 938 n.4. In fact, courts have repeatedly applied *Eisenstein* to non-jurisdictional issues, including collateral estoppel. *See, e.g.*, *United States v. Whyte*, 918 F.3d 339, 346 (4th Cir. 2019) (applying *Eisenstein* to hold that government was not a party for purposes of collateral estoppel when criminal defendant sought to estop the Department of Justice using non-intervened case); *U.S. ex rel. Gilbert v. Virginia Coll., LLC*, 305 F. Supp. 3d 1315, 1322 (N.D. Ala. 2018) (applying *Eisenstein* to the FCA's public-disclosure bar, which is not jurisdictional). The only reason *Eisenstein* mentions "jurisdiction" was to reject the argument that it should carve out a special exception based on "harsh consequences." 556 U.S. at 938 n.4. It did not suggest that district courts can create novel exceptions to *Eisenstein* for non-jurisdictional rules, especially here where collateral estoppel

would lead to the commonsense result of binding Relator to his own prior lawsuit. *See Harris v. McDonald*, 737 F.2d 662, 666 (7th Cir. 1984) ("Our duty is to decide cases based upon applicable Supreme Court precedent, not to engage in a legal critique of that precedent."). *Eisenstein* is binding, on-point, and dispositive of whether the government is a "party" here.

If there were any doubt as to whether Relator's argument is wrong, he has not—through three rounds of briefing—cited a ***single case*** applying the *Mendoza* exception to a non-intervened case involving collateral estoppel. *See* Dkt. 454 at 2 (explaining that Relator's cited cases have nothing to do with issue preclusion). In contrast, Lilly has cited many cases applying collateral estoppel to relators in non-intervened cases. Dkt. 452 at 10 n.3 (collecting cases). This includes the Fifth Circuit's decision in *U.S. ex rel. Gage v. Rolls-Royce N.A., Inc.*, 760 F. App'x 314 (5th Cir. 2019), which applied non-mutual offensive collateral estoppel in a non-intervened case—the precise situation here. *Id.* at 319. To hold otherwise would require this Court to create an unprecedented exception to the doctrine of collateral estoppel that directly contradicts Supreme Court and circuit precedent.

Here, too, Relator cannot argue that Lilly is asserting issue preclusion against the government. In opposing Lilly's motion to dismiss, Relator successfully argued the public disclosure bar did not apply because *Streck I* was not a hearing "***in which the Government or its agent is a party***" because the government did not intervene. Dkt. 99 at 9 (emphasis added); *see also* Ex. A, 11/16/20 A. Costello Ltr. at 1 (emphasis added) (Government explaining *Touhy* regulations apply only "in proceedings ***in which the federal government is not a party***").

## II.    THE FCA'S STATUTE OF LIMITATIONS BARS RELATOR'S CLAIMS PRIOR TO NOVEMBER 24, 2008.

The FCA's statute of limitations bars Relator's claims prior to November 24, 2008. As Lilly explained in its Rule 50(a) Motion, a "civil action under [the FCA] may not be brought" (1)

"more than 6 years after the date" of the alleged violation, or (2) "more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances," whichever is later. 31 U.S.C. § 3731(b)(1), (2); Dkt. 476 at 2–3.

The six-year statute of limitations bars claims before November 2008 because Relator filed this lawsuit on November 24, 2014. *See U.S. ex rel. Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 2015 WL 1915493, at *4 (N.D. Ill. Apr. 24, 2015). And Relator cannot salvage his pre-2008 claims by arguing the government only became aware of the facts underlying his claim within three years of his 2014 lawsuit because the government knew the "facts material to the right of action" when Relator filed his Pennsylvania lawsuit in 2008. By his own admission, that 2008 lawsuit against Lilly concerned "exactly" the same allegations as this case. Tr. 119:11–12. Relator was required to serve a "copy of the complaint and written disclosure of substantially all material evidence" on "the Government." 31 U.S.C. § 3730(b); *see also* Dkt. 87 at 34 (Lilly's motion to dismiss arguing three-year provision did not apply because of *Streck I*). Thus, in 2008 at the latest, the government was aware of "facts material" to this lawsuit, meaning Relator needed to file his complaint by 2011 at the latest to salvage some of his claims. 31 U.S.C. § 3730(b)(2).

At oral argument on Lilly's Rule 50(a) motion, Relator incorrectly claimed that he could invoke a "longer 10-year statute of limitations." Tr. 1399:25–1400:1. The FCA provides that the 3-year government-knowledge provision cannot extend the statute of limitations more than 10 years after the alleged violation. 31 U.S.C. § 3731(b)(2). There is no separate "10-year" statute of limitations, and Relator's 2014 lawsuit seeks only damages extending back 9 years (2014 to 2005), so the 10-year statute of repose is not implicated. Dkt. 1 (2014 initial complaint).

Relator also claimed that Lilly waived its statute-of-limitations defense by not including it

in the pretrial order or at summary judgment. Tr. 1399:16–18; 1401:18–19. Relator is wrong. Lilly raised its statute-of-limitations defense in its motion to dismiss, explained the legal and factual basis for the defense, and then when the Court did not address the argument in its motion to dismiss ruling, Lilly raised the defense *again* in its Answer. Dkt. 87 at 33–34; Dkt. 122; Dkt. 128 at 47. The Seventh Circuit has consistently held that "a party must plead affirmative defenses . . . in its answer to properly preserve them," and that is exactly what Lilly did here. *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010); *Massey*, 196 F.3d at 735 n.5.

The Seventh Circuit is equally clear that Lilly was not required to raise this defense in the pretrial order to preserve it. *Calderon v. Witvoet*, 999 F.2d 1101 (7th Cir. 1993). In *Calderon*, the Seventh Circuit reversed the district court and held that a party had not "waived the defense of the statute of limitations by not listing it in the final pretrial order" because the party "pleaded the statute of limitations in their answer." *Id.* at 1108. The Court further explained that there was no need for the defendant to raise this issue in the pretrial order because it was "not an issue for *trial*." *Id.* (emphasis in original). *Calderon* requires the same result here because there is no evidentiary dispute about whether the government knew about Lilly's conduct when Streck filed this lawsuit.

It is equally well-established that Lilly had no obligation to raise its statute of limitation defense at summary judgment. *See supra at 4; Burford*, 851 F.3d at 645. Lilly's decision to move for summary judgment under *Safeco*, which would have disposed of the entire case, does not foreclose Lilly from raising additional defenses under Rule 50, and to hold otherwise would constitute reversible error. *Id.*; *Kulzer*, 942 F.2d at 125.

## III. THE VERDICT MUST BE VACATED BECAUSE IT IS BASED ON LEGALLY INVALID STATE-LAW CLAIMS.

Relator brings claims under the FCAs of various States and the District of Columbia. Dkt. 77. However, many of these state claims seek damages and penalties from *before that State*

*enacted its FCA*.  Relator is not permitted to bring claims from when there was no statute in place.  *Streck I*, 894 F. Supp. 2d at 605 (dismissing claims after effective dates of state FCAs).

Relator has already expressly conceded that many of his claims are invalid.  In 2018, Lilly moved to dismiss in part many of Relator's state-law claims to the extent that they sought to recover for conduct before the relevant statute was enacted, and for other state-specific defects.  Dkt. 87 at 34–35.  In response, Relator *explicitly "agree[d] to dismissal"* of many of his state-law claims, and even identified the time periods when his claims were invalid.  Dkt. 100 at 30–31.

But Relator backtracked on this concession at trial and included damages from these admittedly impermissible periods in Dr. Kimelblatt's damages calculations, which formed the basis of the jury's verdict.  RX-30 at 9 (limiting certain states because of dates of enactment, but not others that Relator has conceded).  In other words, the $61,229,217 damages figures that Dr. Kimelblatt presented and the jury awarded *explicitly includes damages that Relator has admitted he is not entitled to recover*.  *Id.* at 9 & n.7.  Relator also seeks state penalties corresponding to certain periods where he has agreed to dismiss his claims.  Dkt. 492 at 2 (penalties stipulation).

Relator's Colorado claims illustrate why the judgment is legally erroneous.  Relator explicitly conceded that he "agrees to dismissal [of his Colorado claims] before . . . 5/26/2010."  Dkt. 100 at 30.  Relator acknowledged this point again after trial in his proposal for the number of penalties, where he stated that the "Effective Date" of the Colorado statute is "5/26/2010."  Ex. B, 8/3/22 DeSantis Email.  Nevertheless, neither Relator nor Dr. Kimelblatt adjusted the damages calculations to account for the effective date of the Colorado statute.  The jury therefore awarded damages for Relator's Colorado claims prior to 2010 even though he had abandoned those claims and acknowledged that they are legally invalid.  *Id.*; *see also* 5/21/21 Kimelblatt Damages Detail ("incorporated herein by reference" at RX-30 at 8 n.6) (including Colorado damages for 2005–

2010 in, among other places, Tab 1 damages calculations).

In total, Relator has conceded that the effective date or other legal flaws limit his claims under the laws of the following 12 states, and he cannot (and has not tried) to walk back this concession: Colorado (Count V) (eff. 5/26/2010); Connecticut (Count VI) (eff. 10/5/2009); Georgia (Count IX) (eff. 5/24/2007); Indiana (Count XII) (eff. 5/11/2005); Iowa (Count XIII) (eff. 7/1/2011); Maryland (Count XV) (all claims); Minnesota (Count XVIII) (eff. 7/1/2010); New Jersey (Count XXI) (eff. 3/13/2008); New Mexico (Count XXII) (all claims); New York (Count XXIII) (eff. 4/1/2007); Oklahoma (Count XXV) (eff. 11/1/2007); Rhode Island (Count XXVI) (eff. 7/1/2007).[2]  Nevertheless, Relator improperly sought damages from before these dates.

Because the jury has awarded damages based on legally invalid claims, the current verdict is "based on an error of law" and must be vacated.  *See e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 648 (7th Cir. 2011) (vacating damages award because the plaintiff "failed to offer any evidence that would have allowed the district court to determine what portion of its" claimed damages it was legally entitled to recover); *Matter of Greenig*, 152 F.3d 631, 635 (7th Cir. 1998) (noting the established rule that "a trial verdict is binding but may be reversed if it is founded on legal errors"); *Potts v. Clowdis*, 360 Ga. App. 581, 587, 859 S.E.2d 875, 880 (2021) (vacating judgment because it appeared that the trial court had entered a "verdict that included damages for dismissed claims").  Lilly raised these issues in its Rule 50(a) motion, but Relator failed to remedy this fundamental defect in his damages presentation.  *See* Dkt. 476 at 18.  The Court should use Rule 50(b) and Rule 59 to correct this legal error and order a new trial where Relator can rectify

---

[2]  Specifically, Relator has failed to account for these limitations as follows:  for Colorado, Georgia, Indiana, New Jersey, Oklahoma, and Rhode Island, the jury awarded damages based on legally invalid claims.  *See* RX-30 at 9 (listing states for which Dr. Kimelblatt made adjustments, but not these ones).  For New Mexico and New York, the jury awarded damages and Relator seeks penalties based on legally invalid claims.  *Id.*; Dkt. 492 at 2.

these admitted flaws in his damages presentation.  Relator's state-law claims also fail on each of the other grounds raised in this motion.  *Streck I*, 746 F. App'x at 105 n.3.

## IV.   THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW TO LILLY, OR ORDER A NEW TRIAL, ON SCIENTER.

Lilly incorporates and renews the arguments raised in its Rule 50(a) Motion that Relator cannot prove Lilly acted with "actual knowledge," "deliberate ignorance," or "reckless disregard" for the truth or falsity of its AMP submissions.  Dkt. 476 at 3–11; 31 U.S.C. § 3729(a)(1)(A), (b). *First*, Relator failed to introduce evidence that Lilly "knowingly" violated the FCA, and the verdict was against the weight of the evidence.  *Second*, Relator cannot prove scienter under *Safeco*. *Third*, the fact that Lilly knew that the government knew about Lilly's practices negates any inference of scienter.

### A.   Relator Failed To Introduce Evidence That Lilly Acted "Knowingly."

The FCA requires Relator to prove Lilly "knowingly" violated the law, defined as "actual knowledge," "deliberate ignorance," or "reckless disregard."  31 U.S.C. § 3729(a)(1)(A), (b). Because the FCA is a fraud statute that imposes punitive liability, its "scienter requirement is 'rigorous'" and "demanding." *U.S. ex rel. Proctor v. Safeway, Inc.*, 30 F.4th 649, 658 (7th Cir. 2022).  To meet even the lowest of the FCA's three definitions of "knowingly," it is not enough to prove a defendant submitted a false claim as a result of negligence or a good faith interpretation of the law. *E.g.*, *U.S. ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 842 (7th Cir. 2018).

No reasonable juror could conclude that Lilly acted "knowingly" based on the evidence presented at trial.  On the contrary, that evidence overwhelmingly established that Lilly held a good faith belief that its AMP calculations complied with the law.  Dkt. 476 at 3–6.  The witnesses at trial consistently testified that they believed Lilly complied with the law.  *E.g.*, Tr. 238:1–10; 277:7-10; 356:14–22; 379:11–15; 381:15–25; 397:3–21; 402:6–15.  Heather Dixson, the person

responsible for Lilly's AMP methodology, testified that she believed at the time that Lilly's approach complied with the 1991 Rebate Agreement, CMS regulations, and all other applicable law. *E.g.*, Tr. 879:1–17; 880:22–881:22. Relator never seriously disputed the genuineness of her belief; just the opposite, he conceded Ms. Dixson "may have made a good faith decision at the time" (before arguing that it should not matter because Lilly is a large company). Tr. 1727:21-22, 1620:15-16, 1623:1-12. The evidence also demonstrated that Lilly's government-pricing practices were the "gold standard in the industry" with a culture of compliance. Tr. 752:6; 726:1–8; *see also* Tr. 559:1–11. Confirming it believed it was following the law, Lilly repeatedly informed the government of its AMP practices, including its treatment of PIV. *E.g.*, DX-3; Tr. 821:15–22 (2005 communications); DX-98 at 3–4; Tr. 345:22–346:2 (2011 communications); Tr. 356:3–6; DX-102 at 20 n.31; Tr. 377:2–379:18 (evidence regarding audit submission showing precisely how Lilly treated PIV in its AMP calculations). Relator's Pennsylvania lawsuit confirmed Lilly's belief that its treatment of PIV was lawful, Tr. 1198:9–13, as did an audit by HHS-OIG. DX-125; Tr. 1231:12-18, 381:15-382:16, 367:12-24, 386:9-16.

Relator presented nothing to counter this extensive evidence that Lilly acted in good faith. Instead, he repeatedly conflated evidence of (at most) *falsity* for evidence of *scienter*, arguing that Lilly must have known it was required to include PIV in AMP because the law so clearly (in his view) required it to. *E.g.*, Tr. 99:5–10. But whether Lilly got its AMP calculations wrong does not prove it ***knowingly*** did so. *E.g.*, *U.S. ex rel. Schutte v. Supervalu, Inc.*, 9 F.4th 455, 463 (7th Cir. 2021).

None of Relator's scienter arguments remotely satisfy his burden. For example, Relator pointed to a supposed "lack of any documentation," Tr. 1592:19, but "deficient documentation, without more, does not properly support" an FCA claim. *U.S. ex rel. Stone v. OmniCare, Inc.*,

2011 WL 2669659, at *5 (N.D. Ill. July 7, 2011). To permit liability on the basis of "deficient documentation" would impermissibly turn the FCA into a "vehicle for punishing garden-variety . . . regulatory violations." *Proctor*, 30 F.4th at 658. Relator faulted Ms. Dixson for her lack of "diligence," arguing she should have recognized she was "new to this job," and "talked to the guy next to her who trained her" to seek "guidance." Tr. 1622:18–23. But it is undisputed that Ms. Dixson consulted every legal authority Relator claims supports his interpretation. *See* Tr. 960:20–961:23, 1072:17-20. There is no evidence she recklessly disregarded any law, only that she interpreted it differently from Relator.

Lacking evidence of fraud, Relator repeatedly urged the jury to find Lilly liable under a negligence standard. Relator argued to the jury that "Lilly had to act reasonably," but failed to do so. Tr. 1584:17–19; *id.* 1608:16–17 ("We're clear now. Right? It's not reasonable [referring to Lilly's conduct]."). Tellingly, at the charge conference Relator reiterated: "[i]t is enough to prove that the defendant failed to do what a reasonable person would have done"—the very definition of negligence. Tr. 1532:13–14. And "negligence is not actionable" under the FCA. *U.S. ex rel. Rueter v. Sparks*, 939 F. Supp. 636, 638 (C.D. Ill. 1996) (granting Rule 50 motion where employee testified he thought he was acting properly under the relevant regulations).

## B. Relator Has Failed To Meet The FCA's Objective Knowledge Requirement.

Lilly also renews its argument that it is entitled to judgment as a matter of law because Relator cannot prove objective knowledge under *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007); Dkt. 476 at 6–11; Dkts. 315, 328, 338. Lilly's conduct was consistent with an "objectively reasonable" interpretation of the law at the time, and "there was no authoritative guidance warning against its" view. *Schutte*, 9 F.4th at 468; *see U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 290-91 (D.C. Cir. 2015) (overturning jury verdict for government and entering judgment for defendant under *Safeco*). And while subjective intent is irrelevant under *Safeco*, trial has proven

13

that Lilly actually, genuinely believed the objectively reasonable interpretations of the law that Relator has derided in prior briefing as "post hoc."

**First**, Lilly's exclusion of PIV from AMP was an objectively reasonable interpretation of the applicable law. "The objectively reasonable inquiry" under *Safeco* "hinges on the text of the statute or regulation that the defendant allegedly violated." *Schutte*, 9 F.4th at 468; *Safeco*, 551 U.S. at 69. During the relevant time, the applicable statutes defined AMP only as "the average price paid to the manufacturer for the drug in the United States by wholesalers for drugs distributed to the retail pharmacy class of trade." *See* 42 U.S.C. § 1396r-8(k)(1) (1997); 42 U.S.C. § 1396r-8(k)(1)(A) (2007); 42 U.S.C. § 1396r-8(k)(1)(A) (2010). Relator concedes this language "is not overly specific." Tr. 866:14–18. It did not address whether a contractual provision like PIV was part of the "price" that is "paid to the manufacturer." In fact, the Third Circuit has already held one reasonable interpretation of "price" is the "initial" price paid by the wholesaler to the manufacturer at the time the manufacturer transfers the drug, ***before*** any subsequent price increase triggers PIV. *Streck I*, 746 F. App'x at 108. And the Seventh Circuit affirmed in *Schutte* on the same reasoning. After noting that the applicable "regulations define U&C [usual and customary] price without much elaboration," the court held that "the U&C price definition [was] open to multiple interpretations." 9 F.4th at 469. Like price here, (1) "usual and customary" "might mean the price that is 'charged' most frequently for a drug, but it could also indicate the retail rather than discount price," and (2) "'general public' may mean that discount prices qualify only if applied to all consumers," but it "just as easily might encompass any discount program offered to the public, regardless of whether all consumers take advantage of it." *Id*.

Lilly's assumption that it could exclude PIV as a component of how it calculated its service fees was also reasonable. Lilly treated PIV as a component of the service fee, Tr. 1040:15-1041:25,

and in the 2005 wholesaler contracts, which introduced the service fee, PIV was an offset to the service fees. DX-10; RX-72 at 27. The 2009 and 2015 wholesaler contract changed the method of invoicing, but this was a form over substance change that merely impacted the number of invoices used. RX-76 at 45; Tr. 1136-1137, 1139:12-19. CMS regulations, when in place, instructed manufacturers to exclude service fees from AMP. 42 C.F.R. § 447.502; 42 U.S.C. § 1396r-8. And service fees and PIV have the same origins and purpose—ensuring that Lilly adequately compensated wholesalers without paying more than fair market value for their services. Tr. 797:14-798:19; 691:8–14; DX-3.

The only source of "law" that Relator alleges unambiguously required Lilly to include PIV in AMP—the 1991 Rebate Agreement—was neither a statute nor regulation. *See, e.g.*, Tr. 130:10–14, 1586:9. Rather, like the PBM contracts in *Schutte* and *Proctor* defining "usual and customary price" (the key term in dispute in those cases), the Rebate Agreement is a ***contract* that *interprets*** and applies the statutory and regulatory definition of AMP. *Proctor*, 30 F.4th at 660 (holding PBM contracts are not even authoritative guidance, let alone the relevant statute or regulation, because they did not come from the relevant agency). The U.S. Department of Health & Human Services ("HHS"), of course, lacks authority to change the statutory and regulatory definition of AMP by contract. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1810 (2019) (CMS may not make binding rule absent notice-and-comment rulemaking); *Proctor*, 30 F.4th at 663. That agreement cannot satisfy Relator's burden at Step One of *Safeco*. And regardless, Lilly's conduct was *consistent* with the Rebate Agreement (as explained more fully below); it could not have rendered Lilly's interpretation unreasonable.

***Second***, no authoritative guidance warned Lilly away from its reasonable interpretation of the law. *See Schutte*, 9 F.4th at 471 ("[A]uthoritative guidance must have a high level of specificity

to control an issue."). Even if the Rebate Agreement could offer authoritative guidance (which it is not), neither it nor the language of any CMS rule or guidance document could have warned Lilly away because they were consistent with Lilly's exclusion of PIV from AMP. The Rebate Agreement states that AMP "must be adjusted . . . if cumulative discounts or other arrangements subsequently adjust the prices actually realized." RX-63 ("Rebate Agreement") § I.1(a). The Rebate Agreement, however, never defines "cumulative discounts" or "other arrangements," let alone defines them to specifically include PIV in AMP calculations. Tr. 1154:18-1156:18. Relator asserts that "cumulative discounts" must mean "any arrangement which affects the prices." Tr. 99:5-7; Tr. 1717:15–16. But the natural reading of "discounts" refers only to *decreases* in price, which is not the function of PIV, and Relator did not even argue at trial that it was a discount. Relator cannot instead rely on the catch-all term "other arrangements" to mandate including PIV in AMP. Relator still has not identified a single source that has ever interpreted "other arrangements" to include something that *increases* PIV, and he has never disputed that every example from CMS has always *decreased* PIV. *See, e.g.*, RX-64 (Program Release No. 2) at 2; RX-65 (Program Release No. 14) at 1; 72 Fed. Reg. 39,142 (July 17, 2007); Tr. 1159:6-1160:18, 1156:12-1157:25. Moreover, reading this language to undo the cumulative *discounts* requirement would violate the common-sense interpretative principle that "general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Wash. State Dep't of Social & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003). The Rebate Agreement reinforces that this language applies to decreases to AMP because it explicitly states that AMP must "include[] cash *discounts* . . . and all other price *reductions* . . . which *reduce* the actual price paid." Rebate Agreement § I.1(a). Relator's argument is particularly unpersuasive because the Rebate Agreement specifies that "[i]n the

16

absence of specific guidance . . . [Lilly] may make ***reasonable assumptions*** in its calculations of AMP." Rebate Agreement § II.6(i) (emphasis added). The Agreement contemplates that it has not defined every nuance of AMP calculation and that Lilly its own reasonable assumptions, expressly deferring to Lilly to make a reasonable interpretation of the applicable authority.[3]

Other than the Rebate Agreement, Relator points to no law even mentioning PIV, let alone requiring manufacturers to include PIV in AMP. In 2012, in a preamble to a proposed rule, CMS suggested for the first time that PACs "do not meet the definition of a bona fide service fee as they do not reflect any service ***or offset of a bona fide service*** performed on behalf of the manufacturer." 77 Fed. Reg. 5318, 5332 (Feb. 2, 2012) (emphasis added). The preamble to a proposed rule is not authoritative guidance, and it did not "canvass the issue" of whether to include PIV in AMP calculations. *Safeco*, 551 U.S. at 70 n.19. Regardless, it supported Lilly's interpretation. If PACs are not service fees ***because*** they do not generally offset any service, then Lilly's PIVs ***were*** properly excluded from AMP because they ***were*** offsets to bona fide service fees. Tr. 410:3-16.

CMS confirmed the reasonableness of Lilly's interpretation with its April 1, 2016 final rule. That rule's preamble (also not authoritative guidance) walked back its statement from the 2012 preamble that PACs are not service fees, equivocating: "price appreciation credits would ***likely not*** meet the definition of a bona fide service fee." 81 Fed. Reg. 5170, 5228 (Ap. 1, 2016) (emphasis added). Like the preamble to the 2012 proposed Rule, CMS reiterated that its view was based on its understanding that PACs "are not issued for the purposes of payment for any service ***or offset*** for a bona fide service." *Id.* (emphasis added). Thus, again it implicitly suggested that

---

[3] Relator also points to a 1994 MDRP bulletin that purported to quote the Rebate Agreement but in fact used an ellipses to elide the key phrase "cumulative discounts." RX-65 at 1. Such informal, sub-regulatory guidance documents that misinterpret another guidance document lack the force of law, and could not have warned Lilly away from its interpretation. *Azar*, 139 S. Ct. at 1810.

manufacturers that treat PIV "for the purposes of payment for any service or offset" could reasonably exclude PIV from AMP. *Id.* Lilly's view was consistent with an objectively reasonable view of existing law, and no authoritative guidance warned otherwise.

Indeed, the very premise of the Supreme Court's holding in *Safeco* was that "Congress could not have intended" to "treat a defendant . . . as a knowing or reckless violator" who "followed an interpretation ***that could reasonably have found support in the courts***." 551 U.S. 47, 70 n.20 (emphasis added). Here, it is not just a theoretical possibility that Lilly's interpretation "could reasonably have found support in the courts"; it ***did***, in fact, find support in the Eastern District of Pennsylvania and the Third Circuit. *Streck I*, 746 F. App'x at 106. In the Third Circuit's view, the regulatory landscape was ambiguous and "susceptible to multiple interpretations, one of which excludes the price-appreciation credits." *Id.* at 108. This Court denied Lilly's argument under *Safeco* because it "didn't think [the Third Circuit] got it right," but, respectfully, that was error. 7/13/22 Hr'g Tr. at 27:3-8. The very fact that multiple courts reached that conclusion confirms that it was at least objectively reasonable for Lilly to have done so, too.

Finally, while subjective intent is not relevant under *Safeco*, the trial record confirms Lilly genuinely held objectively reasonable beliefs in the legality of its conduct. Lilly's head of government pricing offered compelling explanations for why she believed then—and continues to believe now—that the existing law permitted their approach, as confirmed by *Streck I*. *E.g.*, Tr. 1018:18–1019:25. As explained above, the only reasonable inference from the evidence at trial is that Lilly held a good-faith belief that it was calculating AMP in compliance with the relevant guidance. *See supra* at 12. Given the complete absence of any authoritative guidance requiring Lilly to include PIV in AMP, and the multiple reasonable interpretations of the law that supported that decision, liability here would defy due process, "history and current thinking," and binding

18

precedent. *Safeco*, 551 U.S. at 70 n.20; *Escobar*, 579 U.S. at 192.

### C. HHS's Knowledge Of Lilly's Conduct Negates Any Inference Of Scienter.

Finally, the undisputed fact that Lilly knew that the government knew about Lilly's conduct also negates any inference that Lilly acted knowingly. *U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 544-45 (7th Cir. 1999) ("The government's prior knowledge of an allegedly false claim can vitiate a FCA action."). For example, there is not any serious factual dispute that in July 2011 Lilly outlined all of the details of its PIV treatment in a letter delivered to CMS and it detailed its practices in a 2016 meeting with CMS. DX-98 at 3–4; Tr. 406:14–21. OIG knew about Lilly's treatment of PIV in connection with a 2013–2014 audit. Tr. 436:6–17. And as early as 2005, Lilly informed the government about its treatment of service fees. DX-3.

## V. RELATOR'S PREJUDICIAL AND LEGALLY ERRONEOUS ARGUMENTS REQUIRE A NEW TRIAL.

Relator repeatedly misled the jury with highly prejudicial false statements about the law, and the jury instructions compounded, rather than corrected the prejudicial errors. A new trial is required. *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 602-04 (7th Cir. 2019) (ordering new trial where single statement by party "misled the jury" and there was no "clarifying instruction").

***First***, although falsity alone is insufficient, Dkt. 400-5 at 54 (collecting many binding cases), Relator repeatedly argued that Lilly should be held liable because it submitted false prices and needed to repay the government as a result. *E.g.*, Tr. 95:2-4 (arguing that it was not "in dispute" that Lilly acted "like a tax cheat" because "Judge Leinenweber determined that Lilly reported false drug prices to Medicaid in the manner I'm describing"); *see also id.* at 1630:8-24 (similar); *id.* at 1712:7-23 (similar), 1713:9-14 (similar); *id.* at 1720:24-25 (similar); *id.* at 118:7-12 (similar); *id.* at 101:19-102:1 (similar).

**Second**, Relator focused the jury on Lilly's size and profits, and expressly urged the jury to make Lilly pay because "it's virtually petty cash to a $300 billion company." Tr. 1630:22-24; *e.g.*, *id.* at 1616:5-9 (similar); Dkt. 488 at 3-4 (citing many more examples). These arguments "are grounds for a new trial." *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 897 (D.C. Cir. 2010); Dkt. 408 at 7-8 (citing cases).

**Third**, Relator insisted **"[t]his is not a fraud case,"** Tr. 1711:2–3, and therefore the scienter standard is *less* stringent than fraud, *id.* at 1710:17-1711:11. The Supreme Court disagrees. *E.g.*, *Escobar*, 579 U.S. at 192 (FCA is a "fraud statute" imposing "punitive" liability).

**Fourth**, Relator argued Lilly's good faith does not matter to whether it acted with scienter, Tr. 1727:21-22, 1620:15-16, 1623:1-12, when in fact the FCA does not punish "good faith interpretation[s]" of the law. *U.S. ex rel. Proctor v. Safeway Inc.*, 466 F. Supp. 3d 912, 929 (C.D. Ill. 2020), *aff'd*, 30 F.4th 649 (7th Cir. 2022) (citing cases).

**Fifth**, over Lilly's objections, the Court instructed the jury that Lilly had a "duty to familiarize itself with the" law, Tr. 1739:15-20, and Relator argued Lilly had an absolute duty to "know" the law. Tr. 1646:6-7. That is incorrect. If a company makes even a "limited," not "burdensome," reasonable inquiry into the law, it has not acted with reckless disregard. *E.g.*, S. REP. 99-345, 21, 1986 U.S.C.C.A.N. 5266, 5286; *Rogan*, 2006 WL 8427270, at *19.

The number of times Relator repeated each of these erroneous arguments throughout trial resulted in severe and unfair prejudice. Lilly objected to each of these arguments in motions *in limine* and at the charge conference, and proposed corrective jury instructions, all of which the Court denied.[4] As a result, the trial was fundamentally unfair and the verdict cannot stand.

---

[4]     *See* Dkt. 408 at 1, 7-8 (Lilly's MIL 7 to preclude Relator from referencing Lilly's size and profits); Dkt. 457 (granting MIL 7 only "in part" as to references to drug pricing); Dkt. 457 (granting Relator's motion to preclude reference to FCA's punitive remedies over Lilly's objection that "the jury will wrongly believe that a court's falsity finding … ties its hands to rule for a relator so the government can be made

20

## VI.     LILLY'S STATEMENTS WERE NOT FALSE.

Lilly also renews and incorporates the argument it raised in its Rule 50(a) Motion that Lilly is entitled to judgment as a matter of law on all claims on grounds that Lilly's AMPs were not false under the law that existed at the time.  Dkt. 476 at 16–18.

### A.     No Law Required Lilly To Include PIV In Its AMP Calculations.

Relator has not presented evidence at any stage of the proceeding that could show Lilly had a "clear obligation" to include PIV in its AMP calculation.  *Quinn*, 382 F.3d at 445.  To prove falsity, Relator must show that Lilly made a claim or statement "in contravention of a statute, regulation, or contract."  *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 998 (7th Cir. 2014).  Relator must prove Lilly's statements to be "objective falsehood[s]," and not just the product of "differences in interpretation growing out of a disputed legal question."  *U.S. ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 836 (7th Cir. 2011); *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999).  The evidence that Relator relied on at summary judgment failed to satisfy this standard, and nothing adduced at trial saves his claim.

Excluding PIV from AMP was an "alternative, objectively reasonable interpretation" of the statute's plain language.  *United States v. Harra*, 985 F.3d 196, 215 (3d Cir. 2021).  No statute specifically obliged Lilly to include PIV in AMP or even mentioned PIV.  The Medicaid statute specifies that "bona fide services fees," including "distribution service fees," should be "exclude[d]" from AMP.  42 U.S.C. § 1396r-8(k)(1).  The statute never defines "distribution service fees," or makes clear whether PIVs—which are part of the computation of the

___

whole," Dkt. 421 at 1); Tr. 1470:19-1471:2 (Lilly objecting to "duty to familiarize" instruction); Tr. 1461-1478 (Court refusing to instruct jury that "falsity alone [is] insufficient to establish liability," 1461:21–1465:6, that "good-faith interpretation" or belief is insufficient, Tr. 1475:15:–1478:20, that "regulatory complexity alone does not entail a knowingly false representation," Tr. 1472:14–1473:10).

compensation paid by Lilly to distributors—qualifies. *See* Tr. 239:21–24. Relator's argument is especially unfounded in light of the Reasonable Assumption framework, which gave Lilly leeway where "there is not specific guidance from the government." Tr. 805:19–806; RX-63 at 7.

Because the statute does not provide clear guidance, Relator relied on Lilly's 1991 Rebate Agreement at summary judgment. Dkt. 312 at 16–18. But as discussed above, nothing in the Rebate Agreement imposes a clear obligation that Lilly include PIV in AMP (nor is it authoritative guidance, *see supra* at 15), and thus the correctness of Lilly's method was a "disputed legal question" that cannot support FCA liability. *Yannacopoulos*, 652 F.3d at 836; *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996) ("[A] disputed legal issue . . . is not enough to support a reasonable inference that the allocation was false.").

No other regulation or guidance clearly required Lilly to include PIV in AMP. *See supra* at 15. Relator has his own interpretations of the guidance documents at odds with Lilly's, but the Seventh Circuit is clear that mere "differences in interpretation growing out of a disputed legal question are . . . ***not false*** under the FCA." *Lamers*, 168 F.3d at 1018 (emphasis added). At worst, there is a "disputed legal question" about what "Reasonable Assumption" Lilly should have made, which does not equate to falsity. *Id.* Lilly is thus entitled to judgment as a matter of law on falsity for each of Relator's claims. At the very least, absent the falsity ruling, the evidence in the record gives "a reasonable jury . . . a legally sufficient evidentiary basis to find" that Lilly's AMP submissions were not false, meaning that Relator was not entitled to judgment on falsity. Fed. R. Civ. P. 50(a). The issue of falsity would thus, at minimum, need to be submitted to the jury.

### B. The AMPs Lilly Submitted After April 1, 2016 Are Not False for the Additional Reason That They Included PIV.

Lilly also renews its argument that its AMPs submitted after April 1, 2016 did not violate the FCA because they were restated to include PIV. Dkt. 476 at 17–18. Under federal law, an

AMP submission that is restated within three years to include PIV is not "false" under the FCA, and the restated AMP—not the initial submission—is the operative AMP value that governs rebate liability.  42 C.F.R. § 447.510(b)(1) & (2); 68 Fed. Reg. 51,912, 51,913 (Aug. 29, 2003).  Relator conceded the legal effect that a restatement would have in his closing argument, as he argued to the jury that Lilly had a "choice" whether "to defend [itself] in court" because it could have "just paid Medicaid back what it owes."  Tr. 1630:17–22.  It is undisputed that on December 20, 2017, Lilly voluntarily restated its AMPs from April 1, 2016 to December 31, 2017, and the restated final AMPs include PIV.  Dkt. 313 ¶ 121; Dkt. 330 at 48.

No reasonable jury could award damages or find statutory violations after April 1, 2016. The FCA permits trebling of "actual damages": the amount "that puts the government in the same position as it would have been if the defendant's claims [or statements] had not been false."  *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1278 (D.C. Cir. 2010).  Here, there are no actual alleged damages after April 1, 2016 because the government received the same net Medicaid rebates from Lilly pursuant to its restatement as it would have if Lilly's initial AMPs had included PIV.  Penalizing a defendant for restating its AMPs within the time allowed by law would not be consistent with "fair notice" and concerns about "open-ended liability."  *Escobar*, 579 U.S. at 192.

## VII.   NO REASONABLE JURY COULD FIND MATERIALITY.

Lilly renews its motion for judgment as a matter of law because there is not sufficient evidence of materiality, and requests a new trial because the jury received a misleading—and highly prejudicial—materiality instruction.  Dkt. 476 at 11–13.  To establish materiality, Relator must prove "the government actually attache[d] weight to" the supposed requirement that manufacturers include PIV in AMP such that Lilly's failure to comply "significantly affected the government's actions." *U.S. ex rel. Prose v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 740, 743 (7th Cir. 2021).  To meet that burden, it is not enough to show that Lilly's exclusion of PIV

from AMP resulted in underpaid rebates to Medicaid. *Escobar*, 579 U.S. at 181, 194.[5] If HHS would not have corrected Lilly, and told it to include PIV in AMP had it known, then the conduct was not material, even if it harmed government coffers. *Id.* At most, that is what the record shows here. Lilly repeatedly informed HHS that it was excluding PIV from AMP. But HHS never told Lilly to change its AMPs. Instead, its fraud investigator, OIG, gave Lilly (and the industry) broad approval in its 2013 audit report regarding AMP calculations. Tr. 436:16–17; *U.S. ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 563–64 (7th Cir. 2015). And CMS never reduced its payments to state Medicaid programs to account for Lilly's exclusion of PIV from AMP, "very strong evidence that those requirements are not material." *Escobar*, 579 U.S. at 181.

The jury arrived at the opposite conclusion because they were instructed materiality meant "capable of influencing the payment or receipt of money." Tr. 1740:3-5. The Supreme Court is clear that the FCA's "rigorous" materiality requirement does not end with the statutory language, and is not satisfied by difference in payment alone or it would be met in "every reverse false claim case." Tr. 1487:16-17; *Escobar*, 579 U.S. at 192-96. Relator admitted that the materiality instruction the Court gave was "exactly opposite of" the rule that difference in payment is not enough, Tr. 1487:7-11, and he took advantage of that error, arguing to the jury that materiality was satisfied merely because Lilly's conduct "translate[d] to an underpayment of Medicaid rebates." Tr. 1625:1-11. The Court denied Lilly's curative requests for *Escobar* instructions, Tr. 1483-1493, stating it "can't believe that" *Escobar*'s central holdings are the law. Tr. 1492:9-13. This was clear and highly prejudicial legal error requiring a new trial.

---

[5] *See also, e.g.*, *U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 491 (3d Cir. 2017) (rejecting argument that materiality is per se satisfied if "the Government would have paid less claims" in the absence of defendant's fraud); *accord U.S. ex rel. Streck v. Takeda Pharms. Am., Inc.*, 2022 WL 595308, at *15 (N.D. Ill. Feb. 28, 2022) (Leinenweber, J.).

## VIII.   RELATOR'S CLAIMS FAIL UNDER THE PUBLIC-DISCLOSURE BAR.

Lilly also renews and incorporates its Rule 50(a) argument that Relator's claims with respect to conduct prior to March 30, 2010 fail under the FCA's public-disclosure bar.[6]  Dkt. 476 at 19–20.  *Streck I* placed into the "public domain" the information Relator's current allegations are based upon.  *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 717–18 (7th Cir. 2017).  It makes no difference that Relator may have qualified as an "original source" in *Streck I*.  That "goes to his status as relator in those cases, not this one."  *U.S. ex rel. Lisitza v. Par Pharm. Companies, Inc.*, 2017 WL 3531678 at *15 (N.D. Ill. Aug. 17, 2017).  The FCA "does not permit jurisdiction in gross just because a relator is an original source with respect to some" other previously filed claim.  *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007).

## IX.   RELATOR HAS NOT PROVEN PROXIMATE CAUSATION.

Finally, Relator also failed to introduce any evidence of causation.  Dkt. 476 at 20.  As explained *supra* at 18-19, the undisputed evidence shows that the government knew of the conduct at issue in this lawsuit but nevertheless accepted Lilly's AMP submissions, which means that Lilly's conduct cannot be the proximate cause of any injury.  *United States v. Luce*, 873 F.3d 999, 1014 (7th Cir. 2017); *U.S. v. King-Vassel*, 728 F.3d 707, 714 (7th Cir. 2013) ("[A]n action that breaks the chain of causation would relieve a defendant of liability").

### CONCLUSION

For these reasons, the Court should either grant judgment to Lilly under Rule 50(b) or order a new trial under Rule 59.

---

[6] While the government has objected to the application of the public-disclosure bar under 31 U.S.C. § 3730(e)(4)(A), that provision is "not retroactive" and only permits the government to remove the public-notice bar for claims after its enactment on March 23, 2010.  Dkt. 122 at 11; *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 2015 WL 1396190, at *2 (N.D. Ill. Mar. 24, 2015).

Dated: August 31, 2022

Respectfully submitted,

/s/ Diana M. Watral

Andrew A. Kassof, P.C.
Diana M. Watral, P.C.
James R.P. Hileman
Ryan Moorman
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
andrew.kassof@kirkland.com
diana.watral@kirkland.com
james.hileman@kirkland.com
ryan.moorman@kirkland.com

*Attorneys for Defendant Eli Lilly and Company.*

## **CERTIFICATE OF SERVICE**

I, Diana M. Watral, hereby certify that on August 31, 2022, a true and accurate copy of Memorandum of Law in Support of Eli Lilly and Company's Motion Pursuant to Federal Rules Of Civil Procedure 50(b) And 59 was served upon counsel of record at the addresses indicated by CM/ECF electronic notification.

Dated: August 31, 2022

/s/ *Diana M. Watral*

*Attorney for Defendant Eli Lilly and Company.*

27