**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES, *ex rel.* RONALD J. STRECK,** | |
| **Plaintiff,** | **Case No. 14 C 9412** |
| **v.** | **Judge Harry D. Leinenweber** |
| **TAKEDA PHARMACEUTICALS AMERICA, INC., *et al.*,** | |
| **Defendants.** | |

**MEMORANDUM OPINION AND ORDER**

## I. BACKGROUND

After a jury verdict, the Court entered judgment in favor of the Relator Ronald J. Streck ("Relator") against Defendant Eli Lilly and Company ("Lilly") on qui tam actions under the federal False Claims Act (the "FCA") and various state false claims acts (Dkt. No. 486). Relator has now filed a post-trial Motion under Federal Rule of Civil Procedure 59 to Amend Judgment (Dkt. No. 495). Relator seeks trebled damages, prejudgment interest on actual damages, post-judgement interest, and maximum civil penalties. For the reasons stated herein, the Court grants in part and denies in part the Motion.

## II. DISCUSSION

### A. Trebled Damages

Under Section 3729 of the FCA, a defendant is liable for "3 times the amount of damages which the Government sustains because of the act of [the defendant]." 31 U.S.C. § 3729(a). Defendants do not dispute that the relevant state statutes call for the same. The jury determined the actual damages to the federal and state governments to be $61,229,217. (Dkt. No. 486.) This figure tripled amounts to $183,687,651.

Lilly owes trebled damages totaling $183,687,651.

### B. Prejudgment Interest Under the FCA

Relator asks this Court to impose prejudgment interest on pre-trebled damages. While the Seventh Circuit has not yet provided firm guidance on the availability of prejudgment interest, this Court is persuaded by other circuits that have expressly disallowed it. *See e.g., United States v. McLeod,* 721 F.2d 282, 286 (9th Cir. 1983); *Peterson v. Weinberger,* 508 F.2d 45, 55 (5th Cir. 1975); *United States v. Foster Wheeler Corp.,* 447 F.2d 100, 102 (2d Cir. 1971). Relator cites one case for its position, *U.S. v. Coop. Grain & Supply Co.,* 476 F.2d 47, 62 (8th Cir. 1973).

Generally, a remedy is not foreclosed simply because the statute does not mandate it. *See Rodgers v. U.S.,* 332 U.S. 371 (1947); *U.S. v. Texas,* 507 U.S. 529, 535 (1993); *W. Virginia v. U.S.,* 479 U.S. 305, 308 (1987); *Gorenstein Enterprises, Inc. v.*

*Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Relator relies heavily on *Gornstein*, a 1989 case in which the Seventh Circuit asserted a presumption of prejudgment interest to victims of federal violations. 874 F.2d 436. Since then, the Supreme Court has remarked on the lack of prejudgment interest in the FCA qui tam actions. *See Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 120, 131 (2003).

This Court finds any presumption of prejudgment interest eclipsed by the FCA itself. The lack of a prejudgment interest provision in Congress's scheme for relator recoveries under Section 3729 of the FCA expressly differs from other portions of the statute. In the provision of the FCA dealing with retaliation against whistleblowers – not at issue here – Congress specifically authorized it. 31 U.S.C. § 3730(h) ("Relief . . . shall include . . . 2 times the amount of back pay [and] interest on the back pay. . . ."). The history of the FCA also renders the scarcity of support for Relator's position unsurprising. Congress was aware of courts' interpretations when it amended the statute in both 1986 and 2009 but never added prejudgment interest to the text. Such inaction suggests that Congress intended to exclude this remedy. *See Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979); *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 338 (1988).

The Supreme Court has suggested that an amendment Congress did make, the trebling of damages, renders prejudgment interest

redundant at best. *See Chandler*, 538 U.S. at 131-33. In 1986, Congress raised the ceiling on damages recoverable under § 3729(a) from double to treble. *See id.* at 120. While *Grain & Supply*, 476 F.2d 62, also was published before the amendment, the Eighth Circuit's reasoning would make little sense afterwards. In *Grain & Supply*, the 8th Circuit explained that prejudgment interest was important to compensate the plaintiff. *Id.* The Supreme Court has characterized the trebling of FCA damages as exceeding the bounds of compensation now to serve punitive, rather than merely compensatory, purposes. *See Chandler*, 538 U.S. at 133; *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 784-86, (2000) ("[T]he current version of the FCA imposes damages that are essentially punitive in nature."); *see also Universal Health Servs., Inc. v. U.S.*, 579 U.S. 176, 182 (2016).

Indeed, as the Supreme Court explained in *Chandler*, the FCA's trebled damages feature ultimately serves more than one purpose. 538 U.S. at 133. Relator sets forth a reasonable policy argument that the recognition of the time value of money, an economic reality accounted for by prejudgment interest, ensures fair compensation. However, the law instructs otherwise, seemingly in pursuit of a countervailing policy goal. "In qui tam cases the rough difference between double and triple damages may well serve . . . to quicken the self-interest of some private plaintiff who can spot violations and start litigating to compensate the

Government, while benefiting himself as well." *Id.* at 131. With an aim for speedy litigation, the exclusion of prejudgment interest makes sense. Congress, recognizing the time value of money, would assume rational relators would push for efficient litigation to obtain the award for themselves, *ipso facto* the Government, as quickly as possible.

For these reasons, the Court declines to award Relator prejudgment interest under the federal FCA.

**C. Prejudgment Interest Under State FCAs**

Relator also requests the Court award prejudgment interest on the damages amount under the 27 state FCAs and the District of Columbia FCA ("state FCAs" or "state statutes"). Lilly concedes that claims under Texas and Louisiana statutes – namely, the Texas Medicaid Fraud Prevention Act and the Louisiana Medical Assistance Programs Integrity Law – are entitled to prejudgment interest. The parties present partial, opposing arguments for several additional states and the District of Columbia ("states").

In a lawsuit such as this one involving the laws of various jurisdictions, the availability of prejudgment interest is determined under each jurisdiction's laws. *See In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F.2d 633, 637 (7th Cir. 1981) ("[T]he availability of prejudgment interest must be determined by reference to state law."); *accord Stulberg v. Intermedics Orthopedics, Inc.*, 1999 WL 759608, at *10 (N.D.

Ill. Aug. 31, 1999) ("When a case arises under federal question jurisdiction, but also contains supplemental state law claims, courts award prejudgment interest on the state law claims under state law and the federal claims under federal law."). Still, given the substantive similarity between state FCAs and the federal FCA, the statutes may be construed consistently, particularly with respect to substantively similar provisions. *See City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys., Inc.*, 884 F.3d 798, 802 (7th Cir. 2018) ("Given the substantive similarity between the Illinois False Claims Act (IFCA) and the FCA, Illinois courts have relied upon federal cases interpreting the FCA in construing the provisions of the IFCA."); *New York v. Amgen Inc.*, 652 F.3d 103, 109 (1st Cir. 2011) ("Given the substantive similarity of the state FCAs . . . and the federal FCA with respect to the provisions at issue in this litigation, the state statutes may be construed consistently with the federal act.").

Accepting, as the parties do, that all relevant state statutes allow trebled damages, and that only Texas and Louisiana contain statutory provisions expressly providing prejudgment interest, the Court finds substantial similarity on the issue of prejudgment interest. Thus, the same rationale for the lack of available prejudgment interest in the federal FCA applies to the relevant state FCAs.

The Court orders prejudgment interest for claims rendered under the laws of Texas and Louisiana. The Court orders no pre-judgment interest for the remaining states.

**D. Post-judgment Interest**

Relator requests post-judgment interest at the U.S. Treasury Bill rate. Lilly does not contest that post-judgment interest is available under the federal FCA for federal claims. Rather, Lilly objects to Relator's request for post-judgment interest at the U.S. Treasury Bill rate on his state law claims, arguing that that interest under state FCAs depends on state law. Lilly then contends that Relator waived post-judgment interest on his state law claims by failing to cite state authority.

Under 28 U.S.C. § 1961, interest is allowed "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; *Travelers Ins. Co. v. Transp. Ins. Co.*, 846 F.2d 1048, 1053 (7th Cir.1988). Federal district courts generally award post-judgment interest. *See Student Loan Marketing Ass'n v. Lipman*, 45 F.3d 173, 176 (7th Cir.1995). The courts calculate post-judgment interest using 28 U.S.C. § 1961(a), which provides for interest from the date of judgment at a floating rate determined by the coupon yield of United States Treasury Bills. 28 U.S.C. § 1961(a). This interest compounds annually. 28 U.S.C. § 1961(b); *Illinois Nat'l Ins. Co. v. Ace Stamping & Mach. Co. Inc.*, 2021 WL 323785, at *2 (N.D. Ill. Feb. 1, 2021). The Seventh Circuit recognizes the

preemption of a federal statutory provision over a state law provision in the post-judgment interest context. *See Travelers Ins. Co. v. Transp. Ins. Co.*, 846 F.2d 1048, 1053 (7th Cir. 1988).

Lilly cites no authority for its position, nor explains why there would be a conflict between the state and federal statutes that would negate federal preemption.

As such, the Court awards Relator post-judgment interest for federal and state claims at the U.S. Treasury Bill rate.

**E. Civil Penalties**

The Court assesses civil penalties against Lilly for its federal and state violations within the respective statutory ranges. *See U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F.Supp. 2d 719, 741 (N.D. Ill. 2007). Before determining the appropriate penalties, the Court will clarify the appropriate ranges for consideration.

***Civil Penalty Ranges***

The federal statutory minimum is $5000 per violation before November 2015 and $12,537 per violation after November 2015. 28 C.F.R. §§ 85.3, 85.5; *see* 31 U.S.C. § 3729(a). The federal statutory maximum is $11,000 per violation before November 2015 and $25,076 per violation after November 2015. *Id.* As exhibited in the appendix, many states follow suit. In all relevant statutory schemes at all relevant times, the maximum is twice the minimum. *See* Appendix A. In other words, the statutes' penalty multiplier

is as low as 1 and as high as 2 of the statutory minimums, or as low as .5 or as high as 1 of the maximums. The Court has discretion to award civil penalties within this range. *See United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719, 741 (N.D. Ill. 2007).

Relator conceded that he originally overstated the penalties available under the District of Columbia ("D.C.") and Wisconsin FCAs. The D.C. FCA states that a violator "shall be liable to the District for a civil penalty of . . . not more than $11,000." D.C. Code Ann. § 2-381.02(a). The Wisconsin FCA in force in 2015 provides that a violator "shall forfeit not less than $5,000 nor more than $10,000 for each violation." Wis. Stat. Ann. § 20.931(2) (2013–14), repealed by 2015-2016 Wisc. Legis. Serv. Act 55, § 945n, eff. July 14, 2015. The parties dispute the penalties available under Hawaii FCA. The Court reads Hawaii's statutory range between November 2015 and 2020 to be $11,463 to $22,927, then to match the federal rate after 2020. *See* Haw. Rev. Stat. § 661-21. Because the conduct at issue predated 2020, the $11,463 to $22,927 range applies. Accordingly, the Court incorporated these deductions with respect to the District of Columbia, Wisconsin, and Hawaii statutes in the addendum. *See* Appendix A.

***Civil Penalty Application***

To assess the appropriate penalties, the Court looks to the totality of the circumstances. *Tyson* 488 F.Supp 2d at 741.

Circumstances include the egregiousness of the conduct, the gravity of the offense, fairness, *see e.g.*, *id.* at 741-42, and the degree of the defendant's scienter, *see e.g.*, *S.E.C. v. Zynergy Int'l Inc.*, 420 F.Supp. 3d 384, 394 (N.D. Ill. 2019).

Relator asks for the Court to impose the maximum civil penalties, arguing Lilly engaged in systematic misconduct for over a decade (2005 to 2017), acted knowingly, and expressed no remorse. Relator cites cases around the country in which courts imposed maximum penalties. Lilly argues that it should not be penalized for exercising its right to a defense and proffers that its remedial actions weigh in favor of minimal, if any, penalties. Lilly changed its practices years before trial, including restating, in 2017, its Average Manufacturer Price ("AMP") amounts back to the date, in 2016, of the relevant agency action. Relator argues that Lilly's correction should have dated back to 2005.

Ultimately, while Lilly could have, of course, behaved better, it could have acted far worse. Lilly's misrepresentations affected the significant portions of its public dealings over several years, and such a grave impact has favored maximum penalties elsewhere. *See United States ex rel. Morsell v. Norton LifeLock, Inc.*, 2023 WL 314506, at *75 (D.D.C. 2023). However, Lilly's conduct did not match the defendants' conduct in cases where courts within the Seventh Circuit have imposed maximum civil penalties. Here, Relator did not claim fraud, and the evidence on

scienter has been heavily disputed. The Court does not consider Lilly's litigation strategies, because a defendant should not be penalized for exercising its right to defense. *See Tyson*, 488 F. Supp. 2d at 742.

For these reasons, the Court considers the civil penalty of twenty percent above the statutory minimum, *i.e.*, the minimum at a factor of 1.2, or 60% of the maximum penalty, appropriate for each offense under each statute. The jury found 43 federal violations before November 2015 and 9 violations afterwards. Therefore, the total minimum federal civil penalty amounts to $349,333, then adding twenty percent, the total is $419,200. *See* Appendix A. (Equally, the maximum is $698,684, sixty percent of which is $419,200.) Among the state and D.C. ("state") claims, the jury found 956 violations prior to November 2015 and 243 afterwards. The total minimum state civil penalties would amount to $7,849,827, and the maximum $15,700,023. *See id.* With a twenty percent increase on the minimum, the total is $9,419,792. Ultimately, the statutes allow total penalties between $8,199,160 and $16,398,707, and the Court orders Lilly to pay $9,838,992 in civil penalties.

Lilly owes $9,838,992 in civil penalties.

## III. <u>CONCLUSION</u>

For the reasons stated herein, Relator's Motion to Amend Judgment (Dkt. No. 495) is granted in part and denied in part. It

is granted insofar as the Court orders damages to be trebled, post-judgment interest on all claims, and prejudgment interest on the Texas and Louisiana claims. The Court denies the Motion as to prejudgment interest on all other state and District of Columbia claims and on federal FCA claims. The Court orders civil penalties for all violations at 20% above the relevant statutory minimums.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 5/9/2023

# APPENDIX A - Civil Penalties Table

| Jurisdiction | Authority | # Violations pre- Nov. 2015 | Minimum per-violation penalty pre- Nov. 2015 | Maximum violation penalty pre- Nov. 2015 | Total minimum penalty pre- Nov. 2015 violations | Total Penalty for pre- Nov. 2015 violations at Minimum *1.2 | Total maximum penalty for pre- Nov. 2015 violations | # Violations post- Nov. 2015 | Minimum per-violation penalty post- Nov. 2015 | Maximum per-violation penalty post- Nov. 2015 | Total minimum penalty for post- Nov. 2015 violations | Total Penalty for post- Nov. 2015 violations at Minimum *1.2 | Total maximum penalty for post- Nov. 2015 violations | Total minimum civil penalty | Total Penalty at Minimum Penalty *1.2 | Total maximum civil penalty |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| California | Cal Gov't. Code §12651 | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $349,333 | **$419,200** | $698,684 |
| Colorado | Colo. Stat. § 25.5-4-305(1) | 18 | $5,500 | $11,000 | $99,000 | $118,800 | $198,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $211,833 | **$254,200** | $423,684 |
| Connecticut | Conn. Gen. Stat. § 4-275(a) | 20 | $5,500 | $11,000 | $110,000 | $132,000 | $220,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $222,833 | **$267,400** | $445,684 |
| Delaware | Del. Code tit. 6, § 1201(a) | 21 | $5,500 | $11,000 | $115,500 | $138,600 | $231,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $228,333 | **$274,000** | $456,684 |
| Florida | Fla. Stat. § 68.082(2) | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $5,500 | $11,000 | $49,500 | $59,400 | $99,000 | $286,000 | **$343,200** | $572,000 |
| Georgia | Ga. Code § 49-4-168.1(a) | 34 | $5,500 | $11,000 | $187,000 | $224,400 | $374,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $299,833 | **$359,800** | $599,684 |
| Hawaii | Haw. Rev. Stat. §661-21 | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | **$11,463** | **$22,927** | $103,167 | $123,800 | $206,343 | $339,667 | **$407,600** | $679,343 |
| Illinois | 740 Ill. Comp. Stat. 175/3(a) | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $349,333 | **$419,200** | $698,684 |
| Indiana | IC 5-11-5.7-2(a) | 42 | $5,500 | $11,000 | $231,000 | $277,200 | $462,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $343,833 | **$412,600** | $687,684 |
| Iowa | Iowa Code § 685.2(1) | 21 | $5,500 | $11,000 | $115,500 | $138,600 | $231,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $228,333 | **$274,000** | $456,684 |
| Louisiana | La. Stat. § 46:438.6 | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $5,500 | $11,000 | $49,500 | $59,400 | $99,000 | $286,000 | **$343,200** | $572,000 |
| Massachusetts | Mass. Gen. Laws ch. 12 §5B(a) | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $349,333 | **$419,200** | $698,684 |
| Michigan | Mich. Comp. Laws § 400.612 | 27 | $5,000 | $10,000 | $135,000 | $162,000 | $270,000 | 9 | $5,000 | $10,000 | $45,000 | $54,000 | $90,000 | $180,000 | **$216,000** | $360,000 |
| Minnesota | Minn. Stat. §15c.02(a) | 21 | $5,500 | $11,000 | $115,500 | $138,600 | $231,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $228,333 | **$274,000** | $456,684 |
| Montana | Mont. Code 17-8-403 | 25 | $5,500 | $11,000 | $137,500 | $165,000 | $275,000 | 9 | $5,500 | $11,000 | $49,500 | $59,400 | $99,000 | $187,000 | **$224,400** | $374,000 |

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Nevada | Nev. Rev. Stat. §357.040(2)(c) | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $349,333 | **$419,200** | $698,684 |
| New Jersey | N.J. Stat. § 2A:32C-3(g) | 31 | $5,500 | $11,000 | $170,500 | $204,600 | $341,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $283,333 | **$340,000** | $566,684 |
| New York | NY St. Fin. Law §189(1) | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $349,333 | **$419,200** | $698,684 |
| New Mexico | N.M. Stat. § 27-14-4 | 43 | $5,000 | $10,000 | $215,000 | $258,000 | $430,000 | 9 | $5,000 | $10,000 | $45,000 | $54,000 | $90,000 | $260,000 | **$312,000** | $520,000 |
| North Carolina | N.C. Gen. Stat. §1-607(a) | 19 | $5,500 | $11,000 | $104,500 | $125,400 | $209,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $217,333 | **$260,800** | $434,684 |
| Oklahoma | Okla. Stat. tit. 63, §5053.1(B) | 32 | $5,500 | $11,000 | $176,000 | $211,200 | $352,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $288,833 | **$346,600** | $577,684 |
| Rhode Island | R.I. Gen. Laws §9-1.1-3(a) | 31 | $5,500 | $11,000 | $170,500 | $204,600 | $341,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $283,333 | **$340,000** | $566,684 |
| Tennessee | Tenn. Code § 71-5-182 | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $349,333 | **$419,200** | $698,684 |
| Texas | Tex. Hum. Res. Code § 36.052 | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $349,333 | **$419,200** | $698,684 |
| Virginia | Va. Code § 8.01-216.3 | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $349,333 | **$419,200** | $698,684 |
| Washington | RCW § 74.66.020 | 13 | $5,500 | $11,000 | $71,500 | $85,800 | $143,000 | 9 | $12,537 | $25,076 | $112,833 | $135,400 | $225,684 | $184,333 | **$221,200** | $368,684 |
| Wisconsin | Wis. Stat. § 20.931(2)(g) | 42 | **$5,000** | **$10,000** | $210,000 | $252,000 | $420,000 | 0 | $5,500 | $11,000 | $ - | | $ - | $210,000 | **$252,000** | $420,000 |
| D.C. | D.C. Code §2-381.02(a) | 43 | $5,500 | $11,000 | $236,500 | $283,800 | $473,000 | 9 | **$5,500** | **$11,000** | $49,500 | $59,400 | $99,000 | $286,000 | **$343,200** | $572,000 |
| **State Sub-Total** | | **956** | | | $5,202,000 | **$6,242,400** | $10,404,000 | 243 | | | $2,647,827 | **$3,177,392** | $5,296,023 | $7,849,827 | **$9,419,792** | **$15,700,023** |
| **Federal** | **28 C.F.R. §§ 85.3, 85.5** | **43** | | | $236,500 | **$283,800** | $473,000 | 9 | | | $112,833 | **$135,400** | $225,684 | $349,333 | **$419,200** | **$698,684** |
| **TOTAL** | | **999** | | | $5,438,500 | **$6,526,200** | $10,877,000 | 252 | | | $2,760,660 | **$3,312,792** | $5,521,707 | $8,199,160 | **$9,838,992** | $16,398,707 |